# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRIAN LUCAS, ARONZO DAVIS, TORRENCE VAUGHANS, JOE EAGLE and MICHAEL KEYS, on behalf of themselves and similarly situated job applicants, <br><br> Plaintiffs, <br><br> v. <br><br> VEE PAK, INC., WJI INDUSTRIES, INC. d/b/a STAFFING NETWORK, PERSONNEL STAFFING GROUP, LLC d/b/a MOST VALUABLE PERSONNEL d/b/a MVP and ALTERNATIVE STAFFING, INC. d/b/a ASI, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) No. 12 C 9672 ) ) Judge Tharp ) ) Magistrate Judge Keys ) ) ) ) ) |

**DEFENDANT VEE PAK, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AND DISMISS CLASS ALLEGATIONS (FED.R.CIV.P. 12(f)) AND TO DENY CLASS CERTIFICATION (FED.R.CIV.P. 23(c), (d))**

Donald S. Rothschild
Brian M. Dougherty
Goldstine, Skrodzki, Russian,
Nemec and Hoff, Ltd.
835 McClintock Drive, Second Floor
Burr Ridge, IL 60527
(630) 655-6000

## I. FACTUAL BACKGROUND

On May 24, 2013, Plaintiffs filed their Third Amended Class Action Complaint ("Complaint"). [Dkt. 45] ("TAC"). There are five counts and Plaintiffs seek to certify a class under each count. Plaintiffs allege that Vee Pak failed to hire Plaintiffs because of their race in violation of Title VII (Count I); that Vee Pak had a practice and/or relied on co-defendants' employment practices that assigned Latino workers to Vee Pak, which had a disparate impact on African-American applicants (Count II); that Vee Pak violated 42 U.S.C § 1981 in failing to hire Plaintiffs and other African-Americans (Count III); that Vee Pak and Staffing Network Holdings, LLC failed to hire Plaintiffs and others because of their race (Count IV); that Vee Pak and Alternative Staffing, Inc. failed to hire Plaintiffs and others because of their race (Count V); and that Vee Pak and Personnel Staffing Group, LLC[1] failed to hire Plaintiffs and others because of their race (Count VI).

Dismissing the class allegations even before discovery is completed or the class is certified is appropriate under Rules 12(f) or 23(c)(1), (d)(1). *Baker v. Home Depot USA, Inc*., 11 C 6768, 2013 WL 271666, at *4 (N.D. Ill. Jan. 24, 2013).[2] "One opposing a class action may move for an order determining that the action may not be maintained as a class action." *Cook County Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972), citing 3B J. Moore, Federal Practice ¶ 23.50, at 23-1102 (2d ed. 1969); *Ladik v. Wal-Mart Stores, Inc*., 13 CV 123, 2013 WL 2351866, at *7 (W.D. Wis. May 24, 2013) (holding that "any party may ask the court to determined whether class certification is appropriate."). If "the defendant advances a legal argument based on the pleadings, [then] discovery is not necessary for the court to evaluate

---

[1] Staffing Network Holdings, LLC, Alternative Staffing, Inc. and Personnel Staffing Group, LLC will be collectively referred to as the "employment agencies" or "agencies".
[2] A copy of the Westlaw citations is attached hereto as <u>Group Exhibit 1</u>.

whether a class action may be maintained." *Wright v. Family Dollar, Inc.*, 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010).

The allegations plainly show that there is no objective, standardized hiring practice maintained by Vee Pak that discriminated against African-Americans as a group. Plaintiffs' theory can be broken down into two parts: 1) they were not given information on how to apply for work at Vee Pak; and 2) even if Vee Pak directly hired temporary workers, they were not hired because of their race.

The first theory is quite flimsy because Plaintiffs admit learning about the employment agencies that assigned workers to Vee Pak and they eventually applied for work at these agencies. But the plain text of Title VII says nothing about failing to divulge one's hiring practices and directing applicants to employment agencies instead. Even if Title VII is construed to forbid such practices, Plaintiffs have a causation problem: just because they applied for work at an employment agency does not guarantee an assignment with Vee Pak.

The second theory has better footing, but Plaintiffs never applied for actual job openings, as opposed to attempting to apply and being told they would not be hired. (TAC ¶¶ 19, 21). Even if the allegations are construed to support a "failure to hire" theory, it is premised on an argument that the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes* rejected: aggregating multiple, individualized decisions to prove a "pattern and practice" case. That approach, however, will not drive the answer of why a particular plaintiff was not hired. Without an objective hiring policy, a "failure to hire" case, like this one, demands that each plaintiff (and putative class members) prove a discrimination case that rises and falls on its own merits. When faced with plaintiff-specific proof like this, class treatment fails under Rule 23's strictures.

## II. ARGUMENT

### A. Rule 23(a)(2), (3) and (4) cannot be satisfied

A plaintiff seeking to certify a class action must first meet the four requirements under Rule 23(a)(1)-(4): numerosity, commonality, typicality, and adequate representation, resepctively. *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2550 (2011). "[A] Title VII class action … may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982). If all four of those requirements are met, the plaintiff must next satisfy one of the requirements under Rule 23(b). *Wal-Mart*, 131 S.Ct. at 2548.

Plaintiffs Lucas, Davis and Vaughns attempted to apply for work at Vee Pak directly, but were not hired, and Vee Pak would not tell Plaintiffs how to apply for employment at Vee Pak. (TAC ¶¶ 19-21, 23). Under Counts I and II, Plaintiffs seek to represent a class of African-Americans "who sought work assignments with Vee Pak, either directly or through" employment agencies. (*Id.* ¶¶ 97, 103). Such a class cannot be maintained as defined.

**Class Definition**. Plaintiffs Lucas, Davis and Vaughns never applied for specific job openings at Vee Pak, but rather they "attempted" to apply for work, whatever that really means. (TAC ¶ 19).[3] Title VII does not mandate direct hiring, nor does any law for that matter.

In Count III, Plaintiffs seek to certify a class of individuals that "applied for jobs with Vee Pak." (TAC ¶ 112). Plaintiffs can only represent a class that suffered discrimination faced by Plaintiffs. *Falcon*, 457 U.S. at 157 (noting the conceptual gap between individual's claim of discrimination and existence of a class of persons suffering the same injury). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury'

---

[3] The boilerplate EEOC Charges of Discrimination ("Charges") filed by the Plaintiffs all allege that they "applied to work at Vee Pak …" See Charges attached as Exhibit 2. There is no mention of "attempt[ing] to apply" for work.

3

as the class members." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977), quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 395, 493 (1974). In *Falcon*, the Court noted that a plaintiff must "bridge the gap" to support class discrimination, because a single employee's discrimination claim does not show that "discriminatory treatment is typical", or "motivated by a policy of ethnic discrimination" or that the "policy of ethnic discrimination is reflected in [the employer's] other employment practices …" *Falcon*, 457 U.S. at 157-58.

Plaintiffs never actually applied for any job openings. (TAC ¶ 19). Not being told about how to apply for a job at Vee Pak fails to show that Vee Pak's actual hiring practices are permeated with "discriminatory treatment" or "motivated by a policy of ethnic discrimination." *Id.* An allegation of discrimination does not "itself ensure that [plaintiffs] will be … adequate representative[s]." *East Texas Motor Freight System, Inc.*, 431 U.S. at 405-006. If Plaintiffs attempted to apply for work, but there were no actual job openings or if Plaintiffs were not even qualified for the positions sought, they were not injured. *Id.* at 403-04. The putative victims were those persons that were qualified and applied for open positions and were turned down in favor of lesser qualified, non-African-American applicants. Regardless if such a class exists, the allegations make clear that this is not the harm that Plaintiffs suffered.

Another obstacle is that the proposed class definition is unworkable. "A sufficiently definite class exists if the court can ascertain the class members by reference to objective criteria." *Fletcher v. ZLB Bearing, LLC*, 245 F.R.D. 328, 335 (N.D. Ill. 2006). Plaintiffs' class definition is similar to the one rejected in *Harris v. General Development Corp.*, 127 F.R.D. 655, 659 (N.D. Ill. 1989). In *Harris*, plaintiffs attempted to certify a class of potential applicants who were "deterred" from applying for work with defendant. *Id.* at 659. The district court found that

4

a "proposed class of persons who allegedly were discouraged from applying at [defendant] is too imprecise and speculative to be certified." *Id*. (collecting cases). The court further stated that "[a]n attempt to identify those persons who were subjectively deterred would be a daunting and seemingly fruitless task, requiring an individual adjudication with respect to each particular class member." *Id*.

There is no "objective criteria" to define who falls into the proposed class because that determination will require a particularized and individualized inquiry into the substantive communications between Vee Pak and the class members. For instance, the contact person at Vee Pak who spoke to class members, the applicants' qualifications, the conversations between Vee Pak and applicants, and the positions open, sought and inquired about, will vary from applicant to applicant. The use of the term "sought work assignments" (TAC ¶¶ 97, 103) or those who "sought to be assigned" (TAC ¶¶ 124, 136, 148) as part of the class definitions is problematic because it could refer to persons seeking permanent work or temporary work and it also implies (without any factual support) that Vee Pak had input in the employment agencies decisions, which is incorrect. (Declaration of Gene Sturino, ¶¶ 8-9 attached as Exhibit 3). Identifying class members based on the proposed class definitions will require an "individual adjudication with respect to each particular class member." *Harris,* 127 F.R.D. at 659.

**Commonality**. When considering certification "[i]n a Title VII action, the commonality element is the 'most critical' and one in which 'the class action and merit inquiries essentially coincide." *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 423 (N.D. Ill. 2003), quoting *Stastny v. S. Bell Tel. & Tel. Co*., 628 F.2d 267, 275-76 (4th Cir. 1980). This element requires plaintiffs to demonstrate at least one common question of law or fact common to all class members. *Allen v. Chicago Transit Authority*, 99 C 7614, 2000 WL 1207408, at *7 (N.D. Ill. 2000). "Where a

5

question of law refers to standardized conduct by defendant towards members of the proposed class, a common nucleus of operative facts is typically presented and the commonality requirement is usually met." *Id*. The commonality requirement must "generate common *answers* to the drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551, quoting Nagareda, CLASS CERTIFICATION IN THE AGE OF AGGREGATE PROOF, 84 N.Y.U.L.Rev. 97, 131-132 (2009) (emphasis in original).

Commonality is lacking here because Vee Pak's conduct toward the class is not "standardized." In *Wal-Mart*, plaintiffs' theory was not an express corporate policy, but rather allowing local managers across the country to make subjective promotional decisions. *Wal-Mart*, 131 S.Ct. at 2548. Plaintiffs could have proved that giving discretion to low-level supervisors was a basis for disparate-impact liability. *Id*. at 2554. However, the plaintiffs could "not identif[y] a common mode of exercising discretion that pervade[d] the entire company." *Id*. at 2554-55. Alleging that Wal-Mart delegated its discretion to these managers was not enough, as plaintiffs had to identify a "specific employment policy" that resulted in a disparate impact." *Id*. at 2555.

Here, Plaintiffs do not claim they were subjected to a biased testing procedure, so the only avenue left is claiming that discretionary decision-making is the probable cause for their harm. *Id*. at 2553. That theory is a riff on *Wal-Mart*. Plaintiffs Lucas, Davis and Vaughns can only make conclusory allegations that Vee Pak rejected their attempts to apply for work on account of their race (TAC ¶¶ 19, 21, 91-93), but have "not identified a common mode of exercising discretion that pervades" Vee Pak. *Wal-Mart*, 131 S.Ct. at 2554-55; *Davis v. Cintas Corp.*, 10-1662, 2013 WL 2343302, at *8-11 (6th Cir. May 30, 2013) (applying *Wal-Mart* and finding commonality lacking in a failure to hire case). Plaintiffs fail to identify what positions

6

they sought, their qualifications and who they spoke with at Vee Pak, and Vee Pak has no records either. (Exh. 3, ¶ 4). Vee Pak wholly denies that it has a policy of rejecting applications. (Ex. 3, ¶ 5). The putative class members may have spoken to different Vee Pak personnel for positions wholly unrelated to Plaintiffs. Why putative class members were not given hiring information or were not hired is a question that is not necessarily answered with reference to the Plaintiffs. Speaking with different Vee Pak personnel about job openings and the hiring process only creates a "hodgepodge of different alleged policies and practices", *Ladik*, 2013 WL 2351866, at *11, that fail to "produce a common answer to the crucial question *why was I disfavored*." *Wal-Mart*, 131 S.Ct. at 2552.

To allege that a uniform policy exists that disfavors African-Americans fails to consider the realities of what occurred with Plaintiffs. They do not claim they applied for a specific job opening, as opposed to inquiring or attempting to apply for work. (TAC ¶ 19). Some class members may have heard of actual job openings at Vee Pak through "word or mouth", some may have inquired about an opening (viz. "cold call"), or some may have applied directly when either an opening existed or no opening existed. Solely because Plaintiffs were not given adequate information to apply for a job or were not hired does not lead to the inference that (a) non-African-Americans were provided with hiring information, (b) that other African-Americans were not hired for discriminatory reasons, or (c) that Vee Pak's direct hiring is motivated by race discrimination. *Falcon*, 457 U.S. at 158 (rejecting "the proposition the across-the-board rule-that racial discrimination is by definition class discrimination."). Additionally, Vee Pak has no record of who Plaintiffs spoke to at Vee Pak regarding job openings. (Exh. 3, ¶¶ 4, 7). If Plaintiffs fail to identify anyone in particular, this cuts directly against their case. Because Vee Pak has diverse reasons why someone was not provided with adequate hiring information (e.g.

7

person contacted lacked any hiring knowledge) or would not be hired (which requires reference to possibly multiple decision-makers), there is no "common answer" to drive this case. *Wal-Mart*, 131 S.Ct. at 2551.

**Typicality**. Typicality focuses on the characteristics of the class representatives relative to the class. *Allen*, 2000 WL 1207408, at *10. The inquiry into whether Plaintiffs' claims are typical of those of the class members they represent is closely related to the commonality inquiry. *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 428 (N.D. Ill. 2003) (quotations and citation omitted). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id*. (internal quotations and citation omitted). "Although factual variations in claims will not destroy typicality, even those claims based on the same legal theory, must all contain a common core of allegations." *Id*. (internal quotations and citation omitted). "In other words, the named representatives' claims must have the same essential characteristics as the claims of the class at large." *Id*. (internal quotations and citation omitted). Typicality is satisfied "with reference to [defendant's] actions, not with respect to the particularized defenses it might have against certain class members." *Id*., quoting *Wagner v. NutraSweet Co*., 95 F.3d 527, 534 (7th Cir. 1996). "If the named plaintiffs' claims are too individualized, such that they do not arise from the same event, practice or course of conduct that gives rise to the clams of the other class members, typicality will not be found." *Allen*, 2000 WL 1207408, at *10.

Typicality does not exist here because each Plaintiff would need to prove discrimination by Vee Pak. This becomes rather complicated because Plaintiffs' theory is not so much that they applied and were rejected in favor of lesser qualified applicants outside the protected group, but

8

rather that they "attempted to apply" and were not given information on the hiring process. (TAC ¶¶ 19-21). Plaintiffs would need to show that (1) non-African-Americans attempted to apply for work and that Vee Pak provided them with sufficient hiring information, such as applying for work at one or more employment agencies that refers workers to Vee Pak, or that (2) Vee Pak bypassed the employment agencies and directly hired temporary workers outside the protected group that were at least lesser qualified than Plaintiffs. *Allen*, 2000 WL 1207408, at *10.

Under the first theory, even if a class member was referred to an employment agency by Vee Pak, the hiring process is out of Vee Pak's control at that point. (Exh. 3, ¶ 9). Plaintiffs' claims rest on the assumption that had Vee Pak provided them with information on how to apply for work, they could have gone to an employment agency and the agency would have assigned Plaintiffs to Vee Pak. However, Vee Pak's not being cooperative in Plaintiffs' informational requests could not have caused them any harm. Plaintiffs admit that in November 2011 (the same month when Vee Pak was less than forthcoming) they learned that Vee Pak used employment agencies for temporary workers and applied for work at those agencies. (TAC ¶¶ 24, 25, 61, 80). Trying to corral other putative class members to fit within this exact framework is unwieldy because some class members may not have had a genuine interest in work as opposed to making a "cold call" or finding out basic information about the company. Any African-American who ever made a phone inquiry or walked through the front door at Vee Pak to ask a question could be a class member under this scenario. Without a clear standard to define "typicality," proceeding under this theory is doomed.

Under the second theory, if Vee Pak directly hired non-African-American workers to fill positions that Plaintiffs could have applied for and were not even considered, the Plaintiffs

9

would need to demonstrate the superiority of their work history and qualifications when compared to those actually directly hired by Vee Pak in order to show discrimination. *Allen*, 2000 WL 1207408, at *10. But Plaintiffs prevailing on their individual claims alone would not entitle the class members to relief. *Semenko v. Wendy's Intern., Inc.*, 12 CV 836, 2013 WL 1568407, at *9 (W.D. Pa. Apr. 12, 2013). The class members would need to establish whether a particular job opening existed, their qualifications for a particular job, the circumstances surrounding their seeking employment at Vee Pak, and their communications with Vee Pak. See *Ellis*, 217 F.R.D. at 429; *Allen*, 2000 WL 1207408, at *10. As a result, there would be numerous, individualized, fact-intensive determinations to adjudicate, which defeats typicality. *Allen*, 2000 WL 1207408, at *10; *Bennett v. Roberts*, 96 C 6917, 2000 WL 781868, at *3 (N.D. Ill. June 15, 2000) (finding that "the individualized nature of each class member's claim" defeated commonality). Whether Plaintiffs proceed under a "failure to share information" or "failure to hire" theory, typicality cannot be satisfied.

**Adequacy of Representation**. Rule 23(a)(4) has two components: 1) adequacy of Plaintiffs' counsel; and 2) the adequacy of representation provided in protecting the interests of the class members. *Allen*, 2000 WL 1207408, at *11. Vee Pak has no issue with the first component, but the second requirement is lacking severely.

Under the first requirement, "[a] class is not fairly and adequately represented if class members have antagonistic or conflicting interests." *Allen*, 2000 WL 1207408, at *11. For instance, if class members competed for the same jobs, then this conflict will defeat certification. *Id*. This was seen in *Allen* where the court surmised that class members applied for the same promotions. *Id*. In *Ellis*, the court held that given the five-year class period, class members likely competed for the same positions. *Ellis*, 217 F.R.D. at 430.

The class period in the instant case reaches back as far as December 5, 2010 (which is two years from the date of filing of the complaint for purposes of § 1981). If Plaintiffs are allowed to proceed with a "failure to hire" claim, it is highly likely that the class members who sought employment directly with Vee Pak during this time period were competing against one another for the same temporary labor jobs, resulting in antagonistic and competing claims. Similar to *Allen* and *Ellis*, adequacy of representation is lacking.

Another pitfall is what "jobs" fit within the class. Plaintiffs have not detailed their qualifications and what jobs they applied for, if any. Someone applying to be a fork lift driver would have different experience and qualifications than someone on the manufacturing line. If one lacks the qualifications for a job, then that person has not been injured, and hence, that person is not an adequate class representative. *East Texas Freight System Inc.*, 431 U.S. at 403-404. Plaintiffs cannot rely on a bare allegation that they were "qualified to perform work at Vee Pak." (TAC ¶¶ 7-11) and hope to represent a myriad of individuals with assorted experiences, skills and qualifications. Plaintiffs must do more than just bring a lawsuit alleging racial discrimination in order to be a class representative. *East Texas Freight System Inc.*, 431 U.S. at 405-406.

For all of these reasons, Plaintiffs cannot satisfy Rule 23(a)(2), (3) and (4).

**B.      Rule 23(b)(3) cannot be fulfilled**

Plaintiffs rely on Rule 23(b)(3). (TAC ¶ 89(c)). This "provision permits certification only if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" Fed.R.Civ.P. 23(b)(3). Rule 23(b) "is even more demanding that Rule 23(a)." *Comcast Corp. v. Behrend*, 133

11

S.Ct. 1426, 1432 (2013). Because of this, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question[,]" *Falcon*, 457 U.S. at 160, and as a result, this analysis will "overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 131 S.Ct. at 2551.

**Predominance**. The Rule 23(b)(3) predominance determination "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). While similar to Rule 23(a), "the predominance criterion is far more demanding." *Id*. at 623-24. "[A] plaintiff must establish that 'common issues of law and fact are central to all of their claims.' " *Radmanovich v. Combined Ins. Co. of America*, 216 F.R.D. 424, 435 (N.D. Ill. 2003), quoting *Blair v. Supportkids, Inc.*, 02 C 632, 2003 WL 1908031, at *4 (N.D. Ill. Apr. 18, 2003). Stated different, there must be "generalized evidence which proves or disproves an element" in the case which, in turn, "obviates the need" for individual proof. *Semenko*, 2013 WL 1568407, at *11.

Since Plaintiffs' claims fail under Rules 23(a)(2) and (3), they do not fare any better here. To determine if liability issues are subjected to class-wide proof, the court must look to the elements of the claim, the proof necessary for those claims, and trial manageability issues. *Fletcher*, 245 F.R.D. at 332. There are no common issues of fact because each class member would need to prove (at a minimum)[4] a "failure to hire" claim individually. To get by summary judgment, a *prima facie* "failure to hire" claim using the indirect method requires proof that (1) one was within the protected class; (2) the plaintiff was qualified and applied for the position; (3) plaintiff was rejected; and (4) someone outside the protected class with similar or lesser qualification filled the position. *Grigsby v. Lahood*, 628 F.3d 354, 358-59 (7th Cir. 2010) (Title

---

[4] As stated earlier, the "failure to share information" claim could not have resulted in any harm, since Plaintiffs eventually learned the name of the employment agencies assigning workers to Vee Pak and thereafter sought employment with those agencies. (TAC ¶ 24, 25, 61, 80)

VII); see *Blise v. Antaramian,* 409 F.3d 861, 866 (7th Cir. 2005) (§ 1981). Vee Pak would necessarily assert a legitimate, non-discriminatory reason why each class member was not hired, which would be based on that person's job, qualifications and who filled the position. *Id.* To overcome that reason, a plaintiff would need to show that the reasons offered were pretextual (at the summary judgment stage) or prove actual intentional discrimination (at trial). *Id.*

In *Radmanovich*, the district court addressed the predominance requirement in a "failure to promote" case. The court found that denial of a promotion would require an "individualized review" of whether the plaintiffs were qualified and whether the promoted employee was less qualified. 216 F.R.D. at 436. The court also noted that each class member's qualifications for the position in question would be unique, as well as that person's personal achievements and requirements for the position, and the qualifications of the person promoted would be unique as well. *Id.*

Plaintiffs' allegations do not point to an objective, class-wide discriminatory hiring policy, as opposed to individual job information/opening inquiries or individual hiring decisions. See *Wal-Mart*, 131 S.Ct. at 2555 (plaintiffs failed to identify "specific employment practice"). Merely because Plaintiffs have alleged a pattern and practice case does not obviate the need for each plaintiff to prove that race motivated divulging hiring information or an adverse hiring decision. *Radmanovich*, 216 F.R.D at 436. Like *Radmanovich*, the second and fourth elements of a *prima facie* "failure to hire" claim would require individualized determinations for each plaintiff. Each position sought has certain requirements, and likewise, a plaintiff's qualifications would be unique, as plaintiffs bring differing experiences and skills to the position. If someone outside the protected class actually filled the position sought, that person's qualifications are inimitable as well. Proving all of this would involve different witnesses for each class member's

13

claim, as well as the motivation of each person that rejected a class member for employment. See *Puffer v. Allstate Ins. Co.*, 255 F.R.D. 450, 471 (N.D. Ill. 2009); *Fletcher*, 245 F.R.D. at 332. "If the class certification only serves to give rise to hundreds or thousands of individual proceedings requiring individually tailored remedies, it is hard to see how common issues predominate …" *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). Thus, common issues of fact would not predominate, making class certification improper.

**Superiority**. The superiority prong itself has four requirements for a court to consider. Fed.R.Civ.P. 23(b)(3)(A)-(D). There is no evidence that each putative class member would not want to control his own case. Fed.R.Civ.P. 23(b)(3)(A). Damages as low as $50,000 provide an adequate incentive to litigate a claim individually. *Puffer*, 255 F.R.D. at 473. In a Title VII and § 1981 "failure to hire" case, the bulk of the damages are lost wages, and if any plaintiff has been out of work significantly or obtained employment for wages far below what could have been earned at Vee Pak, then certainly a plaintiff would want to control his own destiny. If true, then given Title VII's fee-shifting, a plaintiff could attract competent counsel to take his case.

If this Court is required to hold individual liability determinations under Title VII, which affords the right to a jury trial, then this would make the class action unmanageable. Fed.R.Civ.P. 23(b)(3)(D); *Radmanovich*, 216 F.R.D. at 439; *Puffer*, 255 F.R.D. at 471-72. At this point, the number of potential class members is uncertain, but even 20 class members pose a problem. This is so because a class action does not alleviate each plaintiff's burden of proving intentional discrimination. *Radmanovich*, 216 F.R.D. at 439. Plaintiffs cannot advocate separate trials on the liability issues because different juries cannot re-examine the same issues. *Puffer*, 255 F.R.D. at 472. This would certainly occur here if some of the proofs are overlapping with some of the plaintiffs.

14

### III. CONCLUSION

Discovery is not required to flush out the class allegations. A "failure to hire" case, which lacks allegations of a standardized hiring practice, is inappropriate for class action treatment. This rings even louder when Plaintiffs also allege that they attempted to apply for work, but were rejected. But there are no allegations bridging the wide gap between Plaintiffs not being hired and that Vee Pak's hiring practice was infused with anti-African-American bias. As plead, this case is nothing more than a collection of individual "failure to hire" claims without any glue holding them together. Plaintiffs have not pointed to any uniform hiring policy that was applied across the board to them and other applicants that would compel an answer to why Plaintiffs and those similarly situated either were not hired or were not provided with hiring information.

WHEREFORE, Defendant, VEE PAK, INC., respectfully requests that this Court enter an order striking and dismiss the class allegations, denying class certification and awarding all other relief this Court deems equitable and just.

Respectfully submitted,

VEE PAK, INC.,

By: /s/ Donald S. Rothschild
One of Its Attorneys

Donald S. Rothschild
Brian M. Dougherty
Goldstine, Skrodzki, Russian,
Nemec and Hoff, Ltd.
835 McClintock Drive, Second Floor
Burr Ridge, IL 60527
(630) 655-6000

**CERTIFICATE OF SERVICE**

      I, Donald S. Rothschild, an attorney, certify that I served a copy of **Defendant Vee Pak, Inc.'s Memorandum of Law in Support of Its Motion to Strike and Dismiss Class Allegations and to Deny Class Certification**, filed with the United States District Court, via CM/ECF, on all registered users, on this 28th day of June, 2013.

                                       /s/ Donald S. Rothschild
                                       Attorney for Defendant Vee Pak, Inc.