2013 WL 1568407
United States District Court,
W.D. Pennsylvania.

Patricia SEMENKO, individually, and on
behalf of others similarly situated, Plaintiff,
v.
WENDY'S INTERNATIONAL, INC., Defendant.

No. 2:12–cv–0836. | April 12, 2013.

**Attorneys and Law Firms**

Gregory G. Paul, Morgan & Paul, PLLC, Sewickley, PA, for Plaintiff.

James S. Urban, Brandon J. Lester, Jones Day, Pittsburgh, PA, for Defendant.

**Opinion**

### MEMORANDUM OPINION AND ORDER

TERRENCE F. McVERRY, District Judge.

*1 Before the Court for disposition is the MOTION TO STRIKE, with brief in support, filed by Defendant, Wendy's International, Inc. ("Wendy's") (ECF Nos. 5 and 6), the RESPONSE in opposition filed by Plaintiff, Patricia Semenko, individually, and on behalf of others similarly situated, ("Semenko") (ECF No. 9), and the REPLY filed by Wendy's (ECF No. 10). The matter has been thoroughly briefed and is ripe for disposition. For the reasons that follow, the Motion to Strike will be granted.

### Factual Background

Semenko initiated this lawsuit on June 19, 2012, by the filing of a three-count Complaint in Class Action in which she raised both individual and class claims under the Americans with Disability Act, as amended ("ADA"), 42 U.S.C. §§ 1201, et seq., and the Pennsylvania Human Relations Act, as amended ("PHRA"), 43 Pa. Stat. Ann. §§ 951, et seq. and seeks "declaratory, injunctive, and compensatory relief from defendants (sic), Wendy's International, Inc., for denial of employment, failure to accommodate on the basis of actual, and regarded as or record of disability." Complaint, at ¶ 1.

Semenko alleges that she worked for Wendy's for approximately thirty (30) years, first in hourly and later in managerial positions. Semenko suffers from degenerative arthritis and in January 2007 took a disability leave to treat her cervical radiculopathy and lower back pain, which leave was approved for long-term disability benefits sponsored by her employer. According to the Complaint, on or about November 14, 2007, Semenko was released by her treating physician to return to work full-time, with restrictions. She requested to return to work with accommodations, but Wendy's denied her request. Her employment with Wendy's was terminated on January 11, 2008. *Id.* at ¶¶ 7–14.

The Complaint states that Semenko's "action is brought and may be properly maintained as a class action pursuant to F.R.C.P. 23." *Id.* at ¶ 27. Distilled to its essence, Wendy's argument is that Semenko's class allegations:

> cannot be adjudicated within the parameters of Rule 23 such that a determination of classwide liability and relief can be reached. Rather, establishing the unlawful discrimination alleged by [Semenko] would require determining whether class members are 'qualified' under the ADA [and PHRA], an assessment that encompasses inquiries ... too individualized and divergent ... to warrant certification under Rule 23(a) and (b)(2).

Def's Response at 1 (quoting *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 185–86 (3d Cir.2009)). Not surprisingly, Semenko responds that (i) she has alleged viable class claims and (ii) the motion to strike should be denied as premature as a motion for class certification has not been filed and the parties have not engaged in any pre-certification discovery.

### Standard of Review

Wendy's requests that the Court strike the class allegations contained in the Complaint pursuant to Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D).

*a. Federal Rule of Civil Procedure 12(f)*

**\*2** Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." " 'The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.' " *Goode v. LexisNexis Risk & Information Analytics Group, Inc.,* 284 F.R.D. 238, 243–44 (E.D.Pa.2012) (quoting *McInerney v. Moyer Lumber & Hardware, Inc.,* 244 F.Supp.2d 393 (E.D.Pa.2002)). Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations "have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Id.*

**b.** *Federal Rule of Civil Procedure 23*
"Rule 23 provides a one-size-fits all formula for deciding the class-action question." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,* 559 U.S. 393 ——, 130 S.Ct. 1431, 1437, 176 L.Ed.2d 311 (2010). Under Rule 23(d)(1)(D), a court adjudicating a class action may "require that the pleadings be amended to eliminate allegations about representations of absent persons and that the action proceed accordingly." However, courts rarely grant motions to strike under Rule 23(d)(1)(D) prior to class discovery, doing so only where *"[n]o amount of additional class discovery will alter th[e] conclusion"* that the class is not maintainable. *Thompson v. Merck & Co., Inc.,* 2004 WL 62710, at \*2 (E.D.Pa. Jan.6, 2004) (emphasis added).

Generally, courts do not consider whether a proposed class meets the Rule 23 requirements until after plaintiffs move for class certification. However, in rare cases, the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Landsman & Funk PC v. Skinder–Strauss Associates,* 640 F.3d 72, 93 n. 30 (3d Cir.2011) (ruling that the decision of the district court that a class could not potentially fit within Rule 23 determined on a motion to dismiss was premature.) .[1] As the United States Supreme Court has noted:

> Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claims, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.
> *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

The plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Federal Rule of Civil Procedure 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion. *Mantolete v. Bolger,* 767 F.2d 1416, 1424 (9th Cir.1985). Thus, even though the instant motion is a motion to strike, it is necessary to make a preliminary determination regarding the sufficiency of Semenko's class allegations. *See Korman v. Walking Co.,* 503 F.Supp.2d 755, 762–63 (E.D.Pa.2007) (treating the motion to strike and its opposition as a motion for class certification and its opposition).

**\*3** Pursuant to Rule 23, a member of a class may sue on behalf of all members only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

### Discussion

**A.** *Neither Discovery Nor a Certification Motion is Necessary to Resolve the Instant Dispute*
At the outset, the Court must determine whether discovery or a certification motion is necessary in order to resolve the pending Motion to Strike. In this case, no discovery has taken place nor has a motion for class certification been filed.

A court must determine whether the action may be maintained as a class action as soon as is practicable after the action is filed. Fed.R.Civ.P. 23(c)(1). Discovery is likely warranted where it will resolve factual issues necessary for the determination of whether the action may be maintained as a class action.

District courts have broad discretion to control the class certification process, and "[w]hether or not discovery will be permitted ... lies within the sound discretion of the trial court." *Kamm v. Cal. City Dev. Co.,* 509 F.2d 205, 209 (9th Cir.1975). "In **rare** cases where it is clear from the complaint itself that the requirements for maintaining a class action cannot be met, a defendant may move to strike the class allegations before a motion for class certification is filed." *NBL Flooring, Inc. v. Trumball, Inc. Co.,* No.

10–4398, 2011 WL 4481918, at * 1 (E.D.Pa. Sept.27, 2011) (emphasis added). *See Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304 (9th Cir.1977) (holding that class certification was properly denied without discovery where plaintiffs could not make a *prima facie* showing of Rule 23's prerequisites or that discovery measures were not likely to produce persuasive information substantiating the class action allegations); *Woodard v. FedEx Freight East, Inc.,* 250 F.R.D. 178, 182 (M.D.Pa.2008) (noting that a "district court will strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action.")

"There is precedent for treating a Rule 12(f) motion to strike class allegations as a motion to deny class certification." *Bearden v. Honeywell Int'l Inc.,* 720 F.Supp.2d 932, 942 (M.D.Tenn.2010). Accordingly, as will be discussed *infra,* because the Court finds and rules that the issues in this particular case "are clear and discovery on class certification is unnecessary," it will treat the motion to strike and its opposition as a motion for class certification and its opposition without permitting discovery or waiting for a certification motion to be filed. *Korman v. Walking Co.,* 503 F.Supp.2d 755, 762–63 (E.D.Pa.2007).

**B.** *Analysis of Class Certification Issue*
*4 As explained *supra,* Wendy's argues that the Court should strike the class allegations from the Complaint and order the case to proceed solely on Semenko's individual claims, which are not being challenged by Wendy's at this time. In the Complaint, Semenko defines the putative class as follows:

> [A]ll persons who have been terminated or separated from employment following a leave of absence and/or otherwise not accommodated by defendant's failure to transfer to vacant and funded positions.

*Id.* at ¶ 28.[2]

Class certification is governed by Rule 23, which states, in relevant part:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is no numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; *and*

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained *if Rule 23(a) is satisfied and if:*

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Federal Rule of Civil Procedure 23 (emphasis added).

The Court of Appeals for the Third Circuit clarified the type of thorough and rigorous analysis that must be performed to determine whether the prerequisites of Rule 23 are met:

> In deciding whether to certify a class under Fed.R.Civ.P. 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties. In this appeal, we clarify three key aspects of class certification procedure. First, the decision to certify a class calls for findings by the court, not merely a "threshold showing" by a party, that each requirement of Rule 23 is met. Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence. Second, the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits-including disputes touching on elements of the cause of action. Third, the court's obligation to consider all relevant evidence and arguments extends to expert testimony, whether offered by a party seeking class certification or by a party opposing it.

*5 *In re Hydrogen Peroxide Antitrust Litigation,* 552 F.3d 305, 307 (3rd Cir.2008). Our appellate court emphasized that "a class may not be certified without a finding that each Rule 23 requirement is met." *Id.* at 310.

Semenko contends that (i) Wendy's has a "written policy ... not to provide reasonable accommodation for permanent restrictions," Resp. at 4, and this generally applicable policy creates commonality for class purposes; (2) the class is sufficiently narrow because it is "limited to those individuals with permanent medical restrictions who applied for long-term disability benefits," Resp. at 3, and (3) the claims in the Complaint satisfy Rule 12(b)(6).[3] Defendant argues that the elements of commonality, typicality, or adequacy under Rule 23(a) are not satisfied and, further, that Semenko cannot satisfy either of the two requirements of Rule 23(b) that she contends to have satisfied. A party must satisfy all four of the requirements found in Rule 23(a) and at least one of the three criteria found in Rule 23(b). The Court will address the elements of Rule 23 seriatim.

**1.** *Rule 23(a)*

**a.** *Numerosity*
The numerosity requirement of Rule 23(a)(1) is satisfied where a named plaintiff demonstrates that the putative class includes more than forty (40) individuals. *Stewart v. Abraham,* 275 F.3d 220, 226–27 (3d Cir.2001). Semenko alleges in her Complaint that "membership in the Class potentially numbers in the hundreds." Complaint at ¶ 29. Therefore, the Court finds that the numerosity requirement of Rule 23(a) is met.

**b.** *Commonality*
The commonality requirement of Rule 23(a)(2) is satisfied if the named plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class." *Neal v. Casey,* 43 F.3d 48, 56 (3d Cir.1994).[4] In *Wal– Mart Stores, Inc. v. Dukes,* the United States Supreme Court explained that a plaintiff attempting to satisfy the commonality requirement must demonstrate that the claims of the proposed class members "depend upon a common contention" that is "capable of classwide resolution." —— U.S. ——, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011), In order for a "contention" to constitute a "common question," it must yield the same answer with respect to each member of the proposed class. *Id.* at 2551 (remarking that a "common contention" is "capable of classwide resolution" if the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").

The Court finds that the commonality requirement of Rule 23(a) (2) has not been met in this case. In *Wal–Mart,* a Title VII case, the Supreme Court found a lack of commonality because no single discriminatory pay policy applied to the full class. In the instant case, Plaintiff argues that Wendy's has a discriminatory disability policy which applies to the full proposed class. In support, she relies upon a determination letter from the EEOC in an attempt to establish

that Wendy's has "admitted" that it has a disability policy which "constitutes a per se violation of the ADA."

*6 Not surprisingly, Wendy's strongly disputes that it has "admitted" that it has a policy which is a per se violation of the ADA. Further, while Title VII categorically prohibits discrimination, the ADA "only protects from discrimination those disabled individuals who are able to perform, with or without reasonable accommodation, the essential functions of the job they hold or desire." *Hohider,* 574 F.3d at 191. Thus, there is an important distinction between Title VII and ADA claims for class action purposes and courts presiding over ADA cases must determine not just whether the employer acted improperly, but also "whether class members are 'qualified'-which includes whether they can or need to be reasonably accommodated-before a classwide determination of unlawful discrimination ... can be reached." *Id.* at 191.

In approaching the commonality question, the Court is guided by the decision of the United States Court of Appeals in *Hohider v. United Parcel Service, Inc.,* 574 F.3d.169 (3d Cir.2009).[5] In *Hohider,* our appellate court reversed a class-certification order which had been entered in an action involving allegations that the defendant had engaged in a pattern or practice of unlawful discrimination against its employees under the ADA. Specifically, *Hohider* involved allegations that the defendant's company-wide policy which refused accommodations to employees who attempted to return to work after medical absences violated the ADA. *Id.* at 172. The Court of Appeals noted:

> the elements necessary to establish a pattern or practice of unlawful discrimination on behalf of a class may not mirror those necessary to establish a valid individual claim of discrimination, [citation omitted], and so the fact that individualized inquiries might preclude certification of class members' various individual claims of relief is not necessarily dispositive of whether that class's pattern-or-Fractice claim satisfies Rule 23. *It is the ADA, however, and not the Teamsters*[6] *evidentiary framework, that controls the substantive assessment of what elements must be determined to prove a pattern or practice of unlawful discrimination in this case.*

*Hohilder,* 574 F.3d at 184–85 (emphasis added).

Title I of the ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Accordingly, in order to determine whether each claimant was subjected to prohibited discrimination, the Court must probe into factual details and then conduct a multi-step legal analysis. For example, as to each claimant, the Court must resolve each of the following questions:

1. Is the claimant "a qualified individual with a disability?" This question alone depends upon several factors, one of which is when in time does the class member claim to have suffered discrimination. The question is necessitated because the standards changed on January 1, 2009, when the ADA Amendments Act ("ADAAA") of 2008 became effective. The ADAAA "broadened the category of individuals entitled to statutory protection from discrimination under the ADA." *Chedwick v. UPMC,* Civil Action No. 07–806, 2011 WL 1559792, * 19 (W.D.Pa. April 21, 2011). However, the amendments to the ADA do not apply retroactively. Therefore, the Court must use the laws and interpretations of those laws in effect at the time of the complained-of actions.

*7 2. Can the individual perform the essential functions of the job with or without accommodation? First, the Court will need to determine the job of each claim member. Then, the Court would have to determine the essential functions of the job. This inquiry requires that the Court give consideration to the "employer's judgment as to what functions of a job are essential," then balance those requirements against the limitations imposed by the impairment. 42 U.S.C. § 12111(8). The Court would also need to determine whether the claim member could perform the job with or without an accommodation, notwithstanding the impairment. *Id.*

3. Did the class member allege a failure to accommodate and if so, was the requested accommodation reasonable? "The term 'reasonable accommodation' may include (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignments to a vacant position,...." 42 U.S.C. § 12111(9).

4. Does the requested accommodation impose an undue hardship on the employer? "The term 'undue hardship' means an action requiring significant difficulty or expense...." 42 U.S.C. § 12111(10). Multiple factors are to be considered when determining whether the accommodation would impose an undue hardship on the employer. *See* 42 U.S.C. §

12111(10)(B). For each class member, the Court would also have to determine whether Wendy's was aware of the purported accommodation request and/or did the class member otherwise trigger the duty to engage in an interactive process.

5. Did the class member suffer prohibited discrimination?

Moreover, the Court would be required to analyze a variety of individualized defenses that Wendy's might have in response to the claims of class members, including whether the class member is judicially estopped from asserting a disability discrimination claim; did the class member pursue Social Security disability benefits; and/or did the class member pursue short—or longterm disability insurance benefits. Def's Br. at. 14–15.

A number of courts have denied class certification when the class is defined so broadly that all persons with any disabilities, regardless of requested accommodations or modifications, are included. *See Burkett v. U.S. Postal Serv.,* 175 F.R.D. 220, 223–24 (N.D.W.Va.1997) (observing, in declining to certify class of persons with varying medical conditions, that "[i]n the view of several federal courts, the need for this individualized, fact-driven determination renders ... ADA actions ill-suited for class treatment."); *Perdue v. Murphy,* 915 N.E.2d 498 (Ind.Ct.App.2009) (applying an Indiana rule that is not materially different from Rule 23 and declining to certify a class of persons injured by the Family and Social Services Administration's failure to reasonably accommodate their various disabilities and its accompanying denial of benefits due to their alleged failure to cooperate).

**\*8** Nevertheless, there are situations when ADA class actions are certified. *See, e.g., Bates v. United Parcel Serv.,* 204 F.R.D. 440 (N.D.Cal.2001) (certifying class of plaintiffs with hearing disabilities); *Wilson v. Pa. State Police Dep't,* No. Civ. A. 94–cv–6547, 1995 WL 422750 (E.D.Pa. July 17, 1995) (certifying class of candidates for police officer denied employment due to their vision problems). However, as the *Perdue* court noted, in these cases, "there appear to be some unifying criteria, such as a common disability or requested accommodation, for example, so that classwide evaluation of 'qualification' may be conducted without requiring a prohibitive number of individual mini-trials." *Perdue,* 915 N.E.2d at 510. *See Hohider,* 574 F.3d at 189 (suggesting that unifying criteria might include common conditions suffered or accommodations sought).

After reviewing the substantive requirements of the ADA and the definition of the proposed class, the Court finds and rules that the commonality requirement of Rule 23(a)(2) cannot be met as each class member must prove that he or she is a "qualified individual with a disability," a highly individualized analysis which would require a "number of individual mini-trials." Perdue, 915 N.E.2d a 510.

**c.** *Typicality*
The typicality requirement of Rule 23(a)(3) requires that a representative plaintiff must show that his or her claims are "typical" of the claims asserted by the other potential class members. The inquiry pertaining to this requirement focuses on whether the named plaintiff is "markedly different from the class as a whole." *Marcus v. BMW of North America, LLC,* 687 F.3d 583, 598 (3d Cir.2012). The prerequisite is met if the class representative's claims are "generally the same" as those of the other class members in terms of both "the legal theory advanced" and "the factual circumstances underlying that theory." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d at 599. Typicality is measured through a three-part test that examines whether: (i) the putative representative's claims are generally the same as the class members' claims, relative to both the legal theory at issue and the underlying facts; (ii) the putative representative is subject to a defense that may not be alleged against many other class members and that may become a major issue in the litigation; and (iii) the putative representative's interests are "sufficiently aligned" with other class members. *Id.*

Wendy's argues that Semenko's claim is not "typical" of the claims of the potential class members for several reasons. First, the ADA inquiry is highly individualized, and Semenko's claim may look factually different than other putative class members. For example, factual differences may include, *inter alia,* "the type of impairment, the degree of limitation, the job held, the essential functions of the job held (or to which transfer is sought), accommodation sought, and the degree to which the requested accommodation caused undue hardship." Def's Br. at 16. Furthermore, Wendy's argues that Semenko's legal theories may differ from those asserted by other class members. For example, those "class members who contend they suffered discrimination after the ADAAA became effective would rely on different standards than Semenko to establish that they are disabled under the statutes." *Id.*

**\*9** Next, Wendy's argues that some class members may be subjected to different defenses. For example, some class members will be subject to the defense of judicial estoppel if they pursued short or long-term disability benefits and/or Social Security Disability,[7] while others may not be subject to that defense. There may be an individual statute of limitations defense applicable to Semenko's individual claim that does not apply to other class members. *Id.* Likewise, the defense of reasonableness of accommodation will vary from case to case.

Finally, Wendy's argues that the interests of Semenko do not align with the members of the purported class. Specifically, while Semenko wanted to return to work,[8] some former employees may not want to return to work, while others may. Some current employees may want specific accommodations other than a transfer to a vacant and funded position, and some may not. *Id.*

In *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir.1994), our appellate court explained that factual differences will not necessarily defeat typicality, particularly where an action challenges a policy or practice. However, the Court of Appeals also recognized that typicality will be lacking due to intraclass conflicts if the legal theories of the named plaintiffs are at odds with those of the absentee class members. *Id.* at 57–58.

"The premise of the typicality requirement is simply stated: as goes the claim of the named Plaintiff, so go the claims of the class ." *Sprague v. General Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998). Here, as discussed *supra,* the facts and evidence needed to prove the claims of each member of the proposed class will be unique to each claimant. Determining whether each claimant is entitled to recover under the ADA will be a highly individualized inquiry. Proof of Semenko's individual claims will not prove the claims of other class members.

A plaintiff's individual claims are "typical" of other members of the class only if proof of the plaintiff's factual circumstances will also automatically prove the claims of all other members of the class. "[C]ommon requests for relief ... or common legal theories do not establish typicality when the facts required to prove the claims are markedly different among class members." *Retired Chicago Police Ass'n v. Chicago,* 141 F.R.D. 477, 486 (N.D.Ill.1992), *aff'd in part and rev'd in part,* 7 F.3d 585 (1993). "If proof of the representatives' claims could not necessarily prove all of the proposed class members' claims, the representatives are not typical of the proposed members' claims." *Liberty Lincoln Mercury v. Ford Mktg. Corp.,* 149 F.R.D. 65, 77 (D.N.J.1996).

For these reasons, the Court finds and rules that typicality is lacking because Plaintiff's individual claim will not prove the issue with respect to the claims of the other proposed class members. Accordingly, the Court finds and rules that Plaintiff's claim is not typical of the purported class claims for the purpose of class-wide adjudication under Rule 23(a)(3).

**d.** *Adequacy*
**\*10** The final requirement under Rule 23(a) is that the named plaintiff must be able to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The United States Court of Appeals for the Third Circuit has advised that the "adequacy" inquiry has two components. First, the adequacy inquiry "tests the qualifications of the counsel to represent the class."[9] Second, it seeks to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 521 (3d Cir.2004).

The "intraclass conflict" aspect of the adequacy analysis dovetails with the typicality inquiry. Wendy's argues that two clear conflicts of interest between Semenko and other class members are apparent from the face of the Complaint. First, a plaintiff is not an adequate representative where "any member of the putative class who reported to plaintiff would be claiming that plaintiff acted in violation of the law and of defendant's policies." *Wright v. Family Dollar, Inc.,* No. 10 C 4410, 2010 U.S. Dist. LEXIS 126643, \*7, 2010 WL 4962838 (N.D.Ill. Nov.30, 2010). To the extent that any of the proposed class members reported to Semenko, she may have been involved in the Company's allegedly improper failure to accommodate.

Second, Wendy's argues that classes of proposed putative members that include former employees and currently employed managers raise additional conflict of concerns "because allegations that current managers 'violated both defendant's policies and [applicable] law ... could have a negative effect on current store managers' employment." Def.'s Br. at 17 (quoting *Wright,* 2010 U.S. Dist. LEXIS 126643, at \*7, 2010 WL 4962838).

Plaintiff did not address these arguments in her response. However, a plaintiff must satisfy all four of the prerequisites found in Rule 23(a). Because the Court has ruled that Plaintiff cannot meet the prerequisites enumerated in Rule 23(a)(2) and (3), the Court need not address the adequacy requirement contained in Rule 23(a)(4).

**b. *Rule 23(b)***

Semenko relies upon both Rule 23(b)(2) and Rule 23(b)(3). Because the Court has determined that the commonality and typicality prerequisites in Rule 23(a) are not met, it need not address in detail whether Plaintiff satisfies the requirements of Rule 23(b)(2) and/or Rule 23(b)(3).[10]

Certification under Rule 23(b)(2) is appropriate only when the relief sought is primarily injunctive or declaratory. Further, Rule 23(b)(2) does not authorize class certification when each class member would be entitled to an individualized award of monetary damages. *Wal–Mart Stores, Inc.,* 131 S.Ct. at 2557–58 (holding monetary claims for individualized relief do not satisfy Rule 23(b) (2)). Here, Semenko seeks a variety of monetary damages of various types on behalf of the proposed class, including back pay with prejudgment interest, compensatory and punitive damages. Complaint at ¶ 36. Importantly, the requested monetary damages are not subject to across-the-board relief, but rather require individualized inquiries to determine the individual back pay, the individual compensatory damages, and the individual punitive damages. Given these circumstances, the class would become almost unmanageable, mandating multiple sub-trials to resolve all outstanding issues.

*11 As to Rule 23(b)(3), the Court is not persuaded by Semenko's arguments with regard to predominance and does not find, especially in light of the highly individualized inquiries that will be necessary given the disability discrimination allegations, that a class action of the sort proposed by Semenko is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed.R.Civ.P. 23(b)(3). "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Comcast Corp. v. Behrend,* —— U.S. ——, 133 S.Ct. 1426, 185 L.Ed.2d 515, 2013 WL 1222646 (March 27, 2013) (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623–24, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). *See also in Re LifeUSA Holding,* Inc., 242 F.3d 136, 144–47 (3d Cir.2001) (holding that a situation that did not satisfy the less demanding commonality requirement of Rule 23(a) did not satisfy the predominance requirement of Rule 23(b)(3) as well). As the court explained in *Lockwood Motors, Inc. v. General Motors Corp.,* 162 F.R.D. 569, 580 (D.Minn.1995), predominance exists only "when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position."

As explained *supra,* individual issues clearly predominate over common issues with respect to both liability and damages in this case, and the proposed class members' claims cannot be adjudicated in a one size fits all, class action format, as required by Rule 23(b)(3) for class certification. Accordingly, the Court finds and rules that Semenko has not met the requirements for class action relief set forth in either Rule 23(b)(2) or Rule 23(b)(3).

### Conclusion

The Court recognizes that district courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature. However, after a careful and deliberate review of the applicable case law and the parties' respective positions, the Court concludes that this is one of those rare cases in which no amount of discovery will demonstrate that the class can be maintained.

The Court finds and rules that Plaintiff has failed to demonstrate that all of the prerequisites in Rule 23(a) have been met. Specifically, the Court concludes that Semenko does not satisfy the requirements of commonality and typicality. Further, the Court also concludes that Semenko does not meet any of the criteria of Rule 23(b). Accordingly, the motion to strike will be granted and the proposed class can not be certified.

An appropriate Order follows.

### ORDER OF COURT

**AND NOW,** this 12th day of April, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED AND DECREED that Defendant's Motion to Strike is **GRANTED.**

Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D), Plaintiff is hereby **ORDERED** that on or before April 22, 2013, she shall amend her Complaint in Class Action to reflect that her class action allegations have been deleted. Thereafter, Defendant shall respond on or before May 6, 2013.

**Parallel Citations**

27 A.D. Cases 1378

Footnotes

1   *Landsman* involved claims that defendants sent faxes to the class of plaintiffs without their consent. 640 F.3d at 72. The district court held that the class could not meet Rule 23's typicality or predominance requirements because "there were too many 'crucial factual determinations to be made with respect to claims and defenses that will vary from party to party,' in particular, consent to receive faxes...." *Id.* at 93. The appellate court responded that "it is not clear that, as a matter of law, differences regarding consent are sufficient to defeat class allegations." *Id.* at 94.

2   In her Response to the Motion to Strike, Plaintiff changed the definition of the class and stated "that the proposed class would be limited to those individuals with permanent medical restrictions who applied for long-term disability benefits." Pl.'s Resp. at 3.

3   The Court notes, however, that Wendy's did not move to dismiss the class allegations under Rule 12(b)(6), but rather moves to strike the class allegations under Rule 12(f), 23(c)(1)(A), and 23(d)(1)(D).

4   Although Rule 23(a)(2) refers to "questions of law or fact common to the class," the plural form of the word "question" has not been construed to require a showing of multiple common questions. *In re: Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 597 n .10 (3d Cir.2009).

5   The Honorable Sandra Day O'Connor, *Associate Justice (Ret.)* of the Supreme Court of the United States, who sat by designation, was a member of the panel in this case. *Hohider,* 574 F.3d at 171.

6   *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). In *Teamsters,* the government brought suit against a trucking company and a union representing employees of the company under Title VII of the Civil Rights Act. The government argued that both the company and the union exhibited a pattern and practice of discrimination in denying preferable, higher paying jobs to minorities. The Supreme Court noted that once a pattern and practice of discrimination was established, the individual need only demonstrate that he was denied a relevant employment benefit. *Id.* at 363. The burden would then shift to the defendant "to demonstrate that the individual ... was denied an employment opportunity for lawful reasons." *Id.* In other words, where a single minority employee may not be able to establish discrimination simply by demonstrating that he was denied a job, where a pattern and practice of discrimination by the employer has already been proved, this mere denial of an employment benefit is sufficient to make out a claim for discrimination.

7   In her Complaint, Semenko alleges that she received long-term disability benefits during the time of her medical leave. Complaint at ¶ 9.

8   It appears that in late 2007, the Wendy's facility at which Semenko had worked was permanently closed. Pl.'s Resp., Ex. 1.

9   The Court notes that Plaintiff's attorney is a skilled and experienced class action litigator whose qualifications are not challenged.

10  The Court notes that Plaintiff did not specifically address Wendy's arguments about her inability to meet the requirements of Rule 23(b)(2) and/or Rule 23(b)(3). Rather, Plaintiff changed her class definition. However, even if such changed class definition was accepted by the Court, it would not eliminate the highly individualized inquiries that must be made on the disability discrimination claims alleged in this lawsuit.

End of Document                                         © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2003 WL 1908031
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Walter BLAIR and John Gray, Plaintiffs,
v.
SUPPORTKIDS, INC., d/b/a Child
Support Enforcement; and Richard
"Casey" Hoffman, Defendants.

No. 02 C 0632.   |   April 18, 2003.

Opinion

### MEMORANDUM OPINION AND ORDER

ST. EVE, J.

*1 Plaintiffs Walter Blair and John Gray have moved for class certification on their claims for fraud (Count III), tortious interference (Count IV), unauthorized practice of law (Count V), violation of the Illinois Collection Agency Act (Count VI), and violation of the Illinois Consumer Fraud Act (VII). For the reasons set forth below, Plaintiffs' motion for class certification is denied.

### BACKGROUND

Defendant SupportKids, Inc. d/b/a as Child Support Enforcement (hereinafter "CSE") is a child support collection agency that purports to represent parents owed child support obligations. (*See* R. 24–1, Am. Complaint, ¶ 9.) Defendant Richard "Casey" Hoffman is the chief executive officer of CSE. (*Id.,* ¶ 8.)

Plaintiffs Blair and Gray allege that Defendants sent purported "Order/Notices to Withhold Income for Child Support" to their respective employers, suggesting that Blair and Gray have outstanding child support obligations. (*See* R. 24–1, Am. Complaint, ¶¶ 12, 33.) Plaintiffs contend that they have satisfied their support obligations and that CSE is not entitled to collect money on behalf of their former spouses. (*Id.,* ¶¶ 41–51.) Instead, Plaintiffs suggest that under Illinois law only the appropriate public agency, the obligee, or an attorney licensed to practice law in Illinois can send the order/notices for income withholding. (*Id.,* ¶¶ 45–46.)

Plaintiffs seek a declaratory judgment that CSE is not entitled to collect $460,391.02 from Plaintiffs. (*See* R. 24–1, Am. Complaint, ¶¶ 52–53.) In addition, Plaintiffs seek damages for fraud (Count II), defamation (Count III), tortious interference with a contract (Count IV), unlicensed practice of law (Count V), violation of the Illinois Collection Agency Act ("ICAA") (Count VI), and violation of the Illinois Consumer Fraud Act ("ICFA"). (*Id.,* ¶¶ 54–125.)

Plaintiffs have moved for certification of two different classes. The first purported class, brought under the fraud, tortious interference, unauthorized practice of law, and ICFA claims, consists of "[a]ll putative Illinois obligors with respect to whom CSE has issued a purported 'order/notice of withholding' such as [the order/notices used with Blair and Gray]." (R. 21–1, Pls.' Mot. for Class Certification, at p. 1.) The second purported class, brought under the claim for violation of the ICAA, consists of "all putative Illinois obligors to whom CSE has issued a purported 'order/notice of withholding." ' (*Id.*)

### ANALYSIS

### I. JURISDICTION
As an initial matter, in their opposition to class certification, Defendants suggest that the Court should dismiss Plaintiffs' claims because they lack jurisdiction for three reasons. First, Defendants suggest that the declaratory judgment claim by the two named plaintiffs, Blair and Gray, does not satisfy the amount in controversy requirement. Second, even if Plaintiffs' declaratory judgment claim does satisfy the amount in controversy requirement, Defendants argue that Plaintiffs' claim falls within the "domestic relations" exception to jurisdiction. Third, Defendants contend that there is no diversity jurisdiction over the Amended Complaint's class claims. None of these arguments has merit.

#### A. The Amount in Controversy
*2 The Amended Complaint alleges that Defendants sent purported order/notices to the Blair and Grays' employers, seeking to collect $85,376.56 and $375,014.46 respectively. (*See* R. 24–1, Am. Complaint, ¶¶ 12, 33.) Plaintiffs seek a declaratory judgment that the Defendants are not entitled to collect these amounts, which plainly exceed the jurisdictional minimum. *See* 28 U.S.C. § 1332(a). Nonetheless, Defendants suggest that the amount in controversy requirement is not

satisfied because CSE managed to collect only a few hundred dollars from Blair and Gray before they filed this lawsuit.

Without citation to any authority, Defendants argue that diversity jurisdiction can only be premised on the damages actually sustained by Blair and Gray and not the amounts that Defendants apparently believe they were entitled to collect from Plaintiffs. That is incorrect. It is well-settled that the amount in controversy in a declaratory judgment action like this is the value of the of the plaintiff's purported obligation to the defendant. *See, e.g., Motorists Mut. Ins. Co. v. Simpson,* 404 F.2d 511, 515 (7th Cir.1968) (" 'Where an insurer denies his obligations under a liability insurance policy ... the amount in controversy is measured by the injured third-party's bona fide claim against the insured." ') (quoting 6A James William Moore et. al., Moore's Federal Practice, ¶ 57.23 (2nd ed.1966)).

**B. The Domestic Relations Exception**
The domestic relations exception is premised on the rationale that domestic relations disputes have been traditionally left to the state courts, which have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling such issues. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703–04, 112 S.Ct. 2206, 2215, 119 L.Ed.2d 468 (1992); *see also Newman v. Indiana,* 129 F.3d 937, 939 (7th Cir.1997) ("The subject of domestic relations ... is the primary responsibility of the state courts, administering state law, rather than the federal courts."). If an action falls within the scope of the exception, the federal court lacks jurisdiction, regardless whether other jurisdictional prerequisites are satisfied. *See Lloyd v. Loeffler,* 694 F.2d 489, 491 (7th Cir.1982); *see also Dunn v. Cometa,* 238 F.3d 38, 41 (1st Cir.2001) ("The [domestic relations] limitation is one on subject matter jurisdiction, and is therefore not waivable by the parties.").

The precise reach of the domestic relations exception is somewhat unclear. In *Ankenbrandt,* the Supreme Court suggested in dicta that "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree." *Id.,* 504 U.S. at 704, 112 S.Ct. at 2215. *See also Lannan v. Maul,* 979 F.2d 627, 631 (8th Cir.1992) ("Thus, we conclude that the domestic relations exception, as articulated by the Supreme Court in *Ankenbrandt,* is a narrow one."); *Cole v. Cole,* 633 F.2d 1083, 1088 (4th Cir.1980) ("A district court may not simply avoid all diversity cases having intrafamily aspects.").

*3 The Seventh Circuit has emphasized that, in addition to "core" domestic relations cases involving the issuance or review of a divorce, alimony, or child custody decree, the domestic relations exception also has a penumbra that extends to "ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." *Friedlander v. Friedlander,* 149 F.3d 739, 740 (7th Cir.1998). *See also Allen v. Allen,* 48 F.3d 259, 261 n. 2 (7th Cir.1995) (holding that a constitutional claim involving custody dispute falls within the domestic relations exception).

The mere fact that a particular case is related to or arises out of a divorce, custody or support issue, however, is not sufficient to implicate the domestic relations exception. *See Friedlander,* 149 F.3d at 740–41 ("We have held in *Lloyd* that the domestic relations exception did not extend to proceedings that merely arise out of a domestic relations dispute; and any doubt about the validity of that holding was dispelled by *Ankenbrandt.*"); *Kuhn v. Kuhn,* No. 98 C 2395, 1998 WL 673629, at *4 (N.D.Ill. Sept. 16, 1989) ("The domestic relations exception bars a federal court from exercising jurisdiction over a case involving one of more of the 'distinctive forms of relief associated with domestic relations jurisdiction ...' ") (citation omitted).

Here, Plaintiffs' declaratory judgment action does not fall within the core of the domestic relations exception because Plaintiffs do not seek a divorce or an annulment, an award of child custody, or a decree of alimony or child support. Moreover, the action does not fall within the penumbra because it is not a typical ancillary proceeding that would involve review of a divorce or support decree. Instead, Plaintiffs allege that Defendants are not entitled to represent their former wives and cannot collect any money from them. At most, resolution of Plaintiffs' claims would involve inquiry into whether CSE was correct when it claimed that Blair and Gray have unsatisfied support obligations, rather than an actual challenge to those support obligations. Accordingly, the domestic relations exception is not implicated. *See Kuhn,* 1998 WL 673629, at *4 (holding that the domestic relations exception did not apply to tort claims arising out of divorce action because those claims did not involve "distinctive forms of relief associated with domestic relations jurisdiction.") (internal citation and quotation omitted).[1]

### C. Alleged Members of the Purported Class

Because this Court has jurisdiction over the claims of the named plaintiffs, Blair and Gray, based on diversity, the Court has supplemental jurisdiction over the claims of the alleged members of the purported class. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.,* 77 F.3d 928, 930–31 (7th Cir.1996); *In re Starlink Corn Products Liab. Litig.,* 211 F.Supp.2d 1060, 1065 (N.D.Ill.2002) ("In the Seventh Circuit, as long as one named plaintiff satisfies the jurisdictional amount, 28 U.S.C. § 1367 authorizes supplemental jurisdiction over other plaintiffs with related claims.").

### II. CLASS CERTIFICATION

*4 Plaintiffs bear the burden of proving that their proposed classes meet each of the requirements set forth in Federal Rule of Civil Procedure 23(a) and 23(b)(3). *See Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). Initially, Plaintiffs must meet the requirements of numerosity, commonality, typicality, and adequacy of representation pursuant to Rule 23(a). *See Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993). In addition, Plaintiffs must also satisfy the requirements that common issues of fact and law predominate and that the class action device would be a superior means of resolving this controversy under Rule 23(b)(3). *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Vargas v. Universal Mortg. Corp.,* No. 01 C 0087, 2001 WL 1545874, at *1 (N.D. Ill. Nov 29, 2001). Failure to establish any one element requires denial of their motion for class certification. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993); *Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980).

Plaintiffs assert that there are numerous common issues of fact and law, including whether; (i) the order/notices of income withholding served by CSE are a fraudulent simulation of legal process; (ii) CSE intended to induce reliance by employers by using the order/notices of income withholding; (iii) CSE is engaged in the unauthorized practice of law by issuing such documents; and (iv) CSE has tortiously interfered with the employment of the alleged members of the purported class by issuing such documents. (R. 21–1, Pls.' Mot. for Class Certification, at p. 4.) Setting aside whether, indeed, these are truly common issues, this Court must decide whether these alleged common issues would predominate over individual issues.

To satisfy the predominance requirement, a plaintiff must demonstrate that common issues of law and fact are central to all of their claims. *Williams v. Ford Motor Co.,* No. 97 C 162, 2000 WL 263706, at *3 (N.D.Ill. Feb. 25, 2000); *Dhamer v. Bristol–Myers Squibb Co.,* 183 F.R.D. 520, 529 (N.D.Ill.1998). The court must "probe behind the pleadings" to understand the parties' claims and defenses and determine whether they are subject to proof by common evidence. *Gen. Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2375, 72 L.Ed.2d 740 (1982). *See also Alexander v. Q.T.S. Corp.,* No. 98 C 3234, 1999 WL 573358, at *4 (N .D. Ill. July 30, 1999) (the court " 'may examine the substantive elements of the underlying cause of action to determine if they are amenable to class-wide proof' ") (citation omitted). If liability questions are not subject to class wide proof but, rather, would require "both individual and fact intensive" determinations, common issues cannot be found to predominate. *Roman v. First Franklin Financial Corp.,* No. 00 C 7228, 2001 WL 322563, at *2 (N.D.Ill. March 3, 2001). *See also Dhamer,* 183 F.R.D. at 530 ("When individual issues that cannot be resolved on a class-wide basis dominate, the litigation should not proceed as a class action.").

*5 In this case, there are several individual issues that defeat the predominance requirement. In particular, determining whether the order/notices sent by CSE were actually fraudulent to assert the existence of unsatisfied support obligations would require numerous fact intensive individual inquiries into the support obligations of every allegedly delinquent husband or father. The allegations of the Amended Complaint illustrate that resolving these issues will be no simple matter. For example, although Gray admits that his divorce decree obligated him to provide $60 per week to support three children, he contends that this decree was informally modified and that the decree was never revived. (*See* R. 24–1, Am. Complaint, ¶¶ 22–26.) Determining whether CSE was correct to assert that Gray owed $375,014.46 in back child support would require the Court to weigh evidence concerning the original divorce decree, the alleged subsequent modification of that decree, and Gray's efforts to fulfill any remaining support obligations. The Court would have to repeat such an individual and fact intensive inquiry for every alleged member of the purported class in order to assess whether the order/notices were fraudulent.

In addition, resolving Plaintiffs' fraud claims will require numerous fact intensive individual inquiries concerning whether the employers who received purported order/notices from CSE relied upon them and whether the order/notices caused any damages. Such individual issues of causation, reliance and damages plague class actions brought for fraud, and the courts frequently deny class certification in such cases because those issues generally predominate over any alleged common issues of fact or law. *See, e.g., Johnson v. Aronson Furniture Co.,* No. 96 C 117, 1998 WL 641342, at *7 (N.D.Ill. Sept. 11, 1998); *Fisher v. Bristol–Myers Squibb Co.,* 181 F.R.D. 365, 372 (N.D.Ill.1998).

Individual issues likewise doom Plaintiffs' proposed class under the ICAA claim. Plaintiffs allege that CSE's use of the order/notices violates several different provisions of the ICAA, including the provision that prohibits the disclosure of "information adversely affecting a debtor's reputation for credit worthiness *with knowledge the information is false,"* 225 ILCS § 425/9(a)(13) (emphasis added), and the provision that bars the disclosure of "information concerning the existence of a debt which the debt collector *knows* to be reasonably disputed by the debtor without disclosing the fact that the debtor disputes the debt." *Id.* § 425/9(a)(18) (emphasis added). Resolving claims under each of these subsections will require numerous fact intensive individual inquiries concerning what CSE knew about the support obligations of each of the persons it targeted for order/notices for incoming withholding. The need for such plaintiff specific inquiries defeats predominance over the class for the ICAA claim.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification (R. 21–1) is denied.

Footnotes

1   Defendants suggest that this case is analogous to *Surface v. Dobbins,* No. MC–3–89–021, 1993 WL 1318609 (S.D.Ohio Sept. 23, 1993). There, the court held an action by an employee challenging the garnishment of his wages to pay back child support was covered by the domestic relations exception because the employee apparently sought to invalidate the underlying support order. *Id.,* at *4 ("If the federal court is not competent to issue a domestic relations order, it cannot be competent to *review and invalidate* one.") (emphasis added). *Surface* is inapposite because here Plaintiffs have not asked this Court to review and invalidate a support order.

End of Document                                           © 2013 Thomson Reuters. No claim to original U.S. Government Works.

2000 WL 781868
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois, Eastern Division.

Valerie BENNETT, Plaintiff,
v.
Mary ROBERTS, Marshall Asinall, Timothy Costello, Livia McCammon, O.C. Davenport, Brian Barnes, and Rudy Carl, (Directors) in their official and individual capacities as members of the Board of Education, School District 203, DuPage County, Defendants.

No. 96 C 6917.  |  June 15, 2000.

Opinion

MEMORANDUM OPINION AND ORDER

PLUNKETT, District J.

*1 Before the Court is Magistrate Judge Martin C. Ashman's Report and Recommendation ("Report") recommending that the Court deny plaintiff Valerie Bennett's motion to certify a class of plaintiffs in her suit against the named Directors [1] of School District 203 ("defendants" or "District"). Bennett filed a timely objection to the Report and defendants have filed a timely response to plaintiff's objections in accordance with Fed.R.Civ.P. 72. In conjunction with their response, defendants also filed a motion to strike plaintiff's objections. For the reasons provided in this Memorandum Opinion and Order, the Court denies defendants' motion to strike, finds plaintiff's objections without merit and adopts the Report in its entirety.

*Standard of Review*

This matter was referred to Magistrate Judge Ashman by Judge Williams [2] pursuant to Rule 72(b) of the Federal Rules of Civil Procedure. The Court is required to "make a de novo determination ... of any portion of the magistrate judge's disposition to which specific written objection has been made." FED. R. CIV. P. 72(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id.*

*Facts*

Bennett filed a three-count complaint against the directors of District 203 on behalf of herself and other similarly situated minorities who applied for a teaching position with the District. In her second amended complaint, Bennett claims that the District engaged in discriminatory practices prohibited by 42 U.S.C. §§ 1981, 1983, Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e), *et seq.,* and the equal protection clause of the Fourteenth Amendment. Bennett seeks to certify a class comprised of all minorities, including those employed part-time by the District, who are certified to teach grades K-12 and who applied for full-time teaching positions with schools located in District 203, but were rejected solely because of their race.

School District 203 is a public school unit comprised of twenty-one elementary, junior high and high schools. (Defs.' Resp. at 2.) Michael L. Kiser, district counsel and assistant superintendent for District 203, submitted an affidavit to the magistrate on District 203's hiring procedures and policies. (*Id.,* Ex. 1, Kiser Aff.) According to Kiser, due to the large volume of applications for teaching positions received by the District, each fall applicants for teaching positions were required to submit a data sheet, which summarized the applicant's qualifications and skills. This sheet does not identify the applicant's race. (*Id.,* Ex. 1, Kiser Aff. ¶ 5.) When a school had a vacancy for a teaching position, the building principal would select applicants for interviews from a print-out of the information contained on the applicant data sheets. (*Id.* ¶ 7.) Each building principal had the discretion to determine the criteria for selection of the candidates and could request building personnel to assist the principal in identifying a candidate's strengths and/or weaknesses. (*Id.* ¶¶ 7, 9.) The building principal would then recommend the hiring of a particular candidate to Kiser, who typically recommended that applicant for hiring to the Board of Education, which has the exclusive authority to hire employees. (*Id.* ¶ 11.)

*2 Bennett, who is black, submitted an applicant data sheet in fall of 1994 for a teaching position in District 203. Around that time, Bennett interviewed for two District 203 positions. The first one was for a part-time teaching position at an elementary school. (Pl.'s Sec. Am. Compl. ¶ 9.) She was

interviewed by the principal and three other staff members, all of whom were white. Bennett did not receive an offer for that position. At or around that same time, Bennet applied for a full-time fifth grade teaching position at a different school in District 203. (*Id.* ¶ 33(j).) She was interviewed by that school's principal, who was white. Bennett was not offered that position either.

Bennett claims in her objections that the magistrate inappropriately limited the facts (and his decision) to those two circumstances. (Pl.'s Objections at 2.) She asserts that her complaint covers District 203's "refusal" to give Bennett an interview in 1995 after she was identified as a minority in her two interviews in late 1994. (*Id.*) While Bennett's complaint does not clearly identify this claim, she does allege generally that she and other minorities were excluded from the interview process because defendants used "non-job related criteria" to exclude them. (Pl.'s Sec. Am. Compl. ¶ 33(j)). According to Bennett's objections, this criteria included or was limited to the use of a white-staff screening committee, which the magistrate did address in his decision. Furthermore, the Court's own review of the facts does not further support a class action for minorities like Bennett who allegedly were denied opportunities to attend additional interviews in District 203 after they had been "screened" in an interview by white-staff committees. In fact, as class representative, Bennett has not demonstrated that she properly applied for positions in District 203 after the 1994-95 school year. While she claims that her application data file from November 1994 was enough to keep her in the computer generated applicant pool for the 1995-96 school year, defendants flatly reject that claim with evidence of its hiring system. (*See* Defs.' Resp. at 3; *id.*, Ex. 1, Kiser Aff. ¶ 16.) According to the District's hiring procedure, Bennett was not within the 1995-96 applicant pool from which District 203 schools could pull applicants to interview for vacant positions. (*Id.*; *id.*, Ex. 1, Kiser Aff. ¶¶ 5, 16.) These facts belie Bennett's claim she "was eligible for other jobs long after the fall 1994 interviews and was denied opportunities to be interviewed for other jobs in the ... District." (Pl.'s Objections at 2.) In any event, Bennett's objection on the magistrate's presentation of the facts is without merit because her claim that minorities were denied interviews is evaluated by the magistrate and this Court as a part of her class discrimination claim that the District screened its minority applicants.

### Discussion

In order to certify a class, plaintiff must satisfy the requirements of Federal Rule of Civil Procedure ("Rule") 23(a) and (b). As the magistrate correctly noted, our inquiry is limited to whether Rule 23's requirements are satisfied, not the ultimate merits of the claim. *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992). It is plaintiff's burden to demonstrate that each of the requirements for class certification is satisfied. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 613-14 (1997).

\*3 Rule 23 gives a two-pronged analysis to determine whether a class action is appropriate. First, "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161 (1982). These requirements are as follows:

> (1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defense of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

FED. R. CIV. P. 23(a); *see Windsor,* 521 U.S. at 613. Plaintiff must also satisfy one of the three subsections of Rule 23(b) (1)-(3). Bennett relies on Rule 23(b)(2) in paragraph 4(d) of her second amended complaint. This subsection permits certification when "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." FED. R. CIV. PRO. 23(b)(2).

### Rule 23(a) Requirements

The magistrate began his analysis with the four requirements under Rule 23(a). While he found Bennett satisfied the numerosity requirement, he held that she failed to demonstrate any of the remaining three requirements: commonality, typicality and adequacy of representation. Bennett objects to the magistrate's findings on these requirements, claiming that she has satisfied all three.

*Commonality and Typicality*
Commonality requires that there be questions of law and fact common to the class. *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). Some factual variation among the class grievances will not defeat a class action. *Id.* "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Id.* at 1018.

Typicality is closely related to commonality. *Falcon,* 457 U.S. at 157, n.13; *Rosario,* 963 F.2d at 1018. A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." ' *Rosario,* 963 F.2d at 1018 (citation omitted). Even if based on the same legal theory, the claims must all contain a common core of allegations. *See Allen v. City of Chicago,* 828 F.Supp. 543, 553 (N.D.Ill.1993).

Bennett argues that the magistrate failed to recognize the common nucleus of facts and typical conduct presented in her complaint to support the commonality and typicality elements of Rule 23. (Pl.'s Objections at 3-6.) In her objections, she complains generally that her allegations that the District refused to hire minorities and failed to implement an affirmative action plan demonstrate commonality and typicality. (Id. at 6.) However, as the magistrate correctly noted, these averments of generalized discrimination in hiring are not enough to satisfy commonality and typicality. (Report at 7.) As the court in *Falcon* stressed, "the mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race ... is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." 457 U.S. at 159. Bennett has done little more than make generalized allegations of broad types of discrimination by the District. While she alleges somewhat more specific claims, such that the District excluded minority teachers from full-time teaching positions, screened minority applicants using all white screening committees, used subjective hiring criteria, and provided no written documentation for their employment decisions (Pl.'s Sec. Am. Compl. ¶¶ 33(a), (c), (j)), these claims still do not overcome the individualized nature of each class member's claim. As the magistrate found, "whether a hiring decision ... was discriminatory would depend on too many individualized factors, such as the applicant's qualifications, the number of applicants applying for a particular position, each applicant's previous work performance and duties, the qualifications of the employees actually selected for each position for which each applicant was not selected, whether the employment and hiring conditions were similar from school to school, and so forth." (Report at 8-9.) Bennett has failed to show this Court why these varied and individualized factors do not cut against class certification. Accordingly, we agree with the magistrate that the purpose of the class action device would be frustrated by the mini-trials required in this situation. Moreover, as noted by Magistrate Ashman, the potential class seeks damages that would presumably include back pay and lost wages, which would require further review of individualized factors. All of these factors undermine Bennett's argument that her claim is common and typical of the class.

*4 The fragmented nature of the claims of each purported class member is further amplified by the lack of a centralized hiring decision maker. While the Board of Education has the exclusive authority under Illinois law to hire employees, the facts show that each building principal uses his or her discretion in determining the criteria for selecting and recommending candidates to the Board for teaching positions. In fact, this point is best demonstrated by Bennett's personal situation in the District: In one interview she was allegedly interviewed by a "white screening-committee," while in another interview at a different school, she was not. While we understand that some factual variations should not defeat a finding of commonality or typicality, *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), the individualized claims of the purported class far outweigh any common or typical elements represented in Bennett's claim that the District discriminated against her and other minorities in hiring.

Bennett further argues that commonality and typicality are present in her allegation that District failed to follow state law by refusing to implement an affirmative action plan. [3] (Pl.'s Objections at 5, 6; Pl's Reply at 2-4.) Section 10-20.7a of The School Code states that a school board has an obligation "[t]o develop and implement, by 1991, a policy of recruitment and hiring of minority teachers, other certificated employees and non-certificated employees, including custodians, lunch room staff and teachers aides." 105 ILL. COMP. STAT. 5/10-20.7a (West 2000). Bennett claims in her reply brief that "new" evidence not before the magistrate proves the District failed to implement an "affirmative action plan" in violation of state law. (Pl.'s Reply at 1-2.) This evidence, she claims, further demonstrates that this action is worthy of class certification of minority applicants. According to Bennett, the

magistrate did not see the minutes of a District board meeting on February 17, 1992, where the board approved "revised policy # 4116: Non-discrimination in Minority Recruitment & Hiring." (*Id.,* Ex. 4.) This policy, in part, stated that the District "shall continue to recruit qualified minority job applicants and to hire qualified job applicants on a non-discriminatory basis ...." (*Id.*) We fail to see how this evidence helps plaintiff's claim for class certification or how it serves as proof that the District violated state law. For one, Bennett still does not overcome the highly individualized nature of each purported class member's claims by alleging a broad-based failure to recruit and hire minority teachers. This claim does little more than her general allegation of discriminatory practices in hiring to give the potential class a cohesive claim. Furthermore, while we do not review the merits of the litigation at this point, the "new" evidence cuts against Bennett's claim that the District violated state law. Rather, the February 1992 meeting minutes demonstrate that the District did implement a policy pursuant to state law. Nothing in The School Code section cited by the parties states that this policy must be an affirmative action plan, and on its face, it appears that the District's generic policy fulfilled the requirements of state law.

**\*5** Bennett further argues that the magistrate failed to address her claim that the District's hiring practices, policies and customs for full-time classroom teachers had a disparate impact on the recruitment and hiring of Bennett and other minorities.[4] (Pl.'s Objections at 5; Pl.'s Sec. Am. Compl. ¶ 34[5].) In an apparent attempt to support this claim, Bennett submits statistics calculated by her expert. She argues that the magistrate improperly rejected her expert report which concluded that race had to be a factor in hiring because so few minorities were employed by the District. While the magistrate did not discuss this report in his opinion, he did imply in a footnote that evidence of racial statistics was not enough to support commonality in this case. (Report at 8, n. 4.) We agree. Even if we accepted Bennett's expert's report as fact, these statistics still do nothing bind together the individualized nature of claims of the prospective class and the lack of a centralized hiring decision maker. *See Betts v. Sundstrand,* No. 97 C 50188, 1999 WL 436579, at \*7 (N.D. Ill. June 21, 1999) (holding that across-the-board class allegations of disparate impact and their proffered statistics do not overcome the essentially individualized nature of the claims plaintiffs assert.) Plaintiff's arguments focus on the use of statistics to prove liability for disparate impact. (Pl.'s Objections at 4-5.) However, the merits are not at issue at this stage, and we find the statistics do not help Bennett establish commonality or typicality on this claim.

### *Adequacy of Representation*

Even if we found the magistrate's ruling in error on the commonality and typicality factors, Bennett must still clear the adequacy of representation factor to satisfy Rule 23(a)'s requirements. She did not do so before the magistrate, and she has presented no objections that lead us to conclude that the magistrate was incorrect in his assessment that Bennett would fail to adequately and fairly represent the interests of the class as a whole.

The adequacy of representation is determined by a showing that the named plaintiff's counsel is qualified to competently pursue the putative class action and that the members of the putative class do not have antagonistic or conflicting interests. *See Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 598 (7th Cir.1993). The magistrate found that Bennett failed to make the requisite showing on both of these elements.

Plaintiff objects to the magistrate's finding that her delay in moving for class certification was a proper basis for denying certification. (Pl.'s Objections at 9-12.) Plaintiff filed her complaint against the District in October 1996 and filed her motion for class certification almost three years later in August 1999. While Bennett argues that her delay was excused because of an appeal to the Seventh Circuit, the remand order came in early November 1998, and she only moved for certification the following summer once the district court ordered her to so. While the circumstances of the procedural history of this case do lend some justification for Bennett's delay and may not alone render Bennett an inadequate representative, the magistrate's findings, in conjunction with other factors discussed herein, are sound that Bennett is not an adequate representative.

**\*6** The magistrate also found that Bennett cannot adequately represent the class because on certain claims she is not a member of the class and did not suffer injury. As the Supreme Court has repeatedly held, "a class representative must be a part of the class and possess the same interest and suffer the same injury as the class member." *Falcon,* 457 U.S. at 156. Bennett seeks to represent minority part-time teachers employed by the District. Bennett was never hired as a part-time teacher and cannot represent those who were because she did not suffer the injury alleged. She also seeks certification of a class of individuals who were certified to teach grades K-12.

However, Bennett was not certified to teach all of these grade levels and, therefore, did not suffer the same injury as those teacher who have the requisite certification. *See East Texas Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403-04 (1977) (failure to meet a job's minimal qualifications renders the plaintiff ineligible to represent a class who were injured.) Plaintiff responds to this point by suggesting that the class be redefined to those teachers certified to teach grades K-9, an admission that she cannot adequately represent teachers certified for grades 10-12. We decline to modify Bennett's proposed class because redefining it still would not assist Bennett on the other certification factors.

Bennett's capabilities to represent the class are further called into doubt by her dilatory conduct and that of her counsel. Not only was Bennett ordered to move for class certification after substantial time had passed, she missed the filing deadline imposed by the court and failed to obtain leave of court to submit her late motion and brief. (Report at 4, n.3; 12.) Bennett's counsel has also played fast-and-loose with the procedural rules of this district. As defendants raised in their motion to strike, Bennett currently has no local counsel. When Bennett filed her complaint, one of her attorneys, her husband Philip W. Bennett, maintained an office in this district so there was no reason to designate local counsel. In October 1999, Bennett gave notice to the clerk of court of Philip's new address in Texas. Philip no longer has an office in Illinois that accepts filings and no other attorney doing business in this district has appeared on Bennett's behalf. Yet, Bennett continues to claim that Philip serves as her local counsel. However, pursuant to this District's Local Rule 83.15, Bennett has no local counsel and we are entitled under L.R. 83.15(b) to strike any documents filed without designation of local counsel. While we decline to strike Bennett's objections on this basis (and hereby deny defendants' motion to strike), Bennett is advised that this Court will not accept any future filings until local counsel has been designated.

Bennett's claim regarding Philip Bennett's status as her local counsel is also relevant to the magistrate's finding on adequacy of counsel. Magistrate Ashman found that the potential conflict of interest in Bennett's husband serving as class counsel was another factor in his decision to deny class certification. (Report at 13.) He held, based on Seventh Circuit case law, that it is inappropriate for a class representative to be related to or a business associate of the class counsel because of the concern that such counsel would fail to aggressively and impartially represent the non-family/business associate class members. (*Id.*) Bennett responds that Philip only serves as local counsel (which clearly is not the case) and that her "lead" counsel, Douglas Grimes, is not related to Bennett. (Pl.'s Objections at 7.) While we decline to launch into a discussion on the difference between local and lead counsel, it is fair to say that Philip Bennett is not merely a "drop-box" or passive participant in this litigation to qualify as local counsel. Rather, in all of the papers before this Court, and according to defendants, Philip Bennett has been the lead or only acting counsel issuing and presenting arguments, motions and discovery on this case. While Bennett offers to have her husband withdraw from representation to clear this hurdle (Pl.'s Objections at 7), we find no reason for it given the other incurable defects in the class claims.

*7 The magistrate concluded his discussion of this factor with his concern that members of the putative class may have antagonistic or conflicting interests. (Report at 14.) This conflict would arise if certain members competed with Bennett and/or one another for the same position. Thus, some members would be seeking relief pertaining to the same positions. (*Id.*) Plaintiff argues that there is "no logical basis for this finding" because there is no evidence that "minorities would likely compete against one another." (Pl.'s Objections at 8.) However, based on Bennett's class definition, which covers five years and may contain 200 members, it was not illogical for Magistrate Ashman to conclude that some of these members sought the same position as one another and/or Bennett. Plaintiff's objection is without merit because she presents no evidence that this antagonistic element is not present in the proposed class.

In a final pitch to win on this factor, Bennett claims that while she may not be the best representative for the proposed class, she comes the closest to serving as an adequate representative because "the court knows of no other person that has met the statutory requirements of Title VII during the relevant time period." (Pl.'s Objections at 9.) Bennett asserts, without reference to a shred of law, that class representation is handed-out to the person or persons who best fit the bill: "[A]s a matter of law Ms. Bennett meets the adequacy requirements because she can serve the class better than anyone known to the court. The court has a duty to protect the rights of parties not present." (Id.) First, it is not this Court's responsibility or "duty" to discover who may also serve as a class representative to protect the proposed class. Those obligations belong to Bennett, who has failed on those fronts. Second, adequacy of representation is not decided on a sliding-scale, but on a set of objective factors reviewed by the magistrate and this Court. We have reviewed these factors

and Bennett misses the mark on this and the commonality and typicality requirements under Rule 23(a). Bennett does not adequately represent the class even if she is the best they have to offer.

*Rule 23(b) Requirement*

Based on his conclusion that Bennett failed to meet Rule 23(a)(2)-(4), the magistrate did not address the merits of the second prong of the Rule 23 analysis for class certification under subsection (b). Bennett does not object to the magistrate's decision on this or address this prong in her objections. We shall not address it either because Bennett's failure to clear the hurdles under Rule 23(a) end the inquiry.

*Conclusion*

For the reasons stated herein, the Court denies defendants' motion to strike plaintiff's objections and adopts the Report of Magistrate Judge Ashman. As a result, plaintiff's motion to certify a class action is denied.

Footnotes

1. The named directors of the Board of Education of School District 203 are Mary Roberts, Marshall Asinall, Timothy Costello, Livia McCammon, O.C. Davenport, Brian Barnes, and Rudy Carl.
2. This case was assigned to this Court on December 15, 1999, when Judge Williams was appointed to the Court of Appeals for the Seventh Circuit.
3. We are unable to locate this claim in Bennett's second amended complaint (or her EEOC charge). She states that it is located somewhere in paragraphs 33(a)-33(m) of her second amended complaint. The closest the Court found to this claim is paragraph 33(l): "Defendants failed to follow its own affirmative action plan, programs and policies as equal opportunity employers under state law ." (Pl.'s Sec. Am. Compl. ¶ 33(l).) While this allegation does not appear to be the same the one put forth in her objection, we shall construe it as appropriately plead for purposes of our discussion.
4. There is some question as to whether Bennett's disparate impact claim is properly before this Court. (*See* Defs.' Resp. at 10.) The allegations contained in this claim appear beyond the scope of Bennett's EEOC charge and it is unclear whether it is "like or reasonably related to" the allegations of the EEOC charge and "grow out of such allegations." *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (*en banc* ) (citation omitted). We decline to decide this issue today because the merits of this case are not presently before us and it does not matter in the end for purposes of class certification.
5. This paragraph was numbered as 30 in plaintiff's Second Amended Complaint, although numerically it is the 34th paragraph. To avoid confusion with the other paragraph 30, we shall refer to it as the sequentially correct number, 34.

End of Document © 2013 Thomson Reuters. No claim to original U.S. Government Works.