**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN LUCAS, *et al.*, on behalf of themselves and others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 09672 |
| v. | ) ) | Judge John J. Tharp, Jr. |
| VEE PAK, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this proposed class action, five African American laborers allege that defendant Vee Pak, Inc., a manufacturing and packaging business, directly and through its relationships with the three defendant temporary employment agencies, discriminates against African American temporary workers, largely in favor of Latino workers. The four defendants each move to strike and dismiss the class allegations and to deny class certification, and defendant Vee Pak further moves to dismiss all claims against it. For the reasons that follow, Vee Pak's motion to dismiss is denied, and the motions to strike are granted in part and denied in part.

## FACTS[1]

In the Third Amended Class Action Complaint ("TAC," Dkt. # 45), the five plaintiffs allege that they each applied for jobs at Vee Pak, directly with the company or through the three defendant agencies, Staffing Network, MVP, and ASI (collectively, "the agencies"). Despite their qualifications, none was hired. Most Vee Pak workers are hired through temporary employment agencies. Of the workers placed at Vee Pak by the agencies, the "overwhelming

---

[1] For purposes of the motion to dismiss, all well-pleaded facts in the TAC are accepted as true. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

majority" are Latino. Almost no African American laborers are assigned to work at Vee Pak's facilities.

When plaintiffs Brian Lucas, Aronzo Davis, and Torrence Vaughans attempted to apply for work directly at Vee Pak, they were initially given no information but were eventually told that they had to apply through an employment agency. Vee Pak representatives, however, refused to tell the plaintiffs which employment agencies placed laborers at Vee Pak. When they finally learned, in November 2011, which agencies worked with Vee Pak, Lucas, Davis, and Vaughans sought work assignments through defendant Staffing Network. Work assignments for African Americans through Staffing Network are rare, and Staffing Network "almost never" assigns African American workers to Vee Pak jobs. Furthermore, Staffing Network requires African American laborers seeking work assignments to complete a pre-application that is not required of applicants who are not African American. All five plaintiffs were required to complete a pre-application and were told that they had to return at a later time to complete an application, a delay that is not imposed on non-African American workers. All five plaintiffs specifically requested assignments at Vee Pak, but Staffing Network "failed or refused to assign" them to work there. In the meantime, the plaintiffs observed that Staffing Network allowed Latino workers to immediately complete applications and assigned them to work at Vee Pak. The plaintiffs were equally qualified for the work, which required no special skills. Staffing Network was complying with Vee Pak's request "to steer African American applicants away from work at Vee Pak."[2]

---

[2] This allegation and the parallel allegations as to the other agencies are made on plaintiffs' "information and belief." The continuing viability of this practice is questionable in light of clarified pleading standards in the last five years *See, e.g., In re Darvocet, Darvon, and Propoxyphene Products Liability Litig.*, 756 F.3d 917 (6th Cir. 2014). However, neither the Seventh Circuit nor the Supreme Court has yet concluded that pleading upon information and

2

Defendant ASI, another employment agency, also places workers at Vee Pak facilities. ASI sometimes assigns African American laborers to work at third-party companies, but work assignments for African American laborers are sporadic. In November 2011, plaintiff Lucas asked an ASI dispatcher to send him to work at Vee Pak; ASI "failed and refused" to do so. Latino workers who were no more qualified than Lucas and who had sought employment after him were placed in Vee Pak jobs. ASI was complying with Vee Pak's request to steer African American laborers away from Vee Pak jobs.

MVP, another employment agency, refused to assign plaintiffs Vaughans and Lucas to work at Vee Pak despite their specific requests, even though MVP assigned Latino laborers who were no more qualified. MVP was complying with Vee Pak's request to steer African American laborers away from Vee Pak-jobs.

The plaintiffs filed charges with the EEOC, each alleging discrimination based on race. Each plaintiff attached a materially identical rider to the charge, stating, in relevant part, that he had applied for work at Vee Pak through the defendant employment agencies, was qualified to perform the work, and was not hired. Further, "[o]n information and belief, Vee Pak, Inc. had a policy and practice of steering qualified African American applicants and employees of its contracted staffing agencies, including me, away from work at Vee Pak, Inc., while other, less-qualified non-African-American employees were hired." The plaintiffs also charged that the Vee Pak's policies and practices "had the effect of denying me and a class of other African-American

---

belief is foreclosed by *Twombly* and *Iqbal*, and the Seventh Circuit has expressly allowed it in the context of fraud claims (which have a heightened pleading standard) if the underlying facts are not accessible to the plaintiff and there are some grounds provided for the plaintiffs' suspicions. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441, 442-43 (7th Cir. 2011).

applicants an equal employment opportunity and resulted in systematic discrimination against African-American applicants and segregation of its workforce."

The plaintiffs timely filed this lawsuit upon receiving their right-to-sue notices from the EEOC. They brought a class action complaint alleging that Vee Pak and the agencies violated Title VII of the Civil Rights Act and 42 U.S.C § 1981 by discriminating against African American laborers with respect to placements at Vee Pak. The plaintiffs allege that the defendants' discriminatory polices give rise to liability as to a class of African Americans who sought work assignments with Vee Pak, either directly or through a defendant agency, but were not assigned to work at Vee Pak because of their race. The complaint asserts both disparate treatment and disparate impact theories of discrimination, and it seeks to hold Vee Pak and the employment agencies jointly liable under several theories.

## DISCUSSION

Vee Pak moves to dismiss all the claims outright, and, along with each of the three other defendants, also moves to strike the class allegations.

### I. Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014). The plaintiffs must plead sufficient factual content from which the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations in the form of legal conclusions, as well as threadbare recitals of the elements of a cause of action, supported by conclusory statements, do not suffice. *Adams*, 742 F.3d at 728. Factual, but not legal, allegations are taken as true for purposes of the motion. *Id*.

4

Vee Pak moves to dismiss all of plaintiffs' claims under Rule 12(b)(6), count by count. As this Court has pointed out before, this approach disregards the difference between "claims," which explain the plaintiff's grievance and demand relief, and "counts," which describe legal theories by which those facts purportedly give rise to liability and damages. *E.g., Volling v. Antioch Rescue Squad*, --- F.Supp.2d ----, 2013 WL 6254254, at *2 (N.D. Ill. 2013). *See also NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1992). Pleading in counts, although often helpful, is not required—unless "doing so would promote clarity" as to "each claim *founded on a separate transaction or occurrence*." *See* Fed. R. Civ. P. 10(b) (emphasis added); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir.2011). Indeed, it is axiomatic that a plaintiff is not required to plead legal theories at all. *See Jajeh v. County of Cook*, 678 F.3d 560, 567 (7th Cir.2012) (hostile work environment claim pleaded where complaint never used that term). Nothing in *Twombly* or *Iqbal* changes that tenet: those cases "do not undermine the principle that plaintiffs in federal courts are not required to plead legal theories." *Hatmaker v. Memorial Med. Ctr.*, 619 F.3d 741, 743 (7th Cir.2010); *Alioto*, 651 F.3d at 721 ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). Vee Pak's motion glosses over this principle and loses sight of the fact that all of the plaintiffs' "claims"—by which Vee Pak means "counts"—are based upon the same factual predicate; each legal theory is founded on the same underlying events.

### A. Direct, Joint, and Vicarious Liability

The "count"–vs.–"claim" observation is particularly relevant to Vee Pak's arguments that, as a substantive matter, the plaintiffs' claims fail because they have not adequately alleged their theories of joint liability between Vee Pak and the staffing agencies. The plaintiffs'

underlying theories of Vee Pak's liability are that (1) Vee Pak does not want African American workers and that the employment agencies see to that at Vee Pak's direction; or (2) Vee Pak controls the hiring decisions of its contracted employment agencies, which refuse to assign African American workers, or turns a blind eye to such discrimination. *E.g.*, TAC, Dkt. # 45 ¶¶16-18, 28-29, 47-49, 52-54, 67-69, 72-73, 86-88.

These facts adequately allege a factual basis for liability on behalf of Vee Pak; the plaintiff need not establish at this early stage whether the agency defendants are "joint employers" with Vee Pak for purposes of the hiring decisions, whether they are agents of Vee Pak, or whether Vee Pak is directly or vicariously liable. *See* Mem., Dkt. # 59, at sections E, F, G, I, J & K[3] (seeking dismissal of all joint employer theories of Title VII and Section 1981 liability). Tellingly, Vee Pak's argument is *not* that, given the allegations of the complaint, it cannot be liable as a matter of law for the decisions not to hire African American laborers. Instead, it is criticizing the plaintiffs' failure to identify their legal theory with sufficient precision. That is not required to state a claim for relief. Because Vee Pal has not argued or demonstrated that given the nature of the factual allegations, it could not be held liable for

---

[3] Vee Pak's arguments "G" and "K" both are directed at the plaintiffs' allegations that Vee Pak knew but did not exercise reasonable care to prevent the discrimination (the arguments pertain to relief under Title VII and section 1981, respectively). In combination with the allegations that Vee Pak itself was an employer and it had a discriminatory policy, the Court takes this "reasonable care" theory as simply another way of asserting that Vee Pak is liable either directly or indirectly for the failure to place African American workers at Vee Pak facilities. There is no need to treat this alternate legal theory as an independent "claim" for purposes of a motion to dismiss. Like every other count in the complaint, it is based on the same underlying occurrences and facts. Vee Pak is correct as a technical matter that liability cannot be based purely on the failure to prevent another party from discriminating. That truism is of no help to Vee Pak because, contrary to its arguments, the complaint does allege that Vee Pak had a policy of preferring Latino workers to African American workers; it further alleges a principle-agent and / or joint employer relationship—in contrast to the only case cited by Vee Pak, *General Bldg. Contractors Ass'n, Inc. v. Pa.*, 458 U.S. 375, 391-395 (1982). It is premature to hold as a matter of law, as Vee Pak requests, that contrary to the complaint's allegations, Vee Pak had "no meaningful control" over how the agencies selected and assigned workers.

discriminatory hiring under *any* legal theory, the Court will not dismiss the claims because they are premised on alternate theories of joint liability.

### B. Disparate Treatment

Vee Pak also argues that the plaintiffs fail to plead a plausible disparate treatment claim because they fail to allege all the required elements. Mem., Dkt.# 59 at 3-5. Vee Pak asserts that "all [the plaintiffs] have shown is that they tried to get work from Vee Pak and were not hired." *Id*. at 4. That is inaccurate; the plaintiffs allege that they were not hired while equally or less qualified applicants of other races were hired, that they were subjected to peculiar application requirements, and that Vee Pak's temporary workforce includes "almost no" African Americans. To state a claim for employment discrimination, the plaintiff must simply aver that he suffered an adverse employment action on account of his race. *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014 (7th Cir. 2013) (articulating standard with respect to gender); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629 (7th Cir. 2013) (explaining in race discrimination context that less factual detail is required to support simple claims). "Employers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (further explaining that there is no heightened pleading standard in Title VII cases). The factual allegations in the complaint set forth a claim of intentional discrimination by way of a practice of refusing to directly or indirectly hire African American workers.

### C. Pattern or Practice

The same result holds for the plaintiffs' allegations of a "pattern or practice" of discrimination by Vee Pak. *See* Mem, Dkt. # 59 at 5-6. To the extent that the plaintiffs intended to separately assert a pattern or practice claim, it is supported by the same facts as the disparate

treatment claim. Indeed, pattern-or-practice claims are a kind of disparate-treatment claim; both "represent a theory of intentional discrimination." *See Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 716 (7th Cir. 2012). The difference is that in a pattern-or-practice case, discrimination is "the company's standard operating procedure—the regular rather than the unusual practice." *Id.* (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977)). Here, all of the plaintiffs' legal theories against Vee Pak rest on the core allegation that, as a rule, Vee Pak prefers not to employ African American laborers, and that the employment agencies implement the discriminatory policy. The plaintiffs quite clearly are alleging that their experiences were not anomalous, but were standard operating procedure. Therefore, they have facts to support a pattern-or-practice claim, although it is not clear that they intended to bring separate disparate treatment and pattern-or-practice "claims" to begin with.

### D. Section 1981

Vee Pak next targets the plaintiffs' § 1981 failure-to-hire claims, arguing that the factual allegations are insufficient to support a claim for relief under this legal theory. Mem., Dkt. # 59 at 13-15. Section § 1981 prohibits racial discrimination in the making and enforcement of private contracts; its scope extends only to "conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Campbell v. Forest Preserve Dist.*, 752 F.3d 665, 669 (7th Cir. 2014) (quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 179 (1989)).

According to Vee Pak, the plaintiffs must, but failed, to plead that they applied for open positions that were then filled by individuals outside of their protected class. *See* Mem, Dkt. # 59 at 13. For this proposition, Vee Pak relies on *Blise v. Antaramian*, which was a summary-judgment case and said nothing about pleading standards. 409 F.3d 861, 866 (7th Cir. 2005). But

8

both the Supreme Court and the Seventh Circuit have made clear (at least under Title VII) that the plaintiff's burden of proof on an employment discrimination claim is not commensurate with what must be pleaded in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *Luevano*, 722 F.3d at 1028.

Therefore, we are left, again, with the plaintiffs' allegations they applied for work at Vee Pak both directly and through contracted employment agencies, that they were qualified for the work, that they were not assigned to the Vee Pak jobs, and that Latino workers filled the positions instead, although those workers were no more qualified than the plaintiffs, who also were subject to increased application procedures. Moreover, the plaintiffs allege that Vee Pak facilities are staffed with almost no African American workers, and that the defendant employment agencies only rarely assign jobs to the African American laborers seeking work through them. The Court has held already that these allegations suffice to state a disparate treatment claim under Title VII; Vee Pak cites no authority that requires more or different allegations in order to plead a section 1981 claim. Nor can it: "Title VII claims and 42 U.S.C. § 1981 claims incorporate the same liability standard." *Whitfield v. Int'l Turck & Engine Corp.*, 755 F.3d 438, 442 (7th Cir. 2014); *see Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) ("In general, the same standards govern intentional discrimination claims under Title VII, § 1981, and § 1983."). No special pleading formula attaches to claims under § 1981. Because the plaintiffs have alleged sufficient facts to support a claim of intentional discrimination based on race, the Court will not preclude the § 1981 theory of relief at the pleading stage.

E. **Disparate Impact**

Vee Pak also argues that the plaintiffs cannot maintain a disparate impact claim because it is beyond the scope of their EEOC charges. A Title VII plaintiff, of course, may proceed only

on claims that were fairly within the scope of the predicate administrative charge; the claims must be 'like or reasonably related to the allegations of the charge and growing out of such allegations." *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005).

On this point the Court agrees with the analysis of Judge Lee in *Lucas v. Ferrara Candy Company*, No. 13 C 1525, 2014 WL 3611130 (N.D. Ill. 2014), a case involving the same plaintiffs and very similar legal claims and administrative charges against a different employer. Here, as in that case, the plaintiffs identified a specific employment policy—preferring Latino workers to African American workers—that disparately impacts African American workers, almost none of whom are able to obtain assignments to work at Vee Pak. *See id*. at * 4; *see also Lucas v. Gold Standard Baking*, No. 13 C 1524, 2014 WL 518000, at * 3 (N.D. Ill. 2014). It does not matter that the policy is facially discriminatory rather than facially neutral: as plaintiffs correctly argue, either kind of employment practice is actionable if it disparately impacts workers of a certain race. *Adams v. City of Indianapolis*, 742 F.3d 720, 731 (7th Cir. 2014). In a case where the alleged policy is to prefer one race over another, the disparate impact can be reasonably inferred simply from the existence of the policy.[4] Therefore, the scope of the EEOC charges fairly encapsulates a claim of disparate impact caused by Vee Pak's alleged race-preference policy. The charge referred to Vee Pak's "policy and practice of steering qualified African American applicants and employees of its contracted staffing agencies . . . away from work at Vee Pak, Inc.," which "had the effect of denying . . . . an equal employment opportunity and resulted in systematic discrimination." Def. Ex. 1, Dkt. # 59-1. As in the other *Lucas* cases,

---

[4] In that sense, it is hard to distinguish a disparate impact claim based on a deliberately discriminatory employment policy from a claim of intentional discrimination, and it is not clear what, if any, benefit the plaintiffs obtain by alternatively invoking the disparate impact theory. Proving the existence of the policy, which is necessary to the disparate-impact claim, will essentially amount to proving intentional discrimination because the policy at issue is not race-neutral.

that suffices to put the defendant on notice of both disparate treatment and disparate impact theories of relief.

## II. Motions to Strike and Dismiss Class Action Allegations

The plaintiffs have not yet moved for class certification, but all four defendants argue that this Court should determine based solely on the allegations in the complaint that, as a matter of law, this case cannot be certified for class treatment. Those motions are granted in part and denied in part.

### A. Class Definition

The Court agrees with the defendants—as do the plaintiffs, *see* Mem., Dkt. # 75 at 19—that the class definitions as pleaded in the third amended complaint are deficient. All variations set forth in the complaint beg the question of liability, in that the class is made up of certain African-American workers who were not hired "because of their race." *See* TAC, Dkt. # 45 ¶¶ 97, 103, 112, 124, 136, 148. It is therefore a "fail-safe" class: "one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *See Messner v. Northshore Univ. Healthsystem*, 669 F.3d 802 (7th Cir. 2012). "Such a class definition is improper because a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* The class definitions set forth in the TAC therefore are stricken, but the ruling is without prejudice to the amendment of the definition.

### B. Sufficiency of Class Allegations

It is premature to bar the plaintiffs from moving for class certification. The defendants are correct that class certification can be denied even before the plaintiffs move for class certification if discovery will not address obvious defects in the class allegations. *See Gen. Tel.*

*Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (suggesting that "sometimes the issues are plain enough from the pleadings to determine" whether a class can be certified); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (Under Rule 23(c)(1)(A), a court may "deny class certification even before the plaintiff files a motion requesting certification"); *Payton v. County of Carroll*, 473 F.3d 845, 854 (7th Cit. 2007) (absence of typicality may be evident on face of complaint). Contrary to the defendants' arguments, however, it is not evident from the face of the complaint here that class certification would be improper as a matter of law.

### 1. Rule 23(a) Commonality Requirement

The defendants primarily argue that it is clear from their allegations that the plaintiffs were not injured by a common practice or policy, and that they therefore cannot satisfy Rule 23(a). But the defendants are wrong to rely, as they all do, on *Wal-Mart Stores v. Dukes*. That case addressed the commonality requirement in detail, holding that plaintiffs must identify a "specific employment practice" that is the common cause of the disparate impact. 131 S. Ct. at 2541, 2555 (2011). Furthermore, that employment practice cannot be the delegation of discretion to individual managers, unless that discretion is exercised in a common, discriminatory, manner. *Id*. at 2554-55.

At least from the fact of the pleadings—discovery might show otherwise—this is not a case that involves a a policy calling for individual discretionary decisions—what the *Wal-Mart* Court described as a "policy against having a uniform policy." 131 S. Ct. at 2554. The plaintiffs here allege that Vee Pak prefers to hire non-African American workers, and that the employment agencies implement that policy by steering African American workers out of Vee Pak job assignments. Pursuant to the alleged policy, the defendants do not exercise discretion; rather, they disfavor African American workers for Vee Pak jobs as a general rule. This is the type of

non-discretionary, system wide policy that can satisfy the commonality requirement because, at least as far as can be discerned from the complaint, the allegedly injurious conduct is the same from plaintiff to plaintiff. *See Suchanek v. Sturm Foods, Inc.*, ---F.3d----, 2014 WL 4116493, at *5 (7th Cir. 2014); *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012) (explaining that an employment decision by top management that is implemented at all levels differs from a delegation of the decision to local supervisors). A policy that precludes the consideration of a class of workers is not a policy of individualized discretion.

Even a single common question can satisfy the commonality requirement. *Wal-Mart*, 131 S. Ct. 2556; *Suchanek*, 2104 WL 4116493, at *5 ("Neither Rule 23 nor any gloss that decided cases have added to it requires that every question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted.'). Here, the plaintiffs posit several, see TAC, Dkt. # 45, ¶ 89(c), the most obvious of which is the existence of the policy of discrimination against African Americans and how it was implemented through the use of staffing agencies. Such a policy would be a common cause of all the class members' injuries.

Moreover, the plaintiffs have not, as some defendants argue, demonstrated with their own allegations that "highly particularized factors" go into the employment agencies' hiring decisions for Vee Pak assignments. Nothing in the complaint suggests an individualized hiring procedure for the temporary laborer jobs at issue.[5] Instead, the tenor of plaintiffs' complaint is that availability is the only criterion; they have alleged that the non- or semi-skilled work for which

---

[5] As plaintiffs summarize their allegations: "on a given day, Vee Pak requests a certain number of laborers for low-skilled work at its manufacturing plant. TAC, ¶1, 16. Vee Pak's employment agencies recruit laborers to fill the order for low-skilled laborers. TAC, ¶27, 30. When a laborer seeks a work assignment from Vee Pak's employment agencies, including laborers who walk into these Vee Pak's employment agencies' dispatch office, s/he does not apply for a single, specific job, but seeks assignment to any low-skilled jobs at third party client companies, including Vee Pak, available through Vee Pak's employment agencies. TAC, 30-31." Mem., Dkt.# 75 at 14.

they were passed over was given to Latino workers with no specialized qualifications, for example. According to the plaintiffs, African Americans were excluded nearly categorically from Vee Pak work assignments; that is an allegation of a common policy implemented in a common manner, not of particularized hiring decisions made through the exercise of discretion. As for the three separate employment agencies that might have different procedures, none of the parties has yet suggested the prospect of agency-specific subclasses, which seems an obvious solution (if there is indeed a problem) and is no barrier to a finding a commonality among the greater class. *See Johnson v. Meriter Health Servs. Employee Retirement Plan*, 702 F.3d 364, 368 (7th Cir. 2012).

Finally, the defendants are off-base in contending that "class treatment is inappropriate where plaintiffs cannot establish a method for measuring damages on a class-wide basis." *E.g.,* Alternative Staffing Mem., Dkt. # 68 at 14. The Seventh Circuit in *In Re IKO Roofing Shingle Products Liability Litig.*, 757 F.3d 599 (7th Cir. 2014), thoroughly dismantled the contention that either *Dukes* or *Comcast Corp. v. Behrend*, ––– U.S. ––––, 133 S. Ct. 1426 (2013) requires "commonality of damages" under Rule 23(a)(2) if by that term one means "the same damages." *See id*. at 602. *See also Suchanek*, 2014 WL 4116493, at *5 ("Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common. It is routine in class actions to have a final phase in which individualized proof must be submitted.); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device ... to require that every member of the class have identical damages"). Injury caused by the same common conduct is what is required, not identical damages.

## 2. Other Threshold Requirements

The defendants further argue that the plaintiffs' allegations with respect to the other Rule 23(a) requirements do not satisfy current pleading standards. It is certainly correct that under *Ashcroft v. Iqbal* that this Court cannot accept as true plaintiffs' legal conclusions as to numerosity, typicality, and superiority. But there are factual allegations in the complaint sufficient to survive a pre-certification motion to dismiss. For example, Staffing Network contends the plaintiffs' assertion of numerosity is insufficient because they simply state that "the class is so numerous that joinder or all members is impracticable." Mem., Dkt. # 55 at 9 (quoting, presumably, TAC ¶ 89(a)). Yet this overlooks the plaintiffs' allegations, first of all, that nearly all of the African American workers who sought work at Vee Pak through the defendant agencies were refused, and that also there were "hundreds of individuals" employed by the defendants during the class period.[6] Before discovery it is unclear what other facts the defendants would require to support an allegation of numerosity. If an entire race of workers in a large metropolitan area was blackballed, a numerous class is plausible.

Nor does the Court find the pleading stage to be the appropriate time to determine whether the plaintiffs' typicality and adequacy allegations—which only Vee Pak challenges in a substantive way, *see* Mem., Dkt. #62 at 8— can be proved; it is enough at this stage to say that they have been plausibly alleged. Further, Vee Pak's typicality argument seems to be primarily directed at a theory of direct liability that the plaintiffs disclaim in their response brief. They say

---

[6] Defendant Alterative Staffing states that the total number of individuals employed by all the defendants "has no relation" to how many people would be in the putative class. Mem., Dkt. # 68 at 9. But where the complaint alleges that almost none of these people were African American, by design, the figure is relevant to determining the number of positions for which African Americans were *not* hired—those are the class members. But even without any data about how many workers might be in the class, until class discovery has occurred it is reasonable to infer numerosity from the allegations in the complaint that almost all workers of one race were excluded. Further precision seems unlikely without demographic data from the defendants.

that Vee Pak "misconstrues [their] allegations as to Defendant Vee Pak's alleged failure to provide adequate information on how to apply," and that as to Vee Pak, they are challenging the "policy of disfavoring African American[s], through [Vee Pak's] agents, the employment agencies to whom Vee Pak made discriminatory requests not to assign African American workers to work at Vee Pak." As for adequacy, Vee Pak cites a conflict of interest on behalf of the class representatives to the extent that "class members competed for the same jobs," Mem., Dkt. # 62 at 11, but again, this is a fact that is not evident from the face of the pleadings that cannot be the basis for denying certification at this stage.

### 3. Rule 23(b) Requirements

The defendants also contend that class certification should be barred because the plaintiffs have failed to properly plead facts supporting the Rule 23(b) requirements of superiority and predominance.

For example, defendant MVP advances the representative argument that these requirements cannot be met because "[t]he claim of each putative class member involves an individualized factual inquiry into the time of day he arrived at MVP, the day of the week he arrived at MVP, the number of laborers who arrived before him that day at MVP, and the number of laborers who were requested by Vee Pak on that day and at that time." Mem., Dkt. # 65 at 13. Wherever these factual assertions come from, it is not from the complaint; the Court certainly cannot take MVP's word that hiring is based on these individualized factors. Moreover, none of these individualized factors would be relevant if the plaintiffs' core allegations of a blanket policy against hiring African Americans are the true reason that the putative class members were not assigned work at Vee Pak.

The questions of superiority and predominance are uniquely difficult to resolve based on the complaint alone; the defendants speak to their individualized defenses, but they have not yet even answered the most recent complaint. The defendants are assuming a number of individualized issues that, at present, have no foundation in the governing complaint. Moreover, all of the defendants seem to assume, prematurely, the plaintiffs will try to prove liability under the indirect method of proof, which will allow the defendant to assert individualized, non-discriminatory reasons why each plaintiff was not hired. But the plaintiffs might elect the direct method and show either "an admission of discriminatory intent" or provide sufficient circumstantial evidence of such intent, such as "(1) suspicious timing, ambiguous oral or written statements, or behavior toward, or comments directed at, other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; or (3) evidence that the employer offered a pretextual reason for an adverse employment action." *See Tank v. T-Mobile USA, Inc*., 758 F.3d 800, 805 (7th Cir. 2014). The defendants have simply not shown that superiority and predominance cannot be established as a matter of law.

None of this is to say that the plaintiffs have demonstrated that a class or classes should be certified; they have not. The plaintiffs will have to overcome all of Rule 23's hurdles in order to warrant class certification. But the allegations in the complaint are sufficient for purposes of Rule 8(a) and, moreover, they do not demonstrate any irremediable defect that requires denial of class certification as a matter of law. The facts as set forth in the complaint leave room for certification based on a common policy of restricting African American workers from Vee Pak assignments. The plaintiffs are therefore entitled to discovery before the defendants can attempt to bar the door to class certification.

\*\*\*

For the reasons set forth above, Vee Pak's motion to dismiss [57] is denied. The defendants' motions to strike [54, 60, 63, 67] are granted in part, only insofar as the class definition is stricken without prejudice, and otherwise denied.

Date: September 17, 2014

John J. Tharp, Jr.
United States District Judge