IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN LUCAS, et al., on behalf of themselves and similarly situated job applicants, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12-cv-9672 |
| v. | ) ) | District Judge John J. Tharp, Jr. |
| VEE PAK, INC., et al., | ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) | |

**RESPONDENT BICCHIERI'S MEMORANDUM IN SUPPORT OF HIS MOTION TO QUASH THE SUBPOENA FOR HIS DEPOSITION**

Defendants MVP and Staffing Network claim that they are seeking to depose Leone Bicchieri because of his history with the plaintiffs in this case. But Mr. Bicchieri barely knows any of the plaintiffs and whatever minimal history he has with them arose after the period of time covering the facts alleged the case and is, therefore, entirely irrelevant. In reality, it is the history between the defendants and Mr. Bicchieri and his organization that explains the motivation behind defendants' subpoena. Mr. Bicchieri is the Executive Director of the Chicago Workers' Collaborative (CWC), a nonprofit that supports and organizes workers in the temporary staffing industry and often speaks out about unjust and unlawful employment practices in the industry. Defendants MVP and Staffing Network see CWC as a threat to their ability to continue engaging in these practices, and apparently blame CWC for the fact that they are now facing meritorious administrative charges and litigation brought by workers. They are aggressively pursuing CWC, along with other people that have spoken out against them, through litigation in state court. Because Mr. Bicchieri has no involvement in the facts of this case, it is only in this context that

the subpoena for Mr. Bicchieri's deposition makes sense—as one more attempt by the defendants to impose undue burdens on those who dare oppose them.

The defendants have offered a single basis for their subpoena. They claim that Mr. Bicchieri has relevant information regarding the reasons Plaintiffs visited the Defendants' offices and their motives for doing so. While Defendants have claimed that this information is highly relevant to multiple defenses raised by Defendants, the only specific defense that they articulated in the parties' Local Rule 37.2 conference on the issue was their position that the Plaintiffs lack standing to bring Section 1981 claims because they were "testers" that were not truly interested in employment with the defendants.

When they filed this suit, Plaintiffs announced publicly at a press conference that they had engaged in "investigation" of Defendants' discriminatory employment practices by keeping track of when they were rejected for work. A number of community members, including an organizing effort called the Coalition Against Segregation of Temporary Employees (CASTE) and allied organizations like CWC, offered their support to these workers as they made their announcement. Defendants have now subpoenaed depositions from two organizers working with CASTE, Dan Giloth and Elce Redmond, as well as Mr. Bicchieri from CWC. *See* Subpoenas, attached hereto as Group Exhibit A. Defendants' theory is apparently that Plaintiffs lack standing to bring their claims because they applied for work as part of an investigation and that the subpoena respondents have information relevant to this defense because they orchestrated this investigation.

As set forth below, Defendants' theory is belied by the facts and the law, but regardless of its viability, Mr. Bicchieri has nothing of relevance to offer on this issue for the simple reason that he was not involved in any way in Plaintiffs' efforts to keep track of Defendants'

2

discriminatory employment practices. He did not know any of the plaintiffs when they were applying for work and noting this discrimination or at the time that they filed their EEOC charges. Bicchieri Decl., attached hereto as Exhibit B, at ¶¶ 3-5. His first encounter with any of the plaintiffs was at the press conference on December 5, 2012, where he announced only that his organization was proud to stand in solidarity with workers standing up against unlawful employment practices in the temporary staffing industry. Bicchieri Decl. at ¶¶ 4-5.

The defendants know this to be the case based both on the documents that Elce Redmond and CWC produced over their objections in response to Defendants' document subpoena and because the plaintiffs' deposition testimony has confirmed it to the extent Defendants have even shown interest in this issue. Plaintiff Lucas testified that he does not know who Mr. Bicchieri is. *See* Excerpts of 10/30/2015 Lucas Deposition Trans., attached hereto as Exhibit C (hereinafter "Lucas 10/30/2015 Trans."), at 103:20-104:14. (Q: "How about Leone Jose Bicchieri?"; A: "I don't know."; Q: "Do you know who that man is?"; A: "No, I do not.") Apparently Plaintiff Davis has requested to withdraw as a named Plaintiff in this matter, but he was previously deposed in a similar matter pending in this district, *Lucas et al. v. Gold Standard Baking, Inc.* et al., Case No. 13 C 1524, and he testified similarly. *See* Excerpts of Davis Deposition Trans., attached hereto as Exhibit D (hereinafter "Davis Trans."), at 196:6-197:20. Defendants did not even ask Plaintiffs Keys and Eagle about Mr. Bicchieri or CWC during their depositions. Yet Defendants have refused to withdraw their subpoena to Mr. Bicchieri or even to agree to limitations on the length or subject matter of his deposition.

The only evidence Defendants have offered in support of their theory is an August 2012 email to Mr. Bicchieri from another subpoena respondent, Dan Giloth, an organizer from the WHA, that refers to Plaintiff Brian Lucas as "[o]ne of our testers." *See* Email Chain, attached

3

hereto as Exhibit E. That email chain itself, however, reveals that Mr. Bicchieri and his organization, CWC, had not previously been involved in the case or the "testing" that Mr. Giloth refers to, and that Mr. Bicchieri did not know Mr. Lucas, though by that point Mr. Lucas had already filed his EEOC charge months earlier. *See id.*

Moreover, even if Mr. Bicchieri did know Plaintiffs before the filing of this suit, he would still have nothing of relevance to offer because the mere fact that Plaintiffs engaged in an "investigation" into employment discrimination says nothing about whether they have standing under Section 1981. Nor is the reference to "testing" by Mr. Giloth, a lay person, probative without more. The only relevant question is what *Plaintiffs'* subjective intentions were with regard to any employment that Defendants offered them, and Mr. Bicchieri cannot offer testimony on that issue.

Defendants' theory is ostensibly based on *Kyles v. J.K. Guardian Sec. Servs.*, 222 F.3d 289 (7th Cir. 2000), a case holding that plaintiffs do not have standing to sue under Section 1981 if they are "testers" that have no intention of accepting employment if it is offered to them. *Kyles* makes very clear that the relevant question concerning standing is not whether a plaintiff applied for a job with every expectation of being rejected and with every intention of challenging that rejection in court. In *Evers v. Dwyer*, 358 U.S. 202, 204 (1958), the Supreme Court made clear that the fact that a plaintiff attempts to engage in conduct "for the purpose of instituting…litigation" when he or she suffers discrimination "is not significant" for the purpose of determining standing. In that case, challenging a law segregating the public bus system, the African American plaintiff boarded a bus solely for the purpose of initiating the litigation. The *Kyles* court distinguished *Evers* as follows:

> Kyles and Pierce would be similarly situated [to the plaintiffs in *Evers* and other cases] if they actually wanted a job with Guardian

4

> (for whatever reason). But when someone solicits an offer of employment with absolutely no intent to accept in the event one is extended to her, she is not attempting to exercise the particular right protected by section 1981. She has no interest in forming a contract; to put it in *Evers'* context, she would never set foot on the bus.

222 F.3d at 304. Thus, the relevant question in cases like this one is whether the plaintiff actually intended to accept the job if it was offered.

In other words, under *Kyles*, it is only Plaintiffs' own subjective intentions that are relevant. Plaintiffs themselves are obviously the best source for this information, and they have offered testimony as to their own intentions. Each of the plaintiffs that has been deposed thus far has indicated that they had every intention of accepting employment from the Defendants if it was offered. *See* Excerpts of 11/17/2015 Lucas Deposition Trans., attached hereto as Exhibit F (hereinafter "Lucas 11/17/2015 Trans."), at 462:15-17; Excerpts of Keys Deposition Trans., attached hereto as Exhibit G (hereinafter "Keys Trans."), at 172:10-14; Excerpts of Eagle Deposition Trans., attached hereto as Exhibit H (hereinafter "Eagle Trans."), at 16:2-12; and Davis Trans., 197:7-12. Indeed, Mr. Lucas was offered work by Staffing Network shortly after the press conference announcing his charges in this case—and he accepted it. Lucas 11/17/2015 Trans., 471:19-472:10. Mr. Keys and Mr. Eagle were offered and accepted assignments to work from Staffing Network on multiple occasions. Keys Trans., 58:17-59:4; Eagle Trans., 15:10-16:12. Even if Mr. Bicchieri was somehow involved in Plaintiffs' search for employment—and he was not—any testimony he would offer about Plaintiffs' subjective intentions would be at best hearsay and speculation.

This search for potential hearsay does not justify the burden that Defendants seek to impose on Mr. Bicchieri as a third party. Indeed, the burden would not be justified even if Mr. Bicchieri could offer some prior inconsistent statement from one of the Plaintiffs regarding their

5

motives. In *Cohn v. Taco Bell Corp.*, 1993 U.S. Dist. LEXIS 15346 (N.D. Ill. 1993), the district court quashed a deposition subpoena as unduly burdensome because its only purpose was to impeach another witness's statements about his own motives, stating that the witness himself "would be the best person to question regarding his motives." *See also Patterson v. Burge*, 2005 U.S. Dist. LEXIS 1331, *8-*9 (N.D. Ill. 2005); *Pomozal v. City of Highland Park*, 2002 U.S. Dist. LEXIS 4487, *6-*7 (N.D. Ill. 2002).

For all these reasons, Mr. Bicchieri's deposition will not lead to the discovery of admissible evidence and will unnecessarily impose an undue burden on a third party. But more troubling is that the defendants seem intent on imposing this burden despite the fact that the deposition will not be probative. During the meet and confer process, Defendants refused to agree to *any* limitation to the length or subject matter of the deposition—even a limitation to the issue of whether Plaintiffs intended to take any jobs they were offered. Defendants took the position that any motion to limit the scope of the deposition could not be made in good faith and threatened to seek fees if Mr. Bicchieri filed such a motion. *See* Rule 37.2 Email, attached hereto as Exhibit I. Moreover, the subpoena rider provides absolutely no limitation on the subject matter to be addressed in the deposition. Instead, they make very broad requests for documents to be produced at the time of depositions—requests that do not even mention Plaintiffs' motives or intentions. The requests are generally aimed at discovery of *all* documents referencing the defendants or "solicit[ing] individuals to go to [Defendants' offices] to undertake any action inside the premises." *See* Exhibit A-1 at 4.

This is telling because MVP is currently suing CWC and Mr. Bicchieri in state court for trespass, defamation, and other tort causes of action. Their allegations in that action are generally that CWC and Mr. Bicchieri have engaged in a campaign of harassment of MVP's workers and

6

blocking the doors to MVP's offices. None of the allegations are about any action Mr. Bicchieri has taken himself, but rather that unnamed others have taken these actions "on behalf of" or "in concert with" CWC and Bicchieri. While Mr. Bicchieri and CWC emphatically deny that there is any merit to MVP's claims in that state court litigation, it seems clear that Defendants' subpoena in this case is aimed more at discovering information relevant to those claims than to anything relevant to this case. Of course it would be improper for MVP to use this litigation as an excuse to subject Mr. Bicchieri to the burden of additional discovery related to the state court litigation and this Court should leave the issue of what discovery is relevant to that case to the state court.

MVP and Staffing Network also know that CWC has helped organize other workers besides Plaintiffs and has supported them in their pursuit of administrative complaints regarding unlawful wage and hour practices and workers' compensation and safety issues. Bicchieri Decl. at ¶ 3. Thus, this request for all information "pertaining to or otherwise referencing" MVP and Staffing Network is an apparent attempt to peer into the association of workers not involved in this suit with CWC, including workers that may have filed anonymous and confidential complaints. Mr. Bicchieri should not be required to prejudice the associational rights of CWC's members or to reveal information related to ongoing and confidential Department of Labor investigations so that Defendants can ask him questions that have no relevance to this case.

This is especially true because MVP's pursuit of Mr. Bicchieri's deposition, along with its suit against him in state court, are part of a pattern of actions taken by MVP against everyone that speaks out against its employment practices. MVP has not just sued CWC, Mr. Bicchieri, and another CWC leader. It has also sued the organizations that employ Mr. Redmond and Mr. Giloth, South Austin Coalition Community Council (SACCC) and Westside Health Authority (WHA), respectively, for defamation for co-signing a letter with employees complaining to one

of MVP's clients about discriminatory employment practices. *See* MVP v. WHA Compl., attached hereto as Exhibit J. CWC, WHA, and a number of MVP's employees or job applicants have unfair labor practice charges pending in the National Labor Relations Board alleging that these suits are a form of retaliation against workers' concerted activity. *See* ULP Charges, attached hereto as Group Exhibit K. MVP also sued its own former labor dispatcher, Rosa Ceja, for defamation shortly after she offered a declaration in Plaintiffs' support in this case. *See* MVP v. Ceja Compl., attached hereto as Exhibit L. Not only was the case against Ms. Ceja dismissed, but the EEOC has issued a determination that the suit constituted unlawful retaliation against Ms. Ceja under Title VII. *See* MVP v. Ceja Dismissal Order, attached hereto as Exhibit M; EEOC Determination, attached hereto as Exhibit N. In short, MVP is engaged in a campaign to burden everyone that has taken a public position against its unlawful employment practices with the costs of litigation and discovery. Rather than simply defending cases like this one on their merits, MVP uses litigation as a means of intimidating workers from complaining about unlawful practices and from associating with organizations like CWC, WHA, and SACCC that offer them support.

      The Court should not abide MVP's tactics. Mr. Bicchieri's deposition is unnecessary and his testimony will be irrelevant. Mr. Bicchieri therefore respectfully requests that the Court quash the subpoena. In the alternative, should the Court allow the deposition to proceed, Mr. Bicchieri requests that the deposition be limited in scope to written questions regarding the plaintiffs' subjective intentions in seeking work from Defendants that the Court approves in advance. *See Dean v. Eclipse*, No. 11 C 8285, 2012 U.S. Dist. LEXIS 138840, at *7-*8 (N.D. Ill. Sep. 26, 2012); *see also* Fed. R. Civ. P. 31 (allowing depositions by written questions).

Dated: December 1, 2015                             Respectfully submitted,

                                                       s/ Sean Morales-Doyle
                                                    One of Respondent's Attorneys

Despres, Schwartz & Geoghegan, Ltd.
77 West Washington Street, Suite 711
Chicago, Illinois 60602
(312) 372-2511