**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN LUCAS, JOSEPH EAGLE, MICHAEL KEYS, ANTWOIN HUNT, and JAMES ZOLLICOFFER, on behalf of themselves and other similarly situated individuals, | ) ) ) ) ) | |
| | ) | No. 12-CV-09672 |
| Plaintiffs, | ) ) | Judge John J. Tharp, Jr. |
| v. | ) ) | |
| VEE PAK, INC., PERSONNEL STAFFING GROUP d/b/a MVP, STAFFING NETWORK HOLDINGS, LLC, and ALTERNATIVE STAFFING, INC. | ) ) ) ) ) | |
| Defendants. | | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Five African American laborers, on behalf of themselves and all other similarly situated laborers, filed this putative class action lawsuit against four companies for employment discrimination. The plaintiffs, Brian Lucas, Joseph Eagle, Michael Keys, Antwoin Hunt, and James Zollicoffer, allege that defendants Vee Pak, Inc. ("Vee Pak"), Staffing Network Holdings LLC ("Staffing Network"), Personnel Staffing Group, LLC d/b/a MVP ("MVP"), and Alternative Staffing, Inc. d/b/a ASI ("ASI") discriminated against them and other African American laborers on the basis of their race and in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981. The plaintiffs have reached a settlement agreement with ASI only and they now move for preliminary approval of their proposed partial class action settlement and for certification of the proposed ASI class. The Court amends the proposed class definition and grants preliminary certification to the ASI class, as amended. Because the plaintiffs have not provided sufficient information about the Settlement

Agreement's proposed plan of allocation, however, the Court is unable to rule on the motion for preliminary approval and directs the plaintiffs to supplement their motion.

## BACKGROUND

According to the fifth amended class action complaint, plaintiffs Lucas, Eagle, Keys, Hunt, and Zollicoffer are African American laborers who sought work at Vee Pak, an Illinois corporation that operates manufacturing and packaging facilities in Hodgkins and Countryside, Illinois. Vee Pak staffs its operations primarily through temporary employment agencies, including Staffing Network, MVP, and ASI. Staffing Network, MVP, and ASI (collectively, the "Staffing Agencies") operate by finding and providing temporary laborers for their client companies, such as Vee Pak. They recruit, train, assign, and pay the temporary laborers to work at Vee Pak and other client companies.

The plaintiffs allege that the overwhelming majority of laborers who are assigned by the Staffing Agencies to work at Vee Pak are Latino, and almost no African American laborers are assigned to Vee Pak. According to the complaint, Vee Pak requested that the Staffing Agencies steer African American applicants away from work at Vee Pak. The complaint alleges that the staffing agencies complied with Vee Pak's request by engaging in discriminatory assignment practices in which they did not assign African Americans to work at Vee Pak because of their race.

The plaintiffs bring Title VII claims against Vee Pak for race-based discrimination under the theories of disparate treatment and adverse impact and § 1981 claims against all defendants for discrimination on the basis of race. They filed their lawsuit in December 2012. ASI and the other defendants filed motions to strike and dismiss the class allegations and to deny class certification, which were granted in part and denied in part. The plaintiffs then amended their complaint and engaged in some initial discovery with ASI. In early 2015, the plaintiffs and ASI

agreed to explore settlement discussions with the assistance of Retired Magistrate Judge Morton Denlow. After a full day of negotiations and discussions about information in ASI's possession relevant to the plaintiffs' claims, the plaintiffs and ASI reached the primary terms of a settlement agreement. They continued negotiations with and without the assistance of Judge Denlow and, in March 2016, reached a final settlement agreement (the "Settlement Agreement"), for which they now seek preliminary approval.[1]

The Settlement Agreement requests the Court's certification of an ASI settlement class (the "ASI Class") defined as: "The Class Representative and all African Americans who sought a work assignment through ASI and were otherwise eligible to work at Vee Pak but, on one or more occasion, were not assigned or hired to work at Vee Pak during the period December 5, 2008 through [the date of Preliminary Approval]." Pls.' Unopposed Suppl. Br. in Supp. of Mot. for Preliminary Approval of Partial Class Action Settlement with ASI Only ("Pls.' Suppl. Br."), Attachment 1 ("Settlement Agreement") ¶ 48, ECF No. 256. The proposed Class Representative of the ASI Class is plaintiff Lucas.

Under the Settlement Agreement, ASI has agreed to pay $93,000 into a settlement fund for the ASI class as partial compensation for the alleged denial of Vee Pak work assignments. The settlement fund will also be used to pay for the administrative costs associated with implementing the settlement, service awards, attorneys' fees and costs. ASI has also agreed to certain injunctive relief to help prevent future violations of federal and state anti-discrimination laws. In addition, ASI has agreed to cooperate with the plaintiffs as they pursue their claims against Vee Pak and the other non-settling defendants. Specifically, ASI agrees to provide

_____

[1] The "Settlement Agreement" refers to the amended version of the proposed settlement agreement filed on June 17, 2016, as "Attachment 1" to the Plaintiffs' Unopposed Supplemental Briefing in Support of Plaintiffs' Motion for Preliminary Approval of Partial Class Action Settlement with ASI Only. ECF No. 256.

information, testimony, and/or documents that may be relevant to determining the liability of the other defendants. In exchange for ASI's monetary payment, injunctive relief, and cooperation, the ASI Class agrees to dismiss ASI from the lawsuit and release all their claims against ASI under Title VII and Section 1981 arising out of the assignment of or failure to assign African Americans to work at Vee Pak by ASI.

The Settlement Agreement binds only the ASI class and ASI and does not settle the claims of Lucas, or others whom he seeks to represent in a certified class, against Vee Pak and the other Staffing Agencies. The plaintiffs' present motion seeks an order granting preliminary approval of the Settlement Agreement, certification of the ASI Class, and approval of the form and content of the proposed notice to the ASI Class. After the plaintiffs submitted their initial memorandum in support of the motion, the Court held a hearing and requested supplemental briefing on the motion. The plaintiffs submitted a supplemental brief, which included an amended version of the Settlement Agreement. The non-settling defendants submitted memoranda objecting to preliminary approval. The plaintiffs submitted a declaration in support of the motion for preliminary approval (the "ASI Declaration") and a response to the objections.

## DISCUSSION

Under Rule 23, a class action settlement requires approval of the court. Fed. R. Civ. P. 23(e). The approval process includes two steps. *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval" and whether there is reason to notify the class members of the proposed settlement and proceed with a fairness hearing. *Id.* If preliminary approval is granted, the class members are notified. *Id.* Second, a

fairness hearing is held and the court determines whether the proposed settlement is "fair, reasonable, and adequate." *Id.*

If the court has not yet certified the class, certification of the proposed settlement class is also necessary for approval of the settlement. At the preliminary approval stage, certification of a settlement class may be on a preliminary basis, with final certification occurring after the fairness hearing. *See In re Trans Union Corp. Privacy Litig.*, No. 00 C 4729, 2008 WL 11358136, at *6 (N.D. Ill. Jan. 3, 2008) (noting that "conditional certification" occurs with preliminary approval of the settlement agreement, with final certification occurring later); Manual for Complex Litigation, Fourth, § 21.633 ("[t]he judge should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23); § 13:16 Newberg on Class Actions (5th ed. 2017) ("Just as the settlement approval unfolds through two levels of judicial review (preliminary and final), so, too, does the motion for settlement class certification.").

## I.      Non-Settling Defendants' Objections

Before proceeding with an analysis of the plaintiffs' motion for preliminary approval and certification, the Court addresses the non-settling defendants' objections to the motion. Defendants Vee Pak, MVP, and Staffing Network ask the Court to deny preliminary approval and certification. MVP and Staffing Network do not contest the adequacy or fairness of the Settlement Agreement, but argue that the ASI Class cannot meet the requirements of Rule 23. Vee Pak argues that the ASI Class cannot be certified under Rule 23 and also contends that the plaintiffs have failed to demonstrate that the Settlement Agreement is fair, adequate, and reasonable.[2]

The "general rule" is that a non-settling party has no standing to object to a settlement between other parties, unless it can show "plain legal prejudice" resulting from the settlement. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 501 (7th Cir. 2012) (citing *Agretti v. ANR Freight Sys., Inc.*, 982 F.2d 242, 246 (7th Cir. 1992)). "That a settling defendant creates a tactical disadvantage for another defendant is not sufficient to support standing to object; the prejudice to the nonsettling defendant must be legal, such as (for example) interference with contractual or contribution rights or the stripping away of a cross-claim." *Id.* Here, Vee Pak, MVP, and Staffing Network have not offered any basis to conclude that the Settlement Agreement would compromise any legal rights. Vee Pak and the plaintiffs explicitly acknowledge that the certification of the ASI Class is not dispositive of certification of a class against the non-settling defendants.

---

[2] Vee Pak also argues that it should be permitted to take discovery from ASI before the Court considers preliminary approval of the Settlement Agreement, despite the fact that discovery was stayed on March 10, 2016 pending further order of the Court. The Court denies this request.

Accordingly, the Court need not address specifically the non-settling defendants' objections. The objections, however, address many of the Rule 23 requirements that the Court is required to consider in its independent determination of whether the ASI Class may be certified. *See, e.g.*, *Uhl v. Thoroughbred Tech. and Telecomm.*, 309 F.3d 978, 985 (7th Cir. 2002) ("In some ways, the Rule 23 requirements may be even more important for settlement classes, for which (as this court has put it), the district court must act almost as a fiduciary of the class when approving settlements.")

## II.     Certification of the Settlement Class

The Court must consider whether the ASI Class meets the certification requirements of Rule 23. Rule 23(a) sets forth the requirements for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; and (4) the representative parties must be capable of fairly and adequately protecting the interests of the case. Fed. R. Civ. P. 23(a). Courts have also acknowledged the implicit requirement under Rule 23 that a class be ascertainable. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Class certification also requires the satisfaction of one of the Rule 23(b) provisions. Fed. R. Civ. P. 23(b). Here, plaintiffs' seek certification under 23(b)(3), which requires that: (1) questions of law or fact common to the class members predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

As previously noted, when considering certification of a settlement-only class, the Court is obligated to give "undiluted, even heightened, attention" to each requirement of Rule 23.

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The plaintiffs argue that the ASI Class meets all the requirements of Rule 23 and should be certified.

### A.     Ascertainability

Under Rule 23, a class must be ascertainable, which means that it must be clearly defined by objective criteria. *Mullins*, 795 F.3d at 657. To satisfy this requirement, the class definition cannot be too vague. *Id.* at 559. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.* at 660. In addition, a class cannot be defined by subjective criteria, such as by a person's state of mind. *Id.* "Fail-safe classes" that are defined in terms of success on the merits are also not permissible under Rule 23's ascertainability standard. *Id.*

Ascertainability does not require a class representative to establish at the certification stage that there is a "reliable and administratively feasible" way to identify the members of the putative class. *Mullins*, 795 F.3d at 657-58. "The ascertainability requirement is not about evidence; it is about whether the proposed class definitions are based on objective criteria." *Smith v. Family Video Movie Club, Inc.*, 311 F.R.D. 469, 475 (N.D. Ill. 2015) (citing *Mullins*, 795 F.3d at 659).

Here, the ASI Class definition includes the term "otherwise eligible to work at Vee Pak," but does not define or set forth the criteria for determining eligibility to work at Vee Pak. Settlement Agreement ¶ 14. A class definition that includes an undefined term may be too vague to meet the ascertainability requirement. *See Wilson v. City of Evanston, Ill.*, 14 C 8347, 2017 WL 3730817, at *5 (N.D. Ill. Aug. 30, 2017) (amending class definition to remove the vagueness and overbreadth concerns by defining previously undefined term). The plaintiffs, however, argue that the "otherwise eligible" term does not make the ASI Class unascertainable because, in fact,

there were no individual qualifications for the Vee Pak jobs at issue in this case. Pls.' Resp. to the Nonsettling Defs.' Objs. to the Partial Settlement with ASI ("Pls.' Resp. to Objs.") 12 n.9, ECF No. 261; Decl. of Steven Swerdloff ¶ 10, ECF No. 259. According to the plaintiffs, Vee Pak assignments are low-wage, non- or low-skilled, and rarely require particular experience. Furthermore, the plaintiffs claim that if an individual class member's eligibility to work at Vee Pak is challenged, the issue can be determined at the remedial stage of the proceedings.

Because the proposed class definition does not define or explain the meaning of "otherwise eligible," it fails to identify "a particular group" that was harmed and is therefore too vague to be ascertainable and must be amended. *See Wilson*, 2017 WL 3730817, at *5. Eliminating the vagueness in the definition, is a simple fix, however, because the "otherwise eligible" term is essentially meaningless. According to the plaintiffs, there were no qualifications for the Vee Pak jobs at issue. And, even if some minimal eligibility requirements did exist, a class member's eligibility to work at Vee Pak could be determined at the remedial stage of the litigation—or, in the context of a settlement, through the claims process. In that case, the amended definition might sweep into the class individuals who ultimately were not harmed by ASI's discriminatory practice because, absent discrimination, they still would not have received a Vee Pak assignment due to their ineligibility. But the Seventh Circuit has held that the "inevitability" that a class will include persons who have not been injured by the defendant's conduct does not preclude certification. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 380 (7th Cir. 2015) (upholding certification of class that was likely to include class members who were not harmed by the defendant's overtime policy because they never worked beyond their forty-hour week). The Court, therefore, amends the class definition to eliminate the "otherwise eligible" term: "The Class Representative and all African Americans who sought a work

assignment through ASI but, on one or more occasion, were not assigned or hired to work at Vee Pak during the period December 5, 2008 through [the date of Preliminary Approval]." This is the readily ascertainable group of persons who likely would have been harmed by the alleged policy of racial discrimination.

### B.      Rule 23(a) Requirements

#### 1. Numerosity

Rule 23 requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a class that has more than 40 members satisfies this standard. *See, e.g.*, *Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969); *Porter v. Pipefitters Ass'n Local Union 597*, 208 F. Supp. 3d 894, 904 (N.D. Ill. 2016). The plaintiffs and ASI estimate that there will be approximately 2,000 individuals in the ASI class. This figure is based on ASI's database, which indicates that 2,011 ASI applicants self-identified as African American. The plaintiffs also note that many applicants did not self-identify to ASI as African American. The universe of potential class members, therefore, is likely greater than 2,011. The Court finds that the proposed ASI class meets the numerosity requirement.

#### 2. Commonality

A class must also share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). The rule does not require that "*every* question be common." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (emphasis in original). Rule 23 only requires that the class members' claims share a common contention, the determination of which "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Nothing more is required to satisfy Rule 23(a)(2)." *Mullins*, 795 F.3d at 673.

A company-wide discriminatory practice that was applied to all class members is sufficient to establish commonality. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 437 (7th Cir. 2015). Such an illegal policy can provide the "glue" necessary to litigate otherwise highly individualized claims as a class. *See Porter*, 208 F. Supp. 3d at 905 (citing *Jamie S.*, 668 F.3d at 498). The fact that class members sustained differing losses as a result of the practice or that some class members were not harmed at all by the practice, does not defeat certification. *Bell*, 800 F.3d at 379-80 (7th Cir. 2015); *see also Suchanek*, 764 F.3d at 756 ("commonality of damages" is not required). If, however, low-level managers use "discretion to make individual decisions without guidance from an overarching company policy," commonality is not satisfied. *Bell*, 800 F.3d at 375; s*ee also Bolden v. Walsh Const. Co.*, 688 F.3d 893, 896 (7th Cir. 2012); *Wal-Mart Stores, Inc.*, 564 U.S. at 355-56.

Here, the plaintiffs allege that ASI engaged in a discriminatory practice of steering African American laborers away from Vee Pak assignments because of their race. They claim that this practice occurred at one ASI office, where ASI employees did not exercise discretion and generally adhered to the same practices when making Vee Pak assignments. This suffices to meet the commonality requirement. *See Bell*, 800 F.3d at 374 (commonality satisfied by the common question of whether defendant bank had a company-wide policy or practice requiring employees to work off-the-clock overtime hours). Whether ASI did in fact follow a discriminatory practice to refuse African American laborers assignments to Vee Pak is a question common to each member of the proposed ASI Class. The plaintiffs do not allege, and the record in this case does not reflect, that the harm resulted from discretionary acts by different supervisors at different locations.

It is possible that a number of individual variables could have affected why a class member was not assigned to Vee Pak, including: the date and time when the class member sought an assignment, the availability of Vee Pak job assignments at that date and time, and whether the potential class member requested another assignment or declined to go to Vee Pak. However, the Seventh Circuit has instructed that when a company-wide discriminatory practice is alleged, a class can still be certified despite the need for subsequent individualized inquiries to determine which class members were actually adversely affected by the discriminatory practice. *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 491 (7th Cir. 2012) (ruling that certification was proper in disparate impact discrimination case even though "hundreds of separate trials" may be needed to determine which class members were affected and what loss they sustained because "at least it wouldn't be necessary in each of those trials to determine whether the challenged practices were unlawful"). *See also Suchanek*, 764 F.3d at 756 (holding that the need for individualized proof is routine in class actions and does not preclude class certification). The Court therefore finds that the ASI Class meets the commonality requirement.

### 3. Typicality

Rule 23 also requires that the claims of the class representative are typical of the class members' claims. Fed. R. Civ. P. 23(a)(3). Typicality depends upon whether the named representative's claims have "the same essential characteristics as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

Typicality may be satisfied "even if there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *De La Fuente*, 713 F.2d at 232. In addition, a "class representative need not have been injured to the same extent as other class members in order to be typical of the class." *Chi. Teachers Union, Local 1 v. Bd. of Educ. of the City of Chicago*, 307 F.R.D. 475, 481 (N.D. Ill. 2015).

Lucas, the representative for the ASI Class, is African American and alleges that he requested a work assignment from ASI's Cicero office in November 2011, was qualified to work at Vee Pak, but was not assigned work at Vee Pak because of his race. Lucas alleges that ASI failed to assign him to Vee Pak because ASI engaged in a discriminatory practice of steering African Americans away from Vee Pak. His claims have the same characteristics and arise from the same course of conduct as the claims of the proposed class. Lucas' claims and the class members' claims are also both based on the same legal theory—race discrimination in violation of § 1981. Lucas' claim, therefore, is typical of the class members' claims. *See Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432-33 (N.D. Ill. 2003) (class representative claims were typical where representative and class claim that defendant's practice and policy of discrimination caused their injuries); *Chicago Teachers Union, Local 1*, 307 F.R.D. at 481 (typicality was satisfied because representatives' claims and class members' claims were based on the same legal theory of racial discrimination in violation of Title VII) .

Even if Lucas' ASI experience varied in some degree from the experiences of other class members who interacted with different ASI dispatchers, typicality would not be destroyed on that basis alone. Where a company-wide practice is alleged, factual variations of the class members do not defeat typicality. *See Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 660

(N.D. Ill. 2006) (finding typicality existed even though class member employees interacted with different company supervisors).

As part of the proposed settlement agreement with ASI, Lucas has agreed to sign a general release that is broader than the proposed release for other class members. In return for the general release, Lucas will receive an additional payment of $2,000, to be paid by ASI in addition to and separately from the ASI settlement fund. The Court, however, has no reason to believe that Lucas' additional release and payment affects his ability to satisfy the typicality requirement. Other federal courts have approved similar agreements between a class representative and defendant. *See Gong-Chun v. Aetna, Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *24-25 (E.D. Cal. July 12, 2012); *Williamson v. Microsemi Corp.*, No. 5:14-cv-01827-LHK, 2015 WL 13650045, at *3 (N.D. Cal. Feb. 19, 2015). The Court finds that the ASI Class meets the typicality requirement.

### 4. Adequate Representation

Rule 23 requires that a class representative be capable of fairly and adequately protecting the interests of the case. Fed. R. Civ. P. 23(a)(4). To meet this requirement, the representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc.*, 521 U.S. at 625-26. The representative's claims and interests cannot conflict with those of the class and he must "have a sufficient interest in the outcome of the case." *Wilkins v. Just Energy Grp., Inc.*, 308 F.R.D. 170, 184 (N.D. Ill. 2015). In addition, class counsel must be "experienced and competent." *Id.*

As noted above, Lucas is part of the ASI Class and brings a claim that is identical to the class members' claim. *See supra* Section II(B)(3). There is no evidence of a conflict between Lucas' and the class members' interests. He has demonstrated his interest in the outcome of the

case by serving as the named plaintiff, sitting for his deposition, and responding to interrogatory requests. The Settlement Agreement provides Lucas with an additional payment in consideration for a general release that is broader than the release for the other class members. There is no indication, however, that this agreement conflicts with the interests of the class. As already noted, other federal courts have approved similar agreements without finding any conflicts or concerns related to the representative's adequacy. *See Gong-Chun*, 2012 WL 2872788, at *24-25; *Williamson*, No. 5:14-cv-01827-LHK, 2015 WL 13650045, at *3. Furthermore, class counsel are experienced and competent employment discrimination and class action plaintiffs' attorneys. Lucas, therefore satisfies the adequacy requirement of Rule 23. *See Wilkins*, 308 F.R.D. at 184.

### C.    Rule 23(b)(3) Requirements

#### 1. Predominance

For certification under Rule 23(b)(3), class members must share common issues of fact or law that predominate over questions affecting individual members. Fed. R. Civ. P. 23(b)(3). If common questions are a "significant aspect" of a case and "can be resolved for all members of a class in a single adjudication," then predominance is satisfied. *Porter*, 208 F. Supp. 3d at 911 (quoting *Messner*, 669 F.3d at 815). Predominance is qualitative, not quantitative. *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014). A plaintiff seeking certification under Rule 23(b)(3) does not need to prove that each element of her claim is susceptible to classwide proof. *Bell*, 800 F.3d at 381 (citing *Amgen, Inc. v. Conn. Ret. Plans and Tr. Funds*, 568 U.S. 455, 469 (2013)). "Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and expense." *Chi. Teachers Union, Local No. 1*, 797 F.3d at 444.

Here, the plaintiffs have alleged a company-wide practice by ASI that affects all class members—steering African American laborers away from Vee Pak assignments. The existence of the practice is a key element common to the discrimination claim of each class member. Although individualized issues may impact the amount of damages each class member is entitled to, that does not "undermine the fact that the fundamental question that predominates is a common question." *Brand v. Comcast Corp., Inc.*, 302 F.R.D. 201, 223-24 (N.D. Ill. 2014) (finding that predominance existed, despite the possibility for varying damages among class members, because of the common question of whether a hostile work environment existed). *See also Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d at 444 (predominance is not destroyed simply because individualized remedies and damages may have to be determined for each plaintiff or subclasses of plaintiffs); *Porter*, 208 F. Supp. 3d at 911-12 (finding predominance based on common question of whether defendant implemented discriminatory practice, even though separate determinations concerning harms suffered by class members might be necessary). The ASI Class meets the predominance requirement. *See id.*

### 2. Superiority

Rule 23(b)(3) also requires that a class action be the superior alternative to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). A class action is superior to other methods "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies" arising from the consolidation. *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) (citing *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003)). When confronted with a settlement-only class certification, the Court need not consider "whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc.*, 521 U.S. at 620. Courts have

recognized that the class action device is superior where the defendant engaged in standardized conduct and the individual class members' claims would be too small to vindicate through an individual suit. *See, e.g.*, *Quiroz v. Revenue Prod. Mgmt., Inc.*, 252 F.R.D. 438, 444 (N.D. Ill. 2008).

Here, the ASI Class members' claims involve the same alleged standardized practice by ASI. The plaintiffs estimate there could be approximately 2,000 class members. Separate lawsuits by the individual class members "would needlessly require multiple courts to resolve the same liability issues." *Porter*, 208 F. Supp. 3d at 912. Furthermore, given the low wages that were offered for job assignments at Vee Pak, the backpay damages for each individual class member is not likely to be significant enough to incentivize a class member to pursue his claim independently. Therefore, the proposed class meets the superiority requirement. *See id.* (class challenging the same discriminatory job assignment policy by defendant union met superiority requirement).

The Court finds that the amended ASI Class definition meets the Rule 23 requirements for certification. The amended ASI Class is preliminarily certified.

### III.    Preliminary Settlement Approval

Having addressed the issue of class certification, the Court next considers whether the settlement agreement can be preliminarily approved. As noted above, preliminary approval is the first step in determining whether a class action settlement is "fair, reasonable, and adequate." *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011); *Armstrong*, 616 F.2d at 314. The Court may grant preliminary approval of a proposed class action settlement if it is "within the range of possible approval." *Armstrong*, 616 F.2d at 314.

In deciding whether to grant preliminarily approval, the Court must consider: "(1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among effected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) (citing *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). In determining whether a class action settlement is fair, reasonable, and adequate, the Court must also evaluate whether the allocation of funds among class members is reasonable and equitable. *Summers v. UAL Corp. ESOP Comm.*, No. 03 C 1537, 2005 WL 3159450, at *2 (N.D. Ill. Nov. 22, 2005). *See also Schulte v. Fifth Third Bank*, No. 09-cv-6655, 2010 WL 8816289, at *3-4 (Sept. 10, 2010) (examining allocation of funds as part of the preliminary approval process); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, No. 97 C 7694, 2001 WL 1568856, at *3 (N.D. Ill. Dec. 10, 2001) ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."). The Seventh Circuit has acknowledged that "federal courts look with great favor upon the voluntary resolution of litigation through settlement" and in the class action context in particular, there is "an overriding public interest in favor of settlement." *Armstrong*, 616 F.2d 312-13.

### A. Strength of the Plaintiff's Case

The most important factor in determining whether a class action settlement is fair, reasonable, and adequate, is the strength of the plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc.*, 463 F.3d at 653. The Court should attempt in some fashion to assess the net expected value of continued litigation to the class.

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 285 (7th Cir. 2002)). The Court should not reject a settlement "solely because it does not provide a complete victory to plaintiffs" because the "essence of settlement" is compromise. *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *7 (N.D. Ill. Aug. 29, 2016) (citing *In re AT&T Mobility Wireless*, 270 F.R.D. at 347). "An integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *In re AT&T Mobility Wireless*, 270 F.R.D. at 347 (quoting *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985)).

Here, the plaintiffs argue that the settlement provides adequate value to the class members in light of several relevant factors: the risks plaintiffs face in proving their damages and litigating other complex issues, Vee Pak's co-liability for the conduct at issue, ASI's lack of ability to pay a large judgment, and ASI's cooperation agreement.

Plaintiffs acknowledge that, under their theory of the case, the class is entitled to a damages award much greater than $93,000. If the case proceeds to trial, the plaintiffs would argue that they are entitled to $2.4 million in backpay damages, which would result in individual payments of approximately $1,194 to each class member, less attorneys' fees and other costs. ASI, on the other hand, would argue at trial that the plaintiffs are entitled to only $113,548 in total backpay damages, resulting in a $56 payment to each class member, less attorneys' fees and other costs. Alternatively, the $93,000 settlement will result in individual payments of approximately $41 to each class member, less attorneys' fees and other costs.[3]

The plaintiffs' damages theory is based on their expert's calculation that African American laborers represented 30% of ASI's available workforce. According to the same

---

[3] All individual payment calculations are based on the assumption that 100% of the estimated potential class members (2,011) participate in the settlement.

expert's estimates, only 2.5% of the laborers ASI assigned to Vee Pak were African American. The plaintiffs would argue that they are therefore entitled to backpay damages equaling 27.5% of the $8,734,485 in total payroll generated by ASI assignments to Vee Pak during the proposed class period, which is equal to approximately $2.4 million. ASI would vigorously dispute this calculation for three reasons. First, the calculation assumes that every African American who applied for a temporary work assignment through ASI would have been assigned to work at Vee Pak, as opposed to another ASI client. Second, ASI contends that, based on Census data, the estimated representation of African Americans in ASI's available workforce is only 3.8%, not 30%. Therefore, even assuming that every African American laborer who applied to ASI would have been assigned to work at Vee Pak, the total backpay damages would amount to only 1.3% of $8,734,485, which is $113,548. Finally, ASI would also argue that any backpay calculation should be further reduced based on the class members' failure to mitigate their damages.

Plaintiffs acknowledge that, in addition to proving their damages theory, other potential risks lay ahead if the case proceeds to trial instead of settling. Specifically, the plaintiffs will have to litigate: class certification if contested by ASI, the appropriate statute of limitations under section 1981, "joint employer" or "agency" liability by ASI and Vee Pak, and the proper method for determining damages if their theory does not prevail. Plaintiffs not only face the risk of an adverse outcome on these issues, but they also face significant costs to litigate them. In addition, the plaintiffs will face risks in proving that ASI did in fact implement a discriminatory practice of steering African American laborers away from Vee Pak. Similar cases involving discrimination by staffing agencies have revealed that staffing agencies and their client companies often use code words and other deceptive tactics to conceal discriminatory practices. As a result, existence of such practices is difficult to prove without the assistance of

whistleblowers from inside the companies. The plaintiffs admit that they have not yet identified any company insiders or whistleblowers to assist with proving their case.

The plaintiffs further argue that the amount of the settlement reflects the fact that non-settling defendant Vee Pak shares liability for the backpay damages owed to the ASI class. The plaintiffs allege that Vee Pak requested that ASI not assign African American laborers to their facility and controlled whether or not a laborer would be kept on an assignment to Vee Pak. The plaintiffs assert that they have evidence to support their theory that Vee Pak is primarily responsible for the discriminatory conduct suffered by the ASI class and the settlement agreement providing for ASI's cooperation will further develop and strengthen that evidence against Vee Pak.

The plaintiffs also argue that the value of the settlement must be considered in light of ASI's inability to pay a large judgment. During the settlement discussions, ASI provided Judge Denlow with financial information that established ASI's inability to withstand a large judgment. ASI's owner has also submitted a declaration stating that ASI is experiencing financial hardship and does not have insurance coverage for this litigation. Decl. of Steven Swerdloff ¶¶ 12-13. The declaration further states that if the case proceeds to trial, ASI would not be able to pay the legal fees or the liability award plaintiffs would seek. *Id.* ¶ 14. ASI anticipates that it would be forced to file for bankruptcy if the plaintiffs were awarded the amount of damages they plan to seek at trial. *Id.* ¶ 15.

The plaintiffs argue that the nonmonetary benefits of the settlement agreement add significantly to its overall value. As part of the agreement, ASI has agreed to cooperate with the plaintiffs in providing information, testimony, and documents relevant to their ongoing litigation against Vee Pak and the non-settling defendants. The plaintiffs assert that ASI's cooperation will

be beneficial to their case against Vee Pak—during settlement negotiations, Judge Denlow reviewed and evaluated the information ASI will provide and assessed it as valuable. The plaintiffs claim that all ASI class members would be part of the putative class bringing claims against Vee Pak and therefore, ASI's cooperation is a benefit to all of them.

The plaintiffs insist that the cooperation agreement with ASI "will go far beyond that which can be received in the normal course of discovery." Pls.' Suppl. Br. 9, ECF No. 256. Because Vee Pak was ASI's client, ASI has "insider information" about Vee Pak's practices. *Id.* at 9-12. The cooperation agreement will save the plaintiffs from trying to determine the right questions to ask the right people, a challenge plaintiffs often face in civil discovery. The plaintiffs believe ASI can provide them with a roadmap of Vee Pak's illegal conduct and assist with identifying discriminatory conduct concealed by coded language that is often used in the temporary labor industry.[4]

The plaintiffs also point to the settlement agreement's injunctive relief as additional non-monetary value to the ASI class. For a period of two years, ASI has agreed to: maintain records of the race of all laborers who seek assignments from ASI and provide that data to plaintiffs' counsel; meet with plaintiffs' counsel upon request to review the information and discuss recruitment, assignment, and retention of laborers; provide trainings on equal employment opportunity and compliance with state and federal laws. According to the plaintiffs, this injunctive relief will help ensure that ASI, which remains a source of potential employment for the ASI Class, complies with the law and implements non-discriminatory hiring practices.

---

[4] The settlement agreement also provides a process for resolving disputes regarding the cooperation agreement. Specifically, the parties may bring unresolved disputes to Judge Denlow for resolution, and Judge Denlow will be the sole arbiter of any disputes.

In light of the risks and challenges plaintiffs face in proving liability and damages, ASI's inability to withstand a large judgment, and Vee Pak's alleged co-liability for the backpay damages, the settlement agreement provides adequate monetary and non-monetary benefits to the ASI Class. While the $93,000 is only a fraction of the $2.4 million in backpay damages that plaintiffs would seek at trial, the plaintiffs' damages theory is based on assumptions and expert analysis that would face heavy scrutiny at trial. The plaintiffs' theory also presumes that ASI cannot prove that the ASI Class members failed to mitigate their damages. In light of these weaknesses, the settlement provides value to the ASI Class by securing a definite sum of backpay damages instead of proceeding with expensive and risky litigation that may not ultimately prevail. *See Woods v. Club Cabaret, Inc.*, No. 1:15-cv-01213-JEH, 2017 WL 4054523, at *6 (C.D. Ill. May 17, 2017) (finding that plaintiffs' challenges in proving damages at trial weighed in favor of approving the proposed settlement). Furthermore, according to the plaintiff's theory, Vee Pak shares a greater responsibility for the $2.4 million in backpay damages and the plaintiffs will continue to pursue their claims against Vee Pak in this class action.

Even if the plaintiffs succeeded in obtaining the full award of damages at trial against ASI, they may not be able to recover the damages due to ASI's inability to pay the award. Because ASI is uninsured and unable to withstand a large judgment, continued litigation would work against the Class's interests by depleting the funds available for payment to the Class. *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 16-CV-488-SMY-RJD, 2017 WL 5724208, at *2 (S.D. Ill. Apr. 26, 2017) (defendant's lack of insurance and inability to pay a judgment exceeding the settlement amount bolsters the reasonableness of the proposed settlement); *Woods*, 2017 WL 4054523 at *6 (defendant's inability to pay a judgment greater

than the settlement weighed in favor of approving the settlement because the risk of being unable to collect any judgment would increase as the litigation progressed).

The injunctive relief and ASI's cooperation in the plaintiffs' ongoing litigation against the non-settling defendants increase the value of the settlement. ASI remains a potential source of employment for the ASI Class members. The settlement's injunctive relief benefits the Class by correcting and improving ASI's hiring practices to ensure they are not discriminatory. *See In re Mexico Money Transfer Litig. (Western Union and Valuta)*, 164 F. Supp. 2d 1002, 1017-18 (N.D. Ill. 2000) (considering the settlement agreement's injunctive relief, which ended the practices that gave rise to the claims asserted in the case, as a substantial value to the class). In addition, ASI's cooperation in the litigation against Vee Pak, who plaintiffs believe is more responsible for the backpay owed to the ASI Class, provides significant benefits to the ASI Class. The cooperation agreement requires ASI to provide the Class with sworn declarations, testimony, and documents related to the allegations of discrimination against Vee Pak. This information will be valuable to proving the Class's claims against Vee Pak, increasing their likelihood of success on those claims and decreasing the discovery burdens and costs they will incur in pursuing those claims. *See In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 198-99 (S.D.N.Y 2005) (finding benefit of settling defendants' cooperation agreement weighed in favor of approving settlement because cooperation would aid the plaintiffs in amassing evidence against non-settling defendants and would ease the plaintiffs' discovery burden); *In re Processed Egg Prods. Antitrust Litig.*, 302 F.R.D. 339, 361 (E.D. Pa. Oct. 10, 2014) (finding cooperation agreement was valuable and weighed in favor of approving settlement because cooperation reduces costs and time associated with formal discovery and provides a tactical advantage).

In light of these considerations, the Court finds that the monetary and non-monetary value of the settlement, balanced against the strength of the plaintiffs' claims on the merits, weighs in favor of granting preliminary approval of the settlement.

**B.        Complexity, Length, and Expense of Continued Litigation**

In deciding whether to grant preliminarily approval, the Court considers the complexity, length, and expense of continued litigation. *In re AT&T Mobility*, 270 F.R.D. at 346. Here, the complexity, length, and expense of continued litigation is significant. As noted above, if the plaintiff's case against ASI continues without settlement, the plaintiffs will be forced to litigate several complex issues—contested class certification, statute of limitations, joint employer liability, and damages calculations. The plaintiffs' damages calculations require expert analysis and opinion. Settlement, however, will eliminate the costs and risks of litigating these complex issues. Furthermore, the settlement's cooperation agreement with ASI will serve to minimize the costs and challenges the plaintiffs face in their case against Vee Pak and the other non-settling defendants. This factor weighs strongly in favor of approval of the settlement.

**C.        Opposition to Settlement**

The Court should also evaluate the amount of opposition to a settlement agreement among affected parties in deciding whether to approve the settlement. *Schulte*, 805 F. Supp. 2d at 586. As noted above, the non-settling defendants have no standing to object to a settlement between other parties. *Jamie S.*, 668 F.3d at 501. Therefore, the Court does not consider the objections of Vee Pak, MVP, or Staffing Network in determining whether the amount of opposition precludes preliminary approval of the settlement. The plaintiffs have not yet provided notice to the class, so it is too early to evaluate affected parties' opposition to the settlement. *See AT&T Mobility Wireless*, 270 F.R.D. at 349. The Court will consider objections from class

members or other affected parties during the fairness hearing and before determining whether to grant final approval.

### D. Opinion of Competent Counsel

The opinion of competent counsel should also be considered in determining whether a settlement is fair, reasonable, and adequate under Rule 23. *Schulte*, 805 F. Supp. 2d at 586. Plaintiffs' counsel has extensive experience in employment discrimination and class action litigation, including cases involving staffing agencies and their clients. Plaintiffs' counsel believes that accepting the negotiated terms of the settlement agreement is in the best interest of the ASI Class. In addition, there is no evidence of collusion between plaintiffs' counsel and the defendant—the settlement appears to be the result of arms-length negotiation reached after a mediation facilitated by Judge Denlow. The Court therefore finds that this factor supports approval of the settlement. *See Schulte*, 805 F. Supp. 2d at 586-87 (finding that the opinion of class counsel, who had extensive experience in class action and complex litigation, supported approval of the settlement because counsel believed the settlement was beneficial to the class and met the requirements of Rule 23); *Wright*, 2016 WL 4505169 at *11 (finding opinion of competent counsel favored approval of settlement because there was no evidence of collusion).

### E. Stage of the Proceedings

The stage of the proceedings and the amount of discovery completed at the time of settlement is important because it "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 F.2d at 325. The lack of discovery prior to settlement, however, does not prevent the Court from approving a settlement. *In re AT&T Mobility*, at 350; *Schulte*, 805 F. Supp. 2d at 587. The "pertinent inquiry" is what facts and information have been provided. *In re AT&T Mobility Wireless*, 789 F. Supp. 2d at 967. Here,

the parties engaged in minimal motion practice and some initial discovery. The plaintiffs, however, represent that during their mediation with ASI, they received extensive information that allowed for a proper valuation of the case. The plaintiffs acknowledge that the settlement occurred in the early stage of litigation with mostly informal discovery, but argue that this is a benefit to the class members in light of the financial and legal risks associated with formal discovery and motion practice. The Court finds that this factor does not weigh against the granting of preliminary approval of the Settlement Agreement. *See Schulte*, 805 F. Supp. at 587-88 (lack of formal discovery did not weigh against approving the settlement where the parties engaged in months of arms-length negotiations and substantial informal discovery).

## F.    Allocation of Funds

In determining whether a class action settlement is fair, reasonable, and adequate, the Court must also evaluate whether the allocation of funds among class members is reasonable and equitable. *Summers*, 2005 WL 3159450, at \*2. *See also Schulte*, 2010 WL 8816289, at \*3-4 (examining allocation of funds as part of the preliminary approval process); *Retsky Family Ltd. P'ship*, 2001 WL 1568856, at \*3 ("The same standards of fairness, reasonableness and adequacy that apply to the settlement apply to the Plan of Allocation."). A court supervising the distribution of a settlement fund must keep in mind the interests of the numerous absent class members who have an interest in the fair allocation of the settlement fund. *Standard Iron Works v. ArcelorMittal*, No. 08 C 5214, 2015 WL 6165024, at \*1 (N.D. Ill. Oct. 20, 2015).

Federal courts have held that an allocation plan that reimburses class members based on the extent of their injuries is generally reasonable. *See, e.g.*, *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at \*6 (N.D. Cal. Sept. 2, 2015) (citing *In re Oracle Sec. Litig.*, No. C–90–0931–VRW, 1994 WL 502054, at \*1 (N.D. Cal. June 18, 1994));

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011) (citing *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718, at *17 (E.D. Pa. Aug. 14, 2006)). In certain circumstances, however, allocating a settlement fund "in proportion to the precise harm suffered by each plaintiff" could result in "substantial costs as well as delays in the ultimate distribution of the settlement award." *Women in City Gov't United v. City of New York*, No. 75 CIV. 2868 (MJL), 1989 WL 153059, at *5 (S.D.N.Y. Dec. 13, 1989).

Here, the Settlement Agreement provides very little information regarding the allocation of settlement funds. It states:

> Once this Agreement is approved by the Court, Class Representative will formulate an appropriate plan for distribution of the funds to the ASI Class, which will be subject to approval of the Court. However, it is understood and agreed by the Parties that: (a) The Settlement Fund proceeds will be distributed through a claims process based on the formulas described below; (b) Each ASI Class Member who files a valid Claim form shall receive a *pro rata* share of the payment of the ASI Class Settlement Fund (ASI Class Settlement Fund ÷ Total Valid Claims); […]

Settlement Agreement ¶ 55. Nowhere does the Settlement Agreement explain the expected terms of the "plan for distribution of the funds." The Settlement Agreement also states: "To receive a Settlement Payment, an ASI Class Member must submit to the Settlement Administrator a materially complete and timely Claim Form, to be approved by the Court, no later than the Claim Deadline set by the Court. Upon execution of the Release, attached as Exhibit B, each Class Representative will be presumed to have filed a valid claim." *Id.* ¶ 67. The parties did not submit a proposed claim form with their motion for preliminary approval. Based on the Settlement Agreement, the Court cannot determine what information, if any, a class member will be required to provide on the claim form, whether a substantive review of that information will take place, and what such a review would entail. It is also unclear what the "plan for distribution of

funds" will entail and whether or how that will affect the *pro rata* calculation of individual payments.

The information regarding the claims process and the allocation of funds is insufficient for the Court to determine whether it is fair, reasonable, and adequate, particularly in light of the parties' proposed *pro rata* formula. The plaintiffs' briefing and the Court's analysis of the Rule 23 factors for certification reveal that the ASI Class will likely include individuals who suffered no harm at all or who suffered more harm than others as a result of ASI's discrimination. Although this does not preclude certification of the class, it is relevant to determining whether the plan of allocation is fair, reasonable, and adequate.

The plaintiffs acknowledge in their briefing supporting certification of the ASI Class that several issues, which would impact whether a Class member was injured, can be determined at "the remedial stage" of the proceedings, including: a class member's eligibility to work at Vee Pak, Pls.' Resp. to Objs. 7, ECF No. 261; the availability of Vee Pak assignments on a given day and time, *id.* at 8; and a class member's assignment to another ASI client, *id*. The plaintiffs also argue that "[a]ll that may be required of class actions is a way to identify and remove from the recovery pool at the point of distribution any class members who did not actually suffer any injury. This may be accomplished here through the use of a claim process that has been approved by the Seventh Circuit and by the *Ferrara* Court in an analogous case." *Id.* at 13. However, nowhere does the settlement agreement explain or set forth how the claims process will remove uninjured members from the recovery pool. This information is necessary for the Court to determine whether the settlement is within the range of approval and for the class members to decide whether they should opt out of or object to the Settlement Agreement.

In light of the fact that the ASI Class members could have suffered varying degrees of injury, the Court is also concerned with the use of an unweighted *pro rata* formula. Courts have approved *pro rata* distribution of backpay damages among an entire class in employment discrimination cases where an individualized method of calculating backpay damages is impossible. *Stewart v. Gen. Motors Corp.*, 542 F.2d 445, 452-53 (7th Cir. 1976); *E.E.O.C. v. Chicago Miniature Lamp Works*, 640 F. Supp. 1291, 1299-1300 (N.D. Ill. 1986) (finding *pro rata* distribution of backpay damages among entire class was proper because defendant's entry-level jobs required only minimal qualifications, it cannot be said with certainty which individual claimants would have been hired absent discrimination, and individual hearings would defeat the utility of a classwide award and drag the court into a quagmire of guesswork); *Romasanta v. United Airlines, Inc., Ass'n of Flight Attendants*, No. 70 C 1157, 1985 WL 217 (N.D. Ill. Jan. 22, 1985) (holding that *pro rata* distribution of backpay damages was proper because individualized determinations regarding class members' mitigation efforts or earnings would go beyond a process of conjecture to the realm of divination). Here, however, the Court is not convinced that a more precise method of allocating the funds is not feasible. A claims form questionnaire and ASI's records could potentially reveal which Class members sought assignments from ASI more frequently than others. A pro rata distribution would seemingly award the same recovery to a class member who was always available for work assignments from ASI as to one who was only infrequently available. A weighted allocation plan that accounts for those Class members who suffered greater injury would be more fair and reasonable than providing every Class member with the same payment without regard to the extent to which they were stymied by the (alleged) discriminatory policy.

While all other factors weigh in favor of preliminary approval, the lack of information regarding the claims process and the plan of allocation prevents the Court from assessing whether the proceeds of the Settlement Agreement will be allocated fairly among class members. The Court, therefore, requires the plaintiffs to supplement their motion for preliminary approval with a description of a proposed plan of allocation that will remove uninjured class members from the payment calculation and adequately differentiate among class members as to their degrees of injury from the alleged discriminatory practices of ASI (or explain to the Court why such an alternative is impractical). This description of the allocation process also must be included in the notice to potential class members and must provide adequate information to enable them to make a meaningful determination as to whether they wish to opt-out of the settlement class.

## IV.     Notice

Finally, the Court considers the form and substance of the plaintiffs' proposed notice. Under Rule 23, class members must receive notice when the class is certified and when a settlement has been submitted to the court for approval. Fed. R. Civ. P. 23(c)(2); 23(e)(1).

The certification notice for a 23(b)(3) class action must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). The notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* Certification

notice is required because it is possible that some individual class members will want to opt-out of the class and pursue their own claims, rather than participate in the class-wide award, because they may have greater than average damages. *In re AT&T Mobility*, 270 F.R.D. at 351.

Settlement notice must be "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). A settlement notice is sufficient if it informs the class members of "the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing." *In re AT&T Mobility*, 270 F.R.D. at 351 (citing 3 Newberg on Class Actions § 8:32 (4th ed. 2010)). The settlement notice should provide class members with sufficient information so they can make an informed decision about whether to opt out. Manual for Complex Litigation, Fourth, § 21.312. The Court has "nearly complete discretion to determine the form and content of notice to class members." *Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012) (collecting cases).

The plaintiffs propose to provide notice in two forms: directly by mail to class members that can be identified from ASI's database and indirectly by publication in two community newspapers serving the African-American community in the area of ASI's office. These forms of notice comply with the requirements of Rule 23. The plaintiffs will give individual notice to all the class members who can be identified with the information available to ASI and the plaintiffs. In addition, the plaintiffs will use notice by publication to reach the class members who are not identifiable through ASI's records and data. Rule 23 requires only "the best notice that is practicable." *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 254-55 (N.D. Ill. 2014) (citing *Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 676-77 (7th Cir. 2013)). If reasonable

efforts cannot identify individual class members to provide direct notice, notice by publication may be used. *Id.*

The substance of the proposed notice, however, requires some amendment. As stated earlier, *see supra* Section III(F), a description of the proposed plan of allocation must be included in the notice so that potential class members can make a meaningful determination as to whether they wish to opt-out of the settlement class. *See* Manual for Complex Litigation, Fourth, § 21.312 (a settlement notice should "explain the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set forth those variations; … [and] provide information that will enable class members to calculate or at least estimate their individual recoveries"). *See also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 CV 2898, 2012 WL 651727, at *13 (N.D. Ill. Feb. 28, 2012) (settlement notice directed by court provides "summary plan of allocation"). The proposed notice submitted by the plaintiffs only states that "[s]ettlement payments will be reduced on a pro rata basis in the event the sum of settlement payment exceeds the size of the Class Settlement Fund." Settlement Agreement, Ex. A at 3. This is insufficient for an individual class member to estimate his or her recovery and make an informed decision about whether to opt out. *See* Manual for Complex Litigation, Fourth, § 21.312.

In addition to the supplementation required to meaningfully enable putative class members to assess the adequacy of their likely share of the settlement funds, the proposed notice requires some further amendment. The notice does not clearly state that a class member may enter an appearance through an attorney if the member so desires, as required by Rule 23(c)(2)(B)(iv). This language must be added to the notice. In addition, given the partial nature of the settlement, the Court finds it is necessary to include in the notice language that explains to

class members that they may have additional claims against the non-settling defendants and that such claims are not affected by their decision to participate in or opt out of the ASI Class and the Settlement Agreement.[5]

*    *    *

For the reasons stated above, the Court is unable to make a ruling on the plaintiffs' motion for preliminary approval of their partial class action settlement with ASI without further information about the plan of allocation. The Court directs the plaintiffs to supplement their motion for preliminary approval in compliance with the directions provided above, *see supra* Section III(F), on or before January 5, 2018. A status hearing is set for January 11, 2018.

Date: December 20, 2017

John J. Tharp, Jr.
United States District Judge

---

[5] The Settlement Agreement proposes including such language in the notice, *see* Settlement Agreement at 2, but the proposed notice does not include it.