```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3   BRIAN LUCAS, et al.,            )
                                     )
 4                 Plaintiffs,       )
                                     )
 5   -vs-                            )   Case No. 12 C 9672
                                     )
 6   VEE-PAK, INC., et al.           )   Chicago, Illinois
                                     )   August 2, 2018
 7                 Defendants.       )   9:25 a.m.

 8
                           TRANSCRIPT OF PROCEEDINGS
 9               BEFORE THE HONORABLE JOHN J. THARP, JR.

10   APPEARANCES:

11
     For the Plaintiffs:     WORKERS' LAW OFFICE, PC, by:
12                           MR. CHRISTOPHER J. WILLIAMS
                             53 West Jackson Boulevard
13                           Suite 701
                             Chicago, IL  60604
14
     For Defendant
15   Vee-Pak:                VEDDER PRICE P.C., by:
                             MR. JOSEPH K. MULHERIN
16                           222 North LaSalle Street
                             Suite 2600
17                           Chicago, IL  60601

18

19

20

21

22
     Court Reporter:         KELLY M. FITZGERALD, CSR, RMR, CRR
23                           Official Court Reporter
                             United States District Court
24                           219 South Dearborn Street, Room 1420
                             Chicago, Illinois  60604
25                           Telephone:  (312) 818-6626
                             kmftranscripts@gmail.com
```

```
APPEARANCES:   (Continued)


For Defendants
MVP and
Staffing Network
Holdings:            KOREY RICHARDSON LLC, by:
                     MS. MICHELE DENISE DOUGHERTY
                     20 South Clark Street
                     Suite 500
                     Chicago, IL  60603

For Defendant
Alternative Staffing,
Inc.:                MICHAEL, BEST & FRIEDRICH, by:
                     MS. SARAH E. FLOTTE
                     444 W. Lake Street
                     Suite 3200
                     Chicago, IL  60606
```

1  (Proceedings heard in open court:)
2          THE CLERK: Lucas v. Vee-Pak, 12 CV 9672.
3          MS. FLOTTE: Good morning, Your Honor. Sarah Flotte
4  on behalf of the defendant ASI.
5          MR. MULHERIN: Good morning, Your Honor. Joe
6  Mulherin on behalf of Vee-Pak.
7          MS. DOUGHERTY: Good morning. Michele Dougherty for
8  defendant Staffing Network and Personnel Staffing Group.
9          MR. WILLIAMS: Good morning, Your Honor.
10 Chris Williams here on behalf of the plaintiffs.
11         THE COURT: Okay. We've got two motions from
12 Vee-Pak?
13         MR. MULHERIN: Yes, Your Honor. We have a motion to
14 seal, which you've already granted, and we filed the sealed
15 brief in the motion.
16         And then our second motion is a motion to compel for
17 financial records from ASI for the period 2008 to 2018. The
18 reason those are relevant is because they relate to the
19 credibility, potential bias and potential improper motivations
20 of ASI's owner and chairman who, pursuant to the settlement
21 agreement with plaintiffs, between plaintiffs and ASI, would
22 very likely be a witness at trial.
23         Secondly, the documents would relate to the upcoming
24 briefing relating to whether or not the settlement was fair.
25 As you may recall, in Mr. Swerdloff's declaration, he claimed

1 that if this matter were to proceed to trial that there was a
2 good -- or they anticipated that they would not be able to pay
3 their fees, nor would they be able to pay plaintiffs damages.
4     They also said that there was a possibility that they
5 could go bankrupt. In the discovery that's been going on for
6 the last couple of months, Mr. Swerdloff had testified that in
7 2016, there remained -- they returned to profitability. As
8 you recall, his declaration was actually filed in July 2016
9 when he made those assertions about the company's financial
10 difficulties.
11     In another deposition by the now president,
12 Kyle Carstensen, he testified that in 2016, they experienced a
13 net profit of almost $1,000,000; and then in '17, they
14 experienced a profit of $2,000,000.
15     So from our perspective, there is a serious question
16 as to the validity of the assertions in the declaration, and
17 we believe the financial records would bear directly on
18 whether they were valid. You know, in fact, I think there's a
19 question as to whether there was profitability in 2015 as
20 well. As you may recall also, Mr. Swerdloff's declaration
21 says that in 2015, a couple of their clients went bankrupt.
22 But that does not suggest that they would go bankrupt, and
23 that's what we're trying to figure out here.
24     THE COURT: Okay.
25     What's ASI's...

1       MS. FLOTTE: Your Honor, we obviously object to the
2 motion to compel with respect to the financial information.
3 We would like the opportunity to brief the issue, but I'm
4 happy to give the Court a preview of the arguments we would
5 make in that brief. As plaintiff -- as -- excuse me --
6 Vee-Pak's counsel has indicated, they seek the financial
7 information for three reasons.
8       THE COURT: Let me just clarify. What financial
9 information are you seeking?
10       MR. MULHERIN: We would like to know primarily what
11 their net income was, but then I left out a fact. Carstensen
12 testified that there was a line of credit for $4,000,000
13 during the period 2006 to present. So we had asked for their
14 typical financial statements. And I'm most interested in
15 their cash flow and their net income, their net income
16 statements.
17       THE COURT: All right.
18       Go ahead.
19       MS. FLOTTE: So as Vee-Pak's counsel said, they seek
20 this information for three reasons: To challenge the
21 settlement; to also show bias; and then, third, to challenge
22 the credibility of our witnesses. I'll address the second and
23 third points quickly. They're pretty simple to my mind.
24       With respect to credibility, they could make
25 arguments about credibility all they want; with respect to our

1    witnesses -- without the financial information.  They have a
2    declaration.  They have what they say is competing testimony.
3    So they're free to make that argument without producing this
4    financial information.
5            With respect to bias, there's no argument.  We've
6    already conceded that we obviously have a motivation to settle
7    and that we are biased in favor of settlement because we were
8    concerned about our financial situation at the time that we
9    engaged in the settlement conference and then agreed to
10   settlement with the plaintiffs.  So the financials are not
11   relevant to either of those pieces.
12           With respect to the third argument that financials
13   can be used to challenge settlement, as a preliminary matter,
14   Your Honor has already ruled on this issue of standing.  And
15   it's -- I didn't have the docket number before me during the
16   last hearing on July 11th, and I apologize about that.
17           There was an affirmative representation made by
18   Vee-Pak's counsel that you had not ruled on this issue.  On
19   December 20, 2017, you did, in fact, rule that -- on the
20   non-settling defendants' objections to the motions.  You
21   addressed their objections and said the general rule is a
22   non -- and I'm quoting Your Honor -- "The 'general rule' is a
23   non-settling party has no standing to object to a settlement
24   between the parties unless there can be shown 'plain legal
25   prejudice' resulting in the settlement; 'that a settling

7

1  defendant creates a tactical disadvantage for another
2  defendant is not sufficient to support standing to object;
3  'the prejudice to the non-settling defendant must be legal,
4  such as, for example, interference with contractual or
5  contribution rights or stripping away of a cross claim.'"  You
6  then went on to say that, "Vee-Pak, MVP and Staffing Network
7  have not offered any basis to conclude that the settlement
8  would compromise any legal rights."  And that was, again, in
9  docket number 291 on December 20, 2017.
10             So we remain of the position that the financial
11 information has no showing of plain legal prejudice.  There
12 hasn't been an argument by Vee-Pak that that is the case, and
13 this issue has already been addressed by Your Honor.
14             THE COURT:  Let me -- putting aside the standing
15 question, I'm not sure I quite am following or understanding
16 your argument about credibility.
17             I think the argument that Vee-Pak has made as to why
18 it wants this information about the financial status is to
19 impeach or contradict really potentially the testimony of -- I
20 can't remember the gentleman's name.
21             MS. FLOTTE:  Mr. Swerdloff.
22             THE COURT:  Mr. Swerdloff, who made statements to the
23 effect, I'm paraphrasing, that, you know, if found liable on
24 the claim that the potential -- that ASI would be potentially
25 unable to pay the judgment.  I don't know what the records

1  would suggest, but to the extent there might be records and
2  there's some basis to believe that there are some records that
3  would suggest that, in fact, ASI had some substantial net
4  income during the periods that it was otherwise pleading
5  poverty or to Mr. Williams' client and negotiating a
6  settlement, why would that not be relevant to his credibility
7  as a testifying witness if he's -- you know, if they are
8  arguably trying to set up that, you know, he had testified
9  falsely about ASI's financial condition?  Why isn't that
10 relevant to his credibility as a witness?
11          MS. FLOTTE:  And I apologize, Your Honor.  I should
12 have been more clear on this point.
13          In 2015 when the declaration was signed,
14 Mr. Swerdloff said that we're in financial difficulty.  We
15 projected that if there was an award against ASI of -- I think
16 it was 2.5 million was what the numbers were at the time of
17 the settlement conference -- we would not be able to pay that
18 and we would, in fact, go into bankruptcy.
19          There was later testimony by both Mr. Swerdloff
20 then Mr. Carstensen that Vee-Pak's counsel is hanging its hat
21 on, and that is Mr. Carstensen testified that we did have
22 profit in later years; for example, in 2017 and 2018.
23          And my point is if that is taking Mr. Carstensen's
24 testimony as true, that can be used to impeach Mr. Swerdloff
25 without the need to open up their financial information,

1  which, of course, is competitive information for the witness.
2  There had been no showing that Mr. Swerdloff was inaccurate or
3  signed a false declaration with respect to 2015. And, in
4  fact, Mr. Carstensen, who is the now president of ASI,
5  testified that he was not involved in the financials in 2015.
6          THE COURT: Well, where does the 2015 statement come
7  from?
8          MR. MULHERIN: Your Honor, it's 2016. He signed it
9  in July of 2016, in the year in which he experienced a profit
10 of almost $1,000,000. And that's our issue with it. He
11 signed the declaration and claimed at that point in time that
12 they could go bankrupt. And it definitively says that they
13 anticipate they could not pay for litigation costs or the
14 damages and they potentially could go bankrupt when in the
15 next two years, they made $3,000,000 and had a $4,000,000 line
16 of credit. It doesn't really make sense to us.
17         The other thing, you know, I would say is there is a
18 protective order. So to the extent it's competitive
19 information, that's not a valid argument.
20         THE COURT: All right. Well, I'm going to rule on
21 this. We're not going to have further briefing. I don't
22 think I need further briefing.
23         I'm going to grant the motion to compel the
24 production of limited financial information and only to the
25 extent that these records already exist. I'm certainly not

1  requiring ASI to create any records.  But there should be
2  income statements produced and statements that reflect the
3  balance of the line of credit, you know, reflect whatever the
4  line of credit is and what the balance that had been drawn out
5  on, you know, at periodic bases, whatever you have those
6  statements for, whether that's monthly, quarterly, et cetera.
7  That should be adequate, I think, to address the possible need
8  to contradict Mr. Swerdloff's testimony about the financial
9  status of ASI.
10         And this is by no means a ruling that that sort of
11 evidence or testimony is, in fact, relevant.  It could have
12 some relevance.  I can't predict exactly how all that plays
13 out, but we're talking about discovery.
14         Further, as counsel adverts, there is a protective
15 order in place.  I don't recall whether the protective order
16 presently has an attorneys' eyes only provision.
17         MS. FLOTTE:  We have agreed amongst counsel to label
18 certain documents that contain, for instance, Social Security
19 numbers, attorneys' eyes only.  So I would just ask, pursuant
20 to your suggestion, that we produce these for attorneys' eyes
21 only.
22         THE COURT:  These will be produced for attorneys'
23 eyes only.  I don't see any reason particularly that this
24 information needs to be shared with the client.
25         MR. MULHERIN:  No objection.

1     THE COURT: For the purposes of what you have
2 identified, that is something that, you know, I think is --
3 can be -- you don't need consultation with your client to
4 appreciate the significance of the documents. So those will
5 be produced under attorneys' eyes only.
6     To the extent the motion seeks an extension of time
7 to object to the settlement, that's denied. As counsel
8 reflects, I've already ruled and seen and have been provided
9 no reason to revisit that ruling or my logic behind that
10 ruling that a non-settling defendant does not have and Vee-Pak
11 specifically does not have standing to object to ASI's
12 settlement. You know, just to reiterate, they didn't have to
13 sue ASI in the first place. The fact that ASI is contributing
14 something arguably is, you know, more than you have a right to
15 necessarily.
16     With respect to a discrimination claim like this,
17 liability would be joint and several and assuming for whomever
18 was found liable. It is, of course, possible that Vee-Pak
19 would not be found liable. But if there was joint and several
20 liability for discrimination, you could be on the hook
21 regardless of what happens simply at the whim of the plaintiff
22 as to who they try to collect the judgment from. So none of
23 that, in my estimation, provides a basis for standing to
24 object or to preclude another defendant from reaching an
25 agreement to settle the claim against themselves. So I'll

1  deny that extension of time.  We have a briefing schedule on
2  the final approval process.
3      MR. MULHERIN:  Your Honor, if I might, we also have a
4  briefing schedule -- and just to clear up the record, I did
5  not say that Your Honor had not ruled.
6      THE COURT:  I didn't remember either.
7      MR. MULHERIN:  Yeah.  But what I said was that -- and
8  I knew it at the time is we had -- it was not fully briefed.
9  It was something that the plaintiffs had briefed.  We had not
10 fully briefed it.  I actually think there is legal prejudice
11 in the fact that we believe that there's not adequate
12 consideration for the settlement.  And we would get a setoff
13 at trial.  And I think that under 1981, the one satisfaction
14 rule and notwithstanding the joint and several liability
15 doctrine, we would get a setoff.  And I think the setoff here
16 is inadequate, and I think that is legal prejudice.
17     THE COURT:  Well, you can -- I'm not denying you the
18 right to object to the final approval of the settlement.
19 You've got that right.  We've got a briefing schedule, and you
20 could make those arguments.
21     MR. MULHERIN:  I just wanted to make sure,
22 Your Honor, because you were relatively definitive on the
23 standing.  So I wanted to make sure we still had the
24 opportunity to brief that issue.
25     THE COURT:  Well, you understand what you're up

1  against.

2        MR. MULHERIN:  I understand.

3        THE COURT:  I've given you my view of the world, but
4  maybe there are legal arguments that I'm not considering, and
5  you have the opportunity to make that.

6        MS. FLOTTE:  And if I may, Your Honor, just two
7  points.

8        I have the transcript before me.  We --

9        THE COURT:  We don't need to debate the transcript
10 anymore.

11       MS. FLOTTE:  It was affirmatively represented.

12       THE COURT:  Okay.

13       MS. FLOTTE:  With respect to the motion to compel,
14 the motion seeks information from 2008 to 2018.  Counsel has
15 made representations that we're only interested in 2016 I
16 believe into the present.  I would ask that we not be required
17 to produce all the way back to 2008.

18       THE COURT:  What's the claim?

19       MR. MULHERIN:  It starts -- the claim period would
20 start in 2008.

21       THE COURT:  That's what I assumed.

22       MR. MULHERIN:  We'll check and see that we -- you
23 know what, we can accept from '13 to the present.  But we do
24 need '14, '15, '16, '17, '18.

25       THE COURT:  All right.  2013 through 2017.

1     MS. FLOTTE:  Thank you, Your Honor.
2     THE COURT:  Okay.
3     MR. MULHERIN:  Your Honor, is there a time limit on
4  that?  We obviously have our brief due next Friday.  Is there
5  a time limit by which they must produce the reports?
6     THE COURT:  Oh.  What do you think you need?  I mean,
7  I don't see these reports as being terribly material to the
8  objection.  You can still make your -- you can make your
9  argument predicated on -- I mean, you've already got enough,
10 to counsel's point, to make the argument that, look, if -- you
11 know, to the extent it has any relevance to the standing
12 question, to the extent Mr. Swerdloff -- you know, they
13 weren't under financial pressure that that has some relevance,
14 but you're going to have to explain that to me, but I think
15 you've got enough to do that.
16     So we're clear, what do you think you reasonably need
17 to produce this?  We're not talking about a huge volume of
18 material.
19     MS. FLOTTE:  No.  I think by early next week, by
20 Tuesday.  Would Tuesday work?
21     MR. MULHERIN:  That's fine.
22     THE COURT:  Mr. Williams, you haven't had a chance to
23 talk today.
24     MR. WILLIAMS:  I've been very quiet today.
25     I do have one request that really deals with the

1  Court. We had set August 31st as a deadline to file the
2  motion for final approval. I'm going to be out of town until
3  August 31st. I was wondering if I could file it the day after
4  the holiday, September 4th, if that would be enough time. The
5  fairness hearing is on September 12th.
6          THE COURT: And remind me. I think we set the
7  briefing schedule so all the briefing is going to be done in
8  advance of you filing that?
9          MS. FLOTTE: Yes.
10         THE COURT: Okay. Then that's fine.
11         MR. WILLIAMS: Thank you.
12         THE COURT: Anything else?
13         THE CLERK: I'm sorry. What date was that that was
14 requested?
15         THE COURT: So the motion for final approval of the
16 settlement will be due September 4th.
17         MR. WILLIAMS: Thank you, Your Honor.
18         MR. MULHERIN: Thank you.
19         THE COURT: Okay. Thanks.
20         MS. FLOTTE: Thank you, Your Honor.
21         MS. DOUGHERTY: Thank you.
22    (Which were all the proceedings heard.)
23
24
25

```
 1                         CERTIFICATE

 2      I certify that the foregoing is a correct transcript from

 3   the record of proceedings in the above-entitled matter.

 4   /s/Kelly M. Fitzgerald                 August 9, 2018

 5   _____      _____
     Kelly M. Fitzgerald                          Date
 6   Official Court Reporter
```