## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| BRIAN LUCAS, JOSEPH EAGLE, MICHAEL KEYS, ANTWOIN HUNT, and JAMES ZOLLICOFFER, on behalf of themselves and other similarly situated individuals, | |
| Plaintiffs, | Case No. 12 C 9672 |
| v. | Judge Tharp |
| VEE PAK, INC., PERSONNEL STAFFING GROUP d/b/a MVP, STAFFING NETWORK, and ALTERNATIVE STAFFING, INC., | Magistrate Judge Martin |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE PARTIAL CLASS ACTION SETTLEMENT AGREEMENT BETWEEN PLAINTIFFS AND DEFENDANT ASI ONLY

Respectfully Submitted,

Christopher J. Williams
Workers' Law Office, PC
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Joseph M. Sellers
Shaylyn Cochran
Miriam Nemeth
Cohen, Milstein, Sellers & Toll, P.L.L.C.
1100 New York Avenue, N.W.,
East Tower - Suite 500
Washington, D.C. 20005

Attorneys for Plaintiffs

<u>**TABLE OF CONTENTS**</u>

I.     **INTRODUCTION** .................................................................................. 1

II.   **SUMMARY OF THE COMPLAINT AND THE SETTLEMENT** ....................... 3

    A.  **Summary of the Complaint** ............................................................ 3

    B.  **Summary of the Settlement** ............................................................ 3

     1.  *ASI Settlement Fund* ................................................................ 3

     2.  *ASI's Cooperation Agreement* .............................................. 5

     3.  *ASI's Agreement to Injunctive Relief* ................................. 10

    C.  **The Court's Preliminary Approval Order** ............................ 11

    D.  **Procedural Background** .................................................................. 12

     1.  *Class Representative Service Award and General Release Payment* ....................... 14

     2.  *Attorneys' Fees* ...................................................................... 16

III.  **THE PARTIES HAVE SATISFIED THE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER.** ...................... 16

IV.  **FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.** ....................... 17

    A.  **The Settlement is Fair, Adequate, and Reasonable** ............... 18

     1.  *Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment* ....................... 18

     2.  *Complexity, Length, and Expense of Further Litigation* ........... 22

     3.  *Lack of Objections to the Settlement* ................................... 22

     4.  *Opinion of Competent Counsel* ............................................ 23

     5.  *Stage of the Proceedings and Discovery at Time of Settlement* .................... 23

     6.  *The Settlement Was the Result of Arm's Length Negotiations* ............... 24

    B.  **The Settlement is Appropriate.** ................................................ 25

V.   **CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE** ......... 25

VI.  **CONCLUSION** .................................................................................. 29

## I.     INTRODUCTION

After vigorous advocacy and negotiation, Plaintiffs Brian Lucas, Joseph Eagle, Michael Keys, Antwoin Hunt, and James Zollicoffer, individually and on behalf of all others similarly situated ("Plaintiffs"), and Defendant Alternative Staffing, Inc., ("ASI," or "Defendant"), entered into a Partial Class Action Settlement Agreement to resolve the claims alleged in the Fifth Amended Complaint filed in *Lucas, et al. v. Vee Pak et al.*, Case No. 12 C 9672. Plaintiffs submit this Memorandum of Law in support of their Motion for Final Approval of the Settlement.

The Settlement Agreement establishes a cash fund of in the total amount of $93,000.00 payable to the Class, inclusive of the costs of administering the settlement, attorney's fees and costs, and service awards and a general release award to the Class Representative Brian Lucas. The large majority of this fund was utilized to distribute notice to the more than 26,000 putative ASI Class Members in order to determine those who will be eligible to recover from the ASI Settlement Fund funded in part by ASI and which may be funded additionally by the non-settling Defendant, Vee Pak, Inc., in the future. While the average gross settlement payment from the existing settlement fund of approximately $5.50 to each of the 3,158 ASI Class Member ("Eligible Claimants") who filed a timely and valid claim form is relatively small, the Settlement Agreement offers significant other value to the ASI Class in two ways.

First, in addition to the cash fund created by ASI, ASI entered into a Cooperation Agreement set forth in Section XIII of the Settlement between Plaintiffs and ASI that is of great value to the Class. Pursuant to this Cooperation Agreement, ASI has provided and will continue to provide Plaintiffs and the Court with a "bird's-eye view of the misconduct" and rather than engaging in protracted and expensive litigation, ASI has agreed to "serve as a narrator for the story" leaving Plaintiffs with more than a trail of "hostile witnesses who have no incentive to tell

1

the truth and no desire to assist us." As discussed further, *infra*, the cooperation provided by ASI has already provided a substantial benefit to the Class by significantly mitigating risk of loss in this litigation that the Plaintiffs might otherwise face on behalf of the ASI Class as they seek to obtain class certification of their claims and has significantly enhanced the possibility of a larger judgment against the non-settling Defendant in this matter, Vee Pak, including an increased in the likelihood of punitive damages in Plaintiffs' estimation.

Second, the Settlement Agreement provides another, more immediate benefit to the ASI Class. ASI has agreed to certain very important injunctive relief which Plaintiffs' believe will promote more jobs for ASI Class Members through operational policy changes. ASI continues to provide laborers to Vee Pak and has agreed, upon final approval, to both require ASI to provide meaningful training concerning the hiring of day or temporary laborers to its staff consistent with equal employment opportunity laws and to provide Plaintiffs several different opportunities to contribute to and revise ASI's policies and practices in ways that would be most beneficial to class members. These settlement provisions do not simply ask ASI to comply with the law and existing reporting requirements, but instead permit Plaintiffs involvement in establishing new policies and practices for ASI.

The Settlement is the result of arm's-length negotiations, and prior to reaching the Settlement, the Parties exchanged numerous documents and data and completed briefing on a myriad of legal and factual issues underlying Plaintiffs' allegations. As a result of this exchange, Plaintiffs assessed the strengths and weaknesses of their positions and negotiated the Settlement based on their educated assessment of the case.[1] The terms of the Settlement are fair, reasonable, and adequate, and clearly fall within the range of possible approval. Accordingly, Plaintiffs

---

[1] Plaintiffs and the ASI Class are not settling their claims against Vee Pak and, in fact, Plaintiffs intend to vigorously pursue their claims against this non-settling Defendant on behalf of the ASI Class.

request that the Court grant their Motion and enter the proposed Order Certifying the Settlement Class for Settlement Purposes Only and Finally Approving the Settlement, in the form attached as Attachment 1.

## II.   SUMMARY OF THE COMPLAINT AND THE SETTLEMENT

### A.   Summary of the Complaint

Plaintiffs filed suit against Defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging that Defendants discriminated against African Americans by refusing to assign them to work at Vee Pak. Fifth Amended Complaint ("FAC") at ¶¶ 1, 16 - 91. In particular, Plaintiffs alleged that the Defendant staffing agencies ASI, MVP and Staffing Network and Defendant Vee Pak have engaged in a policy or practice of steering African-American laborers away from temporary positions available at Vee Pak, thereby excluding or substantially limiting the number of African-American laborers assigned to Vee Pak. *Id.* Plaintiffs further alleged that this policy of racial steering, which Plaintiffs challenged under both disparate impact and disparate treatment theories, yielded a workforce of temporary laborers assigned by ASI, MVP and Staffing Network to Vee Pak that was mostly Latino. FAC at ¶ 17.

### B.   Summary of the Settlement

#### 1.   *ASI Settlement Fund*

After approximately two years of litigation, inclusive of extensive briefing of multiple Motions to Dismiss Plaintiffs' Complaint and initial discovery, Plaintiff and Defendant ASI started engaging in settlement discussions. The Parties retained Retired Judge Morton Denlow to facilitate mediation. On April 23, 2015, after a full day of negotiations and discussions about information in ASI's possession relevant to Plaintiffs' claims, the Plaintiffs and ASI reached the primary terms of a Settlement Agreement. In the months following the mediation, the Plaintiffs and

ASI continued to discuss and clarify issues affecting the scope of the Settlement Agreement, both with and without the assistance of Judge Denlow. On March 8, 2016, the Parties reached a final Settlement Agreement for the ASI subclass in this matter. The Class is defined as ("the ASI class"):

> The Class Representative and all African Americans who sought a work assignment through ASI and were otherwise eligible to work at Vee Pak but, on one or more occasion, were not assigned or hired to work at Vee Pak during the period December 5, 2008 through January 16, 2018.

The Settlement Agreement, attached hereto as Attachment 2, establishes a Total ASI Class Settlement Fund of $93,000 for the benefit of African-American laborers who were allegedly denied work assignments to Vee Pak through ASI. This Settlement Fund also covers the administrative costs associated with implementing the Settlement, estimated to be $79,000 through certification; a Service Award Payment for Class Representative, Brian Lucas, in the amount of $1,000, respectively, subject to approval of the Court.[2] While the Settlement and Agreement provided for a Fee Award for Class Counsel of up to 25% of the settlement fund, subject to approval of this Court, Class Counsel is not seeking an award of fees and costs at this time. Accordingly, subject to approval of these amounts by this Court, the net monetary benefit to the Class will be approximately $13,000.00 ("Net Class Settlement Fund"), which will result in an average gross settlement award of approximately $5.50 to all Eligible ASI Claimants. This is only part of the settlement funds that could be available to ASI Class Members. If Plaintiffs prevail in their claim against the non-settling Defendant, Vee Pak, a possibility which Plaintiffs' counsel believe is greatly increased due to the Cooperation Agreement with ASI, these additional funds would be available for distribution to Eligible ASI Claimants on the same *pro rata* basis as described above. Plaintiffs have asked this Court to hold the remaining ASI Class Settlement

---

[2] Separate from the ASI Class Settlement Fund, ASI has agreed to pay an additional $2,000 to named Plaintiff Brian Lucas in exchange for executing a general release of all of his claims, something not being asked of other class members.

4

Funds paid by ASI as part of this Agreement in trust until the conclusion of this litigation or until the Court otherwise deems appropriate.

### 2. *ASI's Cooperation Agreement*

In addition to the cash fund created by ASI, ASI entered into a Cooperation Agreement set forth in Section XIII of the Settlement between Plaintiffs and ASI that is of great value to the Class. Pursuant to this Cooperation Agreement, ASI has provided and will continue to provide Plaintiffs and the Court with a "bird's-eye view of the misconduct…informed by [ASI's] own participation in the scheme."[3] Rather than engaging in protracted and expensive litigation, ASI agreed, for settlement purposes, to "serve as a narrator for the story" leaving Plaintiffs with more than a trail of "hostile witnesses who have no incentive to tell the truth and no desire to assist us."[4] The cooperation provided by ASI has already provided a substantial benefit to the ASI Class by significantly mitigating risk of loss in this litigation that the Plaintiffs might otherwise face on behalf of the ASI Class as they seek to obtain class certification of their claims and has significantly enhanced the possibility of a larger judgment against the non-settling Defendant in this matter, Vee Pak, including an increased in the likelihood of punitive damages in Plaintiffs' estimation. The insider testimony and corroborating documentation provided by ASI's witnesses will also undoubtedly justify broader discovery into Vee Pak's own practices as this case moves forward into discovery into the remaining, non-settling Defendants' conduct.

ASI's witnesses have provided a bird's eye view of the relationship between Vee Pak and its staffing agencies work, making clear that it is Vee Pak that has the final say in which laborers are allowed to work at Vee Pak and which are not. For example, Stephen Swerdloff, the

---

[3] *See*, for example, Ceresney, Andrew, Director of the Division of Enforcement, U.S. Securities and Exchange Commission, "*The SEC's Cooperation Program: Reflections on Five Years of Experience*" (May 13, 2015), available at www.sec.gov/news/speech/sec-cooperation-program.html.

[4] *Id.*

Chairman of ASI, described in great detail how shift supervisors at Vee Pak were the persons with ultimate authority over what laborers would be permitted to work at Vee Pak, or as Mr. Swerdloff described, "they were the boss, they are ones that made your life or killed you" *See* March 8, 2018 Deposition of Stephen Swerdloff. ("Swerdloff Dep.,_:_")109:16-110:3, 130:13-131:12, attached as Attachment 3. Mr Swerdloff also testified that managers at Vee Pak dictated who could come work to Vee Pak; Swerdloff Dep., 39:14-20, 130:13-24.

ASI's witnesses provided several other examples of the power that Vee Pak had over assignments and of the preference that Vee Pak had for Hispanic Workers over Latino workers. For example, Kyle Carstensen, the current President of ASI, and Carmen Hernandez, an onsite manager for ASI, described an example of how a Vee Pak manager reacted to an assignment of African American workers by ASI to Vee Pak by yelling "get these fucking black people out of here" to the ASI managers, resulting in the African American workers being sent back to ASI's office. See July 12, 2018 Deposition of Kyle Carstensen, ("Carstensen Dep., _:_") 138:10-22, 141:24-142:10, and 153:11-154:8, attached as Attachment 4; *see also* May 17, 2018 Deposition of Carmen Hernandez, ("Hernandez Dep., _:_") 22:12 - 23:8, attached as Attachment 5. Mr. Swerdloff testified that in one conversation with the first shift supervisor in about 2009 or 2010, Mr. Juan Montoya, the shift manager, "stated that he basically wanted young, good-looking Hispanic females" and "said he wanted good looking young ladies with big tits." Swerdloff Dep., 107:18-22; 113:2-23. According to Mr. Swerdloff, Mr. Montoya told him "if [ASI] could not provide those [Hispanic females] to him, he would take orders and give them to another agency." Swerdloff Dep., 113:23-24. According to Mr. Swerdloff, the second shift supervisor, Mario Balones also expressed a preference for non-African Americans, stating "[Mario] basically stated that he wanted Hispanic individuals because the African-Americans never stayed." Swerdloff

6

Dep., 108:1-4. *See also* Swerdloff Dep., 108:9-21, 110:10-113:23, 116:12-117:4, 120:24-121:16, 200:20-201:8. *See also* May 17, 2018 Deposition of Deyanira Gonzalez, a dispatcher at ASI ("Gonzalez Dep., _:_") at 17:12-23:18, 21:6-22:11, 24:24-26:4, 26:12-27:13, 44:23-45:6, attached as Attachment 6; s*ee also* May 8, 2018 Deposition of Julie Tracey ("Tracey Dep., _:_") 94:2-96:22, 111:9-113:5, 113:9-17 & 118:14-121:4, attached as Attachment 7.

ASI's testimony also provides insight into the codes that were used by Vee Pak to request Hispanic laborers and perpetuate its discrimination against African American laborers even after this lawsuit was filed. Mr. Swerdloff recounted how after the lawsuit was filed, ASI began sending more African American laborers to ASI to meet increased demand, but this was "met with resistance." Ms. Swerdloff identified an email sent by managers at Vee Pak to ASI in response to this increased assignment of African American laborers complaining that "ASI was sending, quote/unquote, 'new people' instead of experienced people." When asked about what he understood the distinction between "new people and "experienced people" to mean in that context, Mr. Swerdloff clearly stated "Hispanic versus African-American." *See* Swerdloff Dep., 123:13-20 - 126:2.

The testimony provided by ASI's witnesses will also help refute any claim by Vee Pak that the unskilled jobs being filled by ASI at Vee Pak required any type of specialized skill or training, undercutting any argument that the assignment process was an individualized one. For example, Mr. Swerdloff stated clearly that most assignments at ASI required no special learning or training from job candidates. Swerdloff Dep., 45:21-46:4, and 54:5-9. ASI Office Manager Julie Tracey also provided important information for Plaintiffs about the prerequisite skills and training required for a laborer to be qualified to be assigned to work at Vee Pak. *See*, Tracey

Dep., 25:14-26:6 (describing placements at Vee Pak as general labor jobs that required no special training or certificates).

In addition to the testimony provided by ASI, the records identified by ASI witnesses will also provide a roadmap to future discovery in this case and corroborate witnesses' testimony. For example, Mr. Swerdloff identified Do Not Return ("DNR") sheets that were used by Vee Pak managers to identify laborers, usually African American, that they did not want returned by ASI to Vee Pak. These sheets were either completed by Vee Pak managers themselves, or, if completed by ASI managers at the request of Vee Pak, they were signed off on by Vee Pak managers. Swerdloff Dep., 98:21-100:4-20. *See also* Tracey Dep., 109:23-110:13. To the extent African American Laborers returned by Vee Pak received Four Hour Pay form ASI, ASI's database will also help identify Vee Pak's violations. Swerdloff Dep., 129:10- 18. ASI's witnesses also explained how work orders were transmitted by Vee Pak to ASI via email, and they illustrated how these communications may be used to prove Vee Pak's discriminatory practices, especially with the insight as to how codes were used in these communications to discriminate against African American workers. For example, Swerdloff explained how an email written by Vee Pak managers, Exhibit 17 in his deposition, was a coded complaint by Vee Pak in response to ASI increasing its assignment of African American laborers. Swerdloff Dep., 123:13-20 - 126:2 Ms. Carstensen also referenced an example of order for 82 laborers made by Vee Pak to ASI via email, which ASI confirmed via email for 85 laborers was followed by an email from one of Vee Pak's managers stating that there were "only 65 good ones." Mr Carstensen stated that "bad ones -- or non-good ones referred to African Americans." Carstensen Dep., 193:6-196:2.

The value of having the bird's eye view provided by these insiders from ASI of exactly how the discriminatory practices alleged in Plaintiffs' Complaint occurred and the roadmap to documentary evidence to corroborate the witnesses' testimony cannot be overstated. Plaintiffs have received critical information from ASI that will support an increased damages award—and likely punitive damages—against Vee Pak. *See* Pls' Unopposed Suppl. Briefing in Support of Pls' Mot. for Prelim. Approval at 1, 9-14, Dkt. No. 256. Likewise, the irony of Vee Pak's counsel's efforts to belittle the value of the Cooperation Agreement in the ASI Settlement should not be missed. In its Motion in Opposition to Approval of the Settlement, counsel for Vee Pak argues that the ASI Cooperation Agreement "did not reveal anything that Plaintiffs could not obtain in discovery." *See* Defendants' Memorandum in Opposition to Partial Class Action Settlement with ASI, Dkt. No. 331, Section III.B.(2)(c). Yet, these very same counsel have repeatedly argued that the plaintiffs in another matter pending before this Court should be entitled to little or no discovery into similarly alleged discriminatory practices exactly because those plaintiffs, these attorneys argue, lack just the type of insider evidence Plaintiffs have secured here through the settlement with ASI in this case. *See* Parties' Joint Case Management Report in *Hunt, et al. v. Personnel Staffing Group, Inc., et al.*, Case No. 16 C 11086, Dkt. No. 115, Section II.B. (the *Hunt* defendants argue that the plaintiffs should be denied discovery or allowed only limited discovery into the practices of a staffing agency's client companies in that case "absent proof to substantiate Plaintiffs' disparate treatment allegations" and "until Plaintiffs have adduced sufficient evidence of intentional discrimination by that Defendant to survive its summary judgment motion.") As this case proceeds into discovery into Vee Pak's conduct, clearly any effort by Vee Pak's counsel to similarly argue that Plaintiffs here have failed to adduce sufficient evidence to justify broad class-wide discovery into Vee Pak's policies,

practices and conduct will ring hollow, in large part because of the substantial evidence of a common policy or practice by Vee Pak of imposing a preference for non-African American laborers on assignments made by ASI throughout the class period, extending even beyond the filing of this lawsuit, all obtained as a result of the Cooperation Agreement contained in the Settlement Agreement with ASI.

### 3. *ASI's Agreement to Injunctive Relief*

Finally, in addition to the cash Settlement Fund, ASI has agreed to take affirmative steps for a period of two (2) years from final approval to avoid any future potential violations of federal and state anti-discrimination laws. These steps include: (1) maintaining a record of the race of all laborers who seek work assignments from ASI in its database; (2) providing the data to Class Counsel in electronic form on the first day of January, April, July and October during the period of injunctive relief; (3) meeting with Class Counsel quarterly upon request to review the information and discuss recruitment, assignment and retention of laborers; and (4) providing at least four trainings on equal employment opportunity and compliance with various federal and state civil rights laws to its staff. ASI continues to provide laborers to Vee Pak and each of these steps will ensure that ASI Class Members who were allegedly denied work opportunities during the ASI Class Period because of discriminatory requests from their client, Vee Pak, will no longer be passed over under the cover of temporary assignments. Going forward, ASI Class Members will be equipped with information to spot discriminatory patterns should they exist.

ASI's agreement to maintain the race of laborers who seek work assignments, in addition to those who are assigned, is a particularly important piece of data as this and other similar litigation has demonstrated as non-assigned African American laborers are arguably those most harmed by the alleged discriminatory practices. Currently, the law does not require tracking the race of laborers seeking work from a staffing agency, only those who have been assigned. See currently

only requires staffing agencies to keep track of the race of laborers who are sent on assignment. *See* the Illinois Day and Temporary Labor Services Act ("IDTLSA"), 820 ILCS 175/12(9). ASI's agreement to track this information for a period of two years will provide Plaintiffs with a powerful tool to ensure no future discrimination against African American laborers in the making of assignments to work by ASI.

### C. The Court's Preliminary Approval Order

On May 19, 2016, this Court held an initial hearing on the Plaintiffs' Motion for Preliminary Approval of the parties' Class Action Settlement Agreement and for Approval of Class Certification, Form and Manner of Class Notice (hereafter "Preliminary Approval Motion") at which time the Court requested additional briefing on the following issues:

1. The strength of Plaintiff's case on the merits balanced against the amount offered in the settlement;

2. The enforcement mechanism for the Parties' proposed "Cooperation Agreement" (Section XIII of the Agreement);

3. Typicality of the putative Class Representative's claim with those of the proposed ASI Class; and

4. The basis of any remainder funds the Parties have proposed to distribute as *cy pres*.

On December 20, 2017, after reviewing the briefing in support of and in opposition to the Plaintiffs' Motion for Preliminary Approval of the their settlement with ASI, the Court issued Memorandum Opinion and Order that requested additional briefing from Plaintiffs to clarify or address in greater detail certain issues relating to the proposed Settlement, specifically:

1. The Parties' plan for a notice and claims process by which ASI Class Members will be identified, receive notice of the Settlement and have an opportunity to make a claim, object to the Settlement or opt-out of the Settlement; and

2. The Parties' plan for determining the allocation of ASI Settlement Funds among ASI Class Members who make a claim, including:

a. the Parties' plan to remove ASI Class Members who suffered no injury from the recovery pool; and

b. the Parties' plan to allocate the ASI Settlement Funds in a manner that reflects the degree of injury suffered by each ASI Class Members who makes a claim.

On January 16, 2018, after reviewing all supplemental briefing in support of Plaintiffs' Motion for Preliminary Approval of Plaintiff's Partial Settlement with ASI, the Court issued an Order (i) preliminarily approving the parties' Class Action Settlement Agreement (ii) granting class certification of the above-described class; (iii) approving the Notice of Class Action, Proposed Settlement and Fairness Hearing; and (iv) authorizing that notice to the Class to be sent. Dkt. No. 296.

The final Fairness Hearing, originally set for August 21, 2018, was continued thereafter through September 12, 2018 at 2:00 PM. Dkt. No. 304.

**D.    Procedural Background**

Pursuant to the Court's Preliminary Approval Order, on March 15, 2018, Defendant provided the Settlement Administrator, Garden City Group, LLC ("GCG"), with Excel spreadsheets containing names and last known addresses of 26,008 putative Class Members. *See* Declaration of Amanda Sternberg, ¶7 (hereafter "Sternberg Decl., ¶ _"), attached hereto as Attachment 8. GCG updated Class Members' addresses via the United States Postal Service's National Change of Address database. *Id*. ¶8

On April 2, 2018, GCG caused the notice and claim form ("Notice Packet") approved by the Court to be mailed to each of the 26,008 Class Members for whom Defendant provided an address by depositing the same in the U.S. Mail, first class postage paid. Sternberg Decl., ¶9-10. Of the Notice Packets mailed, 190 were returned by the U.S. Postal Services with forwarding address information and were promptly re-mailed to the updated addresses provided. Sternberg Decl., ¶12. Of the notice Packet mailed, 5,207 were returned as undeliverable

without an address change notification from the USPS, but GCG obtained updated addresses 4,176 Class Members and re-mailed Notice Packets to the updated addresses. Sternberg Decl., ¶13. In total, 1,031 Notice Packets have been ultimately returned as undeliverable as of September 4, 2018. Sternberg Decl., ¶14.

In addition, beginning on April 2, 2018, the Settlement Administrator established and has maintained through the settlement administration process a dedicated, interactive toll-free telephone number which allows Class Members to hear information about the Settlement or to reach a live operator during normal business hours. Sternberg Decl., ¶18. On April 2, 2018, the Settlement Administrator also established a website, www.veepaksettlement.com at which Class Members could download a copy of the Notice (both abridged and unabridged) and could download a claim form. Sternberg Decl., ¶19. Finally, on April 2, 2018, Class Counsel caused to be published in The Chicago Defender and The Voice Newspapers an advertisement about the Settlement, in the form attached to the Settlement as Exhibit E, which ran for a period of 7 consecutive days and which notified potential Class Members of the Settlement and provided them with the settlement website and toll-free telephone number. *See* Declaration of Christopher J. Williams, Class Counsel, ¶11 (hereafter "Williams Decl., ¶_"), attached hereto as Attachment 9. Class Counsel's phone number was included with the Notice Packets to answer questions regarding the Settlement from Class Members and to provide information on how to file claims, if sought. To date, Class Counsel has received phone calls from a total of more than 425 Class Members, whom Class Counsel was able to assist working with the Settlement Administrator. *See* Williams Decl., ¶12.

In all, as of September 4, 2018, the Claims Administrator has received a total of 3,158 timely claims and 66 late claims postmarked or emailed after the Filing Deadline of July 2,

2018. Sternberg Decl., ¶16. Of the 3,158 timely filed claim forms, 61 individuals filed claim forms that were incomplete or otherwise deficient. GCG mailed letters informing the ASI Class Member of each deficiency. Of the 61 letters mailed, 30 ASI Class Members returned completed Claim Forms before the deadline. Sternberg Decl., ¶17.

The estimated cost of Settlement Administration through final approval is $79,000. Williams Decl., ¶15. Class Counsel has agreed to seek no more than 25% of the total ASI Settlement Amount, however, does not seek any fees at this time. Rather, as with settlement awards to ASI Class Members, Class Counsel asks the Court to direct that the ASI Settlement Funds be held in trust until the conclusion of the lawsuit to determine if Vee Pak will also make a contribution to the ASI Class Fund.

### 1. *Class Representative Service Award and General Release Payment*

The Settlement Agreement also provides for a Service Award in the amount of $1,000 to the Named Plaintiff Brian Lucas to acknowledge his service to the Class. Brian Lucas is the only one of the remaining Plaintiffs who has claims typical of the ASI Class and who can serve as a Class Representative. The remaining Plaintiffs, Joseph Eagle, Michael Keys, Antwoin Hunt and James Zollicoffer, although each sought work at the other Staffing Agency Defendants' offices, did not seek work at ASI and therefore do not have a claim typical of the claims of the ASI Class. In addition, under the Settlement Agreement, the Named Plaintiff Brian Lucas will receive a payment of $2,000 as consideration for executing a general release of all claims against ASI, including any claim for alleged retaliation for bringing this lawsuit. No other Class Member is being asked to execute a general release of all claims against all Defendant. These payments are in addition to any Settlement Payment that Named Plaintiff Lucas will receive as a Claimant in the Settlement Class.

14

In all, the payments totaling $3,000 to the Named Plaintiff for his service to the class, and execution of a general release are warranted in light of his efforts resulting in a $93,000 settlement on behalf of the Class, the agreed upon injunctive relief, the Cooperation Agreement with Defendant ASI, and the legal rights that he is relinquishing. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* Recent decisions in this Circuit have approved incentive awards as high as $20,000 per named plaintiff. *See, e.g.*, *Berger v. Xerox Corp. Ret. Income Guar. Plan*, No. 00-584-DRH, 2004 U.S. Dist. LEXIS 1819, at * 11 (S.D. Ill., 2004); see also *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding $5,000 enhancement award in Telephone Consumer Protection Act of 1991 (TCPA) class action settlement); *see also Schmidt v. Smith & Wollensky, LLC*, No. 09-CV-2752 (N.D. Ill. Aug. 18, 2011) (Dkt. No. 78, ¶ 5(b)) (awarding $10,000 enhancement award in IMWL and FLSA case).

In this case, the Named Plaintiff was responsible for initiating and maintaining this action. He participated in the case, provided information and documents, participated in the mediation, and performed everything that was asked of them. Without the efforts of the Named Plaintiff, this case would not have been filed and this Settlement would not have been achieved.

As a result of these efforts and the results achieved, the incentive payments to these individuals are well justified.

### 2. *Attorneys' Fees*

Under the Agreement, Class Counsel agreed not to seek attorneys' fees and litigation expenses and/or costs in excess of 25% of the Total Settlement Amount. At this time, Class Counsel does not seek an award of fees and ask the Court to hold any funds for attorneys' fees and costs in trust as a part of the ASI Settlement Fund until the conclusion of this litigation or until the Court otherwise directs the funds to be distributed. At that time, Class Counsel will submit a petition for their reasonable fees and costs.

## III. THE PARTIES HAVE SATISFIED THE REQUIREMENTS OF RULE 23 AND THE COURT'S NOTICE PROCEDURES SET FORTH IN THE PRELIMINARY APPROVAL ORDER.

In its Preliminary Approval Order, the Court held that the form, content and proposed distribution of the Class Notice met the requirements of federal law and due process, and was the best notice practicable under the circumstances.[5] Dkt. No. 296, at ¶ 7.

Rule 23(c)(2)(B) requires the Court to direct the parties to give the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 155, 173 (1974). As the Supreme Court has held, notice by mail provides such "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. The parties' and the claims administrator's extensive efforts to effectuate notice to the

---

[5] The Notice Packet approved by the Court informed Class Members of the pendency of the class action litigation, the definition of the Settlement Class, the alleged claims in dispute, the terms and conditions of the proposed settlement, information regarding attorneys' fees, costs, and expenses, the procedures for allocating and distributing the maximum gross settlement amount, the address and phone number of class counsel and the procedure for making inquiries, the deadlines for taking action, class members' individual rights under the settlement, including the right to exclude themselves from the Settlement Class, the manner and consequences for doing so, the right to file any objections to the Settlement, and the right to attend a fairness hearing during which such objections will be heard as required by Rule 23(c)(2)(B).

class have met the requirements of Rule 23(c)(2)(B). Here, because some names of putative class members were not available through the records of the Defendant, the Settlement Agreement provided for notice to be given through a combination of mail, publication in two area newspapers serving the African American community in the Chicago area and through a website, as described more fully *supra*.

## IV. FINAL APPROVAL IS APPROPRIATE PURSUANT TO RULE 23(E) BECAUSE THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Settlement of class action litigation is favored by federal courts. *Uhl v. Thoroughbred Tech. &Telecomms.*, 309 F.3d 978, 986 (7th Cir. 2002) (*citing Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). Although settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate. *Id.* In determining whether a settlement is fair, adequate, and reasonable, courts in the Seventh Circuit consider a variety of factors including:

(1) the strength of the plaintiff's case compared to the defendant's settlement offer;

(2) the complexity, length, and expense of continued litigation;

(3) the amount of opposition to the settlement;

(4) the opinion of experienced counsel; and

(5) the stage of the proceedings and the amount of discovery completed.

*Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) (*citing Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)). Finally, the Seventh Circuit has warned that the district court must also ensure that a proposed settlement is not the product of collusion. *Id.* (*citing Eubank v. Pella*, 753 F.3d 718, 721 (7th Cir. 2014)).

As explained below, the Settlement Agreement is the product of extensive arm's-length negotiations between experienced attorneys with the assistance of an experienced mediator,

Retired Judge Denlow. In addition, the Settlement comes at an appropriate time, after the Parties had informally exchanged significant data and documents in preparation for and during the mediation and ongoing settlement discussions and briefed a myriad of legal and factual issues related to Plaintiffs' claims. The Settlement is fair, adequate, and reasonable, free from collusion, and final approval should be granted.

### A. The Settlement is Fair, Adequate, and Reasonable

#### 1. *Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment*

The "most important factor" is the first one—the relative "strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Gehrich v. Chase Bank United States*, 2016 U.S. Dist. LEXIS 26184, *22 (N.D. Ill. 2016) (*citing Synfuel Techs., Inc.*, at 653). Specifically, the court must "estimate the likely outcome of a trial" to determine the adequacy of a settlement. *Id*. (*citing Eubank*, 753 F.3d at 727). "In conducting this analysis, the district court should begin by 'quantify[ing] the net expected value of continued litigation to the class.' To do so, the court should 'estimat[e] the range of possible outcomes and ascribe a probability to each point on the range.'" *Id*. (*quoting Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002)) (internal citation omitted). The Seventh Circuit recognized that a high degree of precision cannot be expected in valuing litigation but directed courts to require that the parties present evidence that would enable possible outcomes to be estimated so that the court can at least come up with a "ballpark valuation." *Id*. (*quoting Reynolds*, 288 F.3d at 285).

When measuring the proposed Settlement here against the total amount the class might have recovered at trial, weighed against the weaknesses and risks inherent in litigating these claims, the Settlement here is an excellent result for the class. The Settlement strikes an

appropriate balance between the strength of Plaintiffs' case and the benefit to the class of securing a settlement. The Settlement with ASI was achieved relatively early in the litigation after an intensive mediation, and because the Parties exchanged information informally, Plaintiffs have been spared the cost of formal discovery extensive litigation.[6]

Additionally, the process facilitated by Judge Denlow as part of the mediation allowed the parties to exchange briefing on a range of issues affecting the merits of Plaintiffs' claims and the appropriateness of class certification. Plaintiffs both provided and received information that normally would not be exchanged until later stages of the litigation, and as a result, Plaintiffs were able to evaluate the strengths of their case and compare them with potential obstacles that Plaintiffs would have to confront and overcome if the case proceeded to trial.

Ultimately, Plaintiffs were able to secure a Settlement that provides a significant and certain recovery and relief for the members of the class. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money . . .") (internal citations and quotations omitted).

Plaintiffs and ASI significantly dispute the damages that Class Members are entitled to. If this matter were to proceed to trial, ASI also would disagree with Plaintiffs' formula for

---

[6] As the Parties acknowledged during the mediation and Class Counsel pointed out in the Motion for Preliminary Approval, the superiority of an early settlement in this matter is perhaps best demonstrated by contrasting the case at bar with the extensive disputes that have embroiled the parties in a case with analogous facts and legal issues pending in this District, *Lucas, et al. v. Gold Standard Baking, Inc., et al*, Case No. 13 C 1524 (J. Ellis, N.D. Ill.). In the *Gold Standard Baking* litigation, the parties have litigated more than six motions to compel discovery of parties or third parties and have burdened the Court with more than ten hearings to resolve disputes arising just from the exchange of written discovery of parties and non-parties. The docket in the *Gold Standard Baking* matter, which was filed at the same time as the instant matter, presently contains approximately 670 entries. In contrast, ASI and Plaintiffs here have avoided the protracted discovery disputes that likely would have arisen in this litigation as well with ASI and likely will arise with the non-settling Defendants..

19

calculating potential damages as it fails to account for mitigation. In addition to the risk of litigation over damages, Plaintiffs faced a significant risk that ASI, based on financial information it provided Judge Denlow as a mediator between the Parties, would not be able to satisfy a judgment under Plaintiff's theory of the case.

Further, although ASI's Motion to Dismiss Plaintiffs' claims were denied, ASI would have inevitably raised many of these same arguments at a later stage in the litigation, after the conduct of extensive discovery. In addition to the many factual questions relating to whether the alleged discrimination occurred, Plaintiffs would have also faced a litany of legal questions including, *inter alia*: (1) whether the Plaintiffs' claims are appropriate for class certification, or if individual issues relating to the process of making temporary of assignments predominate, if the claims of the Plaintiffs are typical of the Class or if a class is manageable; (2) whether the appropriate statute of limitations under § 1981 in this case is two or four years; (3) whether Vee Pak and ASI were jointly liable under a "joint employer" theory or "agency" theory; and (5) to what extent putative class members had an obligation to mitigate damages beyond their efforts to seek temporary work and how, in the context of the staffing industry, such obligation applies. Plaintiffs have mitigated these risks of uncertain damages awards, uncertain liability findings, by reaching settlement.

Additionally, the Cooperation Agreement obtained through the Settlement is of substantial value to the Class. Defendant ASI demonstrated during settlement discussion that it would face difficulty satisfying a large judgment if Plaintiffs were to prevail against it at trial. Plaintiffs have alleged that Defendant Vee Pak is jointly and severally liable with the Staffing Agency Defendants, including ASI, for the alleged discrimination. Plaintiffs believe that if this case were to go to trial, the trier of fact will determine that Vee Pak is liable and apportion

20

greater responsibility on Vee Pak for the alleged violations. Indeed, Plaintiffs have alleged that Plant Manager and supervisors of Vee Pak directed the Staffing Agency Defendants to not send African American laborers, instead favoring Latino laborers, and when African-American laborers were sent, regularly issued a directive to "DNR" ("Do Not Return") them, denying African Americans any future opportunity to work at Vee Pak. This Settlement only partially settles the claims of the ASI Class and leaves the ASI Class free to pursue liability and damages against ASI's client company, who Plaintiffs' assert made the discriminatory requests of ASI. While the amount of this partial Settlement with ASI is far short of what Plaintiffs believe could be recovered on behalf of the Class should this matter go to trial, the Cooperation Agreement set forth in Section XIII of the ASI Settlement, as amended, will provide Plaintiffs with a "bird's-eye view of the misconduct…informed by [ASI's] own participation in the scheme."

The value of the information Plaintiffs have received on behalf of the ASI Class will go far beyond that which can be received in the normal course of discovery and cannot be overstated. Prior to reaching this settlement Plaintiffs currently had no insiders willing to provide testimony and evidence to similarly lay bare the discriminatory practices between Vee Pak and ASI. Plaintiffs' counsel are confident that the testimony and documents produced by ASI will provide Plaintiffs' with a roadmap to revealing the common unlawful discriminatory policies and practices engaged in by Vee Pak and its staffing agencies.

Plaintiffs believe this is a reasonable compromise in this case, particularly in light of ASI's willingness to engage in early settlement, the novelty of the issues in the case, the potential risks at trial and the value of the documents, the information provided by Defendant through the Parties' cooperation agreement and ASI's willingness to engage with Class Counsel to ensure the alleged discrimination does not occur in the future.

As ASI continues to provide laborers to ASI, the Settlement will provide an immediate and tangible benefit to African American laborers who have been unable to obtain job assignments to Vee Pak. Thus, the requirement that the Settlement be fair, adequate, and reasonable is met in this case. *Synfuel Techs., Inc.*, 463 F.3d at 653.

### 2.    *Complexity, Length, and Expense of Further Litigation*

An early Settlement also allows Plaintiffs to recover lost earnings while avoiding what certainly would have been a complex, long and expensive litigation. The web of overlapping, complex legal issues discussed, *supra*, which are present in this litigation cannot be overstated. Although Plaintiffs have been and remain prepared to actively litigate these issues, the Settlement yields a comparable result without the risks associated with continued litigation. Some of these risks include the expense of litigating Plaintiffs' claims—including the costs of formal discovery and expert witnesses—which Plaintiffs have largely been able to avoid through the early Settlement.

### 3.    *Lack of Objections to the Settlement*

Notice of the Settlement was mailed to 26,008 individuals and was published on Facebook and for seven days in two prominent Chicago are newspapers serving the African American community, The Chicago Defender and The Voice Newspapers. *See* Williams Decl., ¶11. No objections have been sent to the Settlement Administrator, and only three individuals requested to exclude themselves from the Settlement. The fact that no individuals have objected to the Settlement and that only three individuals opted-out from a putative class of 26,008 indicates strong support for the Settlement. Such a low level of opposition supports the reasonableness of the Settlement. *See*, for example, *Kolinek*, 311 F.R.D. at 495 (collecting cases) (finding objection rates of between 0.1% to 0.0032% to be low enough to support settlement).

### 4. *Opinion of Competent Counsel*

The Seventh Circuit has held that the opinion of competent counsel is relevant to determining the fairness, reasonableness, and adequacy of a class action settlement. *Kolinek*, 311 F.R.D., at 495 (*citing* Synfuel Techs., 463 F.3d at 653). As set forth in Class Counsel's Petition for Reasonable Attorneys' Fees and Costs (Dkt. No. 165, 165-1 and 165-2), Class Counsel has extensive experience in litigating discrimination cases and are highly experienced class action litigators. Class Counsel strongly support the proposed Settlement. *See* Williams Decl., ¶14. This factor weighs in favor of approval. *Kolinek*, 311 F.R.D., at 495.

### 5. *Stage of the Proceedings and Discovery at Time of Settlement*

That the Settlement occurs at this early stage of the litigation is a great benefit to the class members, as Plaintiffs have secured a recovery for class members from ASI without the financial and legal risks associated with formal discovery and motion practice. Additionally, Plaintiffs have secured testimony and documents that will greatly increase the likelihood of a obtaining a significantly higher recovery for Class Members from the remaining Defendants in this matter. Prior to reaching this settlement, and as mart of the mediation proceedings, Plaintiffs received extensive information that allowed for a proper valuation of the case and the Settlement. *See Schulte v. Fifth Third Bank*, No. 09-CV-6655, 2010 WL 8816289, at *4 (N.D. Ill. Sept. 10, 2010) ("That counsel conducted no formal discovery prior to settlement does not necessarily preclude eventual final approval of the proposed settlement."). Finally, the injunctive relief which ASI has agreed to accept will provide safeguards against future discrimination by ASI, a result of significant benefit to the ASI Class as ASI continues to assign laborers to work at Vee Pak.

In sum, the Settlement represents a significant recovery for Plaintiffs, which has been achieved without the risks and financial burden of litigation as to ASI and has increased the chances of recovery of ASI Class Members as litigation continue against Vee Pak. The

Settlement yields a fair and reasonable result, and Plaintiffs respectfully urge this Court to approve it.

### 6. *The Settlement Was the Result of Arm's Length Negotiations, Free from Collusion*

The Settlement was the result of hard-fought adversarial, arm's length negotiations that took place after months of investigation and informal and formal discovery. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020; *see also Eubank v. Pella*, 753 F.3d 718, 721 (7th Cir. 2014))

Here, the Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation in general and with the legal and factual issues of the Defendants' industry. In negotiating this settlement, Class Counsel has had the benefit of years of experience advocating the interests of low wage laborers, particularly in the staffing industry. In his former capacity as founder and Director of the non-profit Working Hands Legal Clinic, Class Counsel served as an advisor to the legislative sponsors of the 2006 amendments to the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq.*, a law that regulates the temporary staffing industry. *See* Williams Decl., ¶7.

Following several years of litigation, the Parties agreed to explore settlement. The Parties retained Retired Judge Morton Denlow to facilitate mediation. On April 23, 2015, after a full day of negotiations and discussions about information in ASI's possession relevant to Plaintiffs' claims, the Plaintiffs and ASI reached the primary terms of a Settlement Agreement. In the months following the mediation, the Plaintiffs and ASI continued to discuss and clarify issues affecting the scope of the Settlement Agreement, both with and without the assistance of Judge Denlow. On March 8, 2016, the

Parties reached a final Settlement Agreement, Attachment 1. Class Counsel supports the resulting settlement as fair and as providing reasonable relief to the members of the class. *See* Williams Decl., ¶14.

Such arm's length negotiations conducted by competent counsel constitute *prima facie* evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the Settlement. *See Winston v. Speybroeck*, No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, *15-6 (N.D. Ind. Aug. 2, 1996). Therefore, the Court should find that the Settlement meets the requirements of Rule 23(e) and was the result of arm's-length bargaining. *See Meyenburg v. Exxon Mobil Corp*., No. 3:05-cv-15-DGW, 2006 U.S. Dist. LEXIS 97057, *16 (S.D. Ill. Jun. 6, 2006).

**B.      The Settlement is Appropriate.**

The Named Plaintiff Brian Lucas and ASI Class Members have been well represented by Plaintiff and Class Counsel, and almost all Class Members who have responded to the Class Action Notice have indicated their desire to accept the terms of the Settlement. Therefore, Plaintiffs request that the Court certify the claims of all ASI Class Members and approve the Settlement of their claims with ASI only. ASI will continue to pursue their claims against Vee Pak in this litigation.

**V.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE**

In their Unopposed Motion for Preliminary Approval of Proposed Settlement and Conditional Settlement Class Certification, and Plaintiffs' Supplemental Briefings in Support of their Motion for Preliminary Approval (Dkt. No. 250, 256, and 292), Plaintiffs requested that the Court conditionally certify the Settlement Class. The Court's Preliminary Approval Order

found that, for settlement purposes, the Settlement Class is proper under Rule 23(a) and 23(b)(3). Dkt. No. 296, at ¶3. Since the Court's Order, no objections addressing certification issues have been received from ASI Class Members. As recognized in the Settlement and the Court's Preliminary Approval Order, the Settlement Class is appropriate for the reasons summarized below.

### A. The Settlement Class Satisfies All Rule 23(a) Requirements.

**Numerosity**: Fed. R. Civ. P. 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. As a general rule, a class with at least 40 members satisfies Rule 23's numerosity requirement. *Wilkins v. Just Energy Grp., Inc.*, 2015 U.S. Dist. LEXIS 31902, *31 (N.D. Ill. 2015). The Settlement Class provisionally certified by the Court included over 2,000 class members, thus meeting the numerosity requirement whereby joinder is impracticable. 1 Newberg on Class Actions § 3.05 at 3-23 to 3-24.

**Commonality**: The Settlement Class members share common questions of law and fact, thus meeting the commonality requirement, as Plaintiffs have alleged a general policy or practice of racial steering in which the Defendants have erected barriers to the referral of African-American laborers at Ferrara, which is a common contention for each putative class member's case and can be satisfied using evidence common to the class.. As found in the Court's Preliminary Approval Order, Plaintiffs' claims satisfy the commonality requirement of Rule 23(a)(2).

**Typicality**: As this Court has already found in its Preliminary Approval Order, Rule 23(a)(3)'s demand for typicality has been satisfied. Plaintiffs' claims arise out of the same alleged events and conduct, thus meeting the typicality requirement, as each member of the putative class sought, but was denied, employment for certain positions at Vee Pak through ASI. The Court's finding has not been challenged since the date of the Court's Preliminary Approval Order.

**Adequacy**: No objection or information contrary to the finding of adequacy in the Court's Preliminary Approval Order has been raised contesting the ability of the named Plaintiffs and Class Counsel to fairly and adequately protect the interests of the Settlement Class. No evidence has arisen of an improper conflict of interest between the named Plaintiffs and their counsel and any members of the Settlement Class. Moreover, Class Counsel's experience litigating class actions has enabled them to vigorously represent the interests of Settlement Class throughout the litigation and settlement of this action, and Class Counsel will continue to do so.

**B.    The Settlement Class Satisfies All Rule 23(b)(3) Requirements.**

As found in the Court's Preliminary Approval Order, the Settlement Class meets the requirements of Rule 23(b)(3) in that common questions of law affecting proposed Class Members predominate over questions affecting individual members and that class resolution is superior to other available methods.

**Predominance**: Since the Court's Preliminary Approval Order, it remains undisputed that the Settlement Class meets the predominance standard because common questions of fact and law predominate over individual damage issues. The common question here, whether Defendants had a general policy or practice of racial steering, predominates over any individual questions. Any individual questions relate to the amount of damages owed individual class members and do not defeat certification. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (collecting cases holding that the need for individual damage determinations does not automatically defeat class certification); *accord Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("It would drive a stake through the heart of the class action device . . . to require that every member of the class have identical damages" and explaining that it is inappropriate to simply count the number of individual issues, "regardless of

relative importance," and conclude that they must predominate). Here, each putative Class Member was allegedly denied the opportunity to work in certain positions typically filled by ASI at Vee Pak because of their race. This question of common liability predominates over any individualized questions. Moreover, there also are additional common questions regarding damages, such as the criteria that would be acceptable as legitimate non-discriminatory reasons for the denials of assignments to Vee Pak and the process for determining the amount of lost back pay, for settlement purposes only, and in light of the risks of continued litigation against ASI in this matter, including the risk that the Class would not be able to recover a judgment after years of litigation. Here, again, because the case is presented in a settlement posture and the parties have agreed upon a single formula to compensate all class members, so there are no individual damages issues remaining.

**Superiority**: Likewise, class treatment is superior to other available methods of litigation. It would be far more costly and impractical for each individual class member to separately seek discovery of Defendants' policies, obtain data concerning the hiring and assignments of laborers to Ferrara, and to have an expert analyze such data for each individual case than to proceed with this class action. Moreover, separate lawsuits would require analysis of the same evidence by a multitude of courts and juries. Finally, the disparity in resources between individual laborers and Defendants, companies with substantial resources, could deter potential plaintiffs from proceeding individually. Certification avoids these difficulties and affords the class members a forum in which their claims may be heard.

By reason of the foregoing demonstration that the prerequisites for certification have been met, the Parties request that the Court issue a final order certifying for settlement purposes

the Settlement Class identified in its Preliminary Approval Order and the parties' proposed Order of Final Approval, attached hereto as Attachment .

## VI.     CONCLUSION

The Settlement is a compromise that takes into account the complex factual and legal issues that confronted the litigants in this case. It has been achieved in good faith and through arm's length negotiations and is not the product of fraud or collusion. The record indicates that all the criteria under Rule 23 are met for purposes of settlement, and that the Parties have provided the class members with adequate notice of the terms and conditions of the Settlement in a manner intended to maximize the due process rights of the class members.

The Settlement offers substantial monetary relief to the Settlement Class. If the Plaintiffs and the Settlement Class continued this litigation they would face complex legal and factual issues, significant defenses, enormous costs, risk of denial of class certification and grant of summary judgment in favor of Defendants, and risk of an adverse judgment. The fact that no class members timely requested exclusion from the Settlement and none of the class members objected to the Settlement shows support for the Settlement. Additionally, experienced Counsel for the Parties have extensively analyzed the claims and issues herein, and have certified that the Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. Thus, Plaintiffs respectfully request that the Court grant final approval of the Settlement, certify the Settlement Class for settlement purposes, and enter the Plaintiffs' proposed Order of Final Approval, attached hereto as Attachment 1.

Respectfully submitted,

Dated: September 5, 2018

*/s/Christopher J. Williams*