**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOE EAGLE, MICHAEL KEYS, JAMES ZOLLICOFFER, and EVAN FRANKLIN, on behalf of themselves and similarly situated laborers, | Case No. 12 C 9672 |
| Plaintiffs, | Judge Tharp |
| v. | |
| VEE PAK, INC., VEE PAK, LLC d/b/a VOYANT BEAUTY, and STAFFING NETWORK HOLDINGS LLC, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF PARTIES' CLASS ACTION SETTLEMENT
AND FOR APPROVAL OF THE FORM AND MANNER OF CLASS NOTICE AND
SCHEDULING OF A HEARING FOR FINAL APPROVAL OF SETTLEMENT**

*Respectfully submitted on behalf of Plaintiffs by:*

Christopher J. Williams
National Legal Advocacy Network
1 N LaSalle St., Suite 1275
Chicago, Illinois 60602

Joseph M. Sellers
Harini Srinivasan
Cohen Milstein Sellers & Toll P.L.L.C.
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005

Christopher J. Wilmes
Caryn Lederer
Hughes Socol Piers Resnick & Dym, LTD
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND .................................................................................................. 2

    A.    The Litigation................................................................................................ 2

    B.    The Settlement Agreement ........................................................................... 3

    C.    The Terms of the Settlement Agreement ..................................................... 5

        1.    *Monetary Terms* ............................................................................. 5

        2.    *Notice to Subclass Members* ......................................................... 7

        3.    *Class Representatives Service Award and General Release*
            *Payments* ........................................................................................ 9

        4.    *Litigation Costs and Attorneys' Fees* .......................................... 9

III.    ARGUMENT ....................................................................................................... 10

    A.    The Court Should Preliminarily Approve the Settlement Agreement
        Because it is Fair, Reasonable, and Adequate ..................................... 10

        1.    Strength of Plaintiffs' Case Balanced against Amount of
            Settlement ...................................................................................... 11

        2.    Likely Complexity, Length, and Expense of Litigation ............... 12

        3.    Opposition to the Settlement Agreement .................................... 12

        4.    Opinion of Competent Counsel ................................................... 13

        5.    Stage of the Proceedings and Discovery at the Time of Settlement ........ 13

    B.    The Proposed Service Awards to the Named Plaintiffs are Reasonable ............. 13

    C.    The Proposed Award of Attorneys' Fees and Costs is Preliminarily Fair
        and Reasonable .......................................................................................... 14

    D.    The Proposed Settlement Notice is Fair and Satisfies Due Process .................... 16

    E.    The Court Should Modify the Existing ASI and PSG Settlement
        Agreements to Streamline Simultaneous Administration and Distribution
        of Funds ..................................................................................................... 18

    F.    The Court Should Amend The Definition of the ASI Subclass ........................... 21

IV.    CONCLUSION .................................................................................................... 23

# TABLE OF AUTHORITIES

CASES

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
  No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................................10

*Amchem Products v. Windsor*,
  521 U.S. 591 (1997).................................................................................................21, 23

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
  616 F.2d 305 (7th Cir. 1980) .........................................................................................10, 11

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
  270 F.R.D. 330 (N.D. Ill. 2010)......................................................................................12

*Burns v. Elrod*,
  757 F.2d 151, 155 (7th Cir. 1985) .......................................................................................19

*Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*,
  16-CV-488, 2017 WL 5724208 (S.D. Ill. April 26, 2017) .....................................................22

*In re Cendant Corp. Prides Litigation*,
  233 F.3d 188, 193 (3d Cir. 2000)........................................................................................20

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ............................................................................................13

*Dahingo v. Royal Caribbean Cruises, Ltd.*,
  312 F. Supp. 2d 440, 446–47 (S.D.N.Y. 2004).......................................................................19

*Dougherty v. Barry*,
  869 F.2d 605, 615 (D.C. Cir. 1989) .....................................................................................5

*E.E.O.C. v. Andrew Corp.*,
  No. 81 C 4359, 1990 WL 92820 (N.D. Ill. June 26, 1990) .....................................................5

*Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*,
  284 F.3d 693, 700 (7th Cir. 2002) .......................................................................................20

*Florin v. Nationsbank of Georgia, N.A.*,
  34 F.3d 560, 565 (7th Cir. 1994) .........................................................................................15

*Fuente v. Stokley-Van Camp, Inc.*,
  713 F.2d 225, 232 (7th Cir. 1983) .......................................................................................22

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ............................................................................................13

iii

*Harman v. Lyphomed, Inc.*,
  945 F.2d 969, 974 (7th Cir. 1991) ........................................................................16

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ........................................................................10, 11

*Kaufman v. Am. Express Travel Related Servs. Co.*,
  877 F.3d 276 (7th Cir. 2017) ........................................................................10, 11

*Kaufman v. Am. Express Travel Related Servs., Inc.*,
  283 F.R.D. 404 (N.D. Ill. 2012)........................................................................17

*Lucas v. Vee Pak, Inc.*,
  No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)..........................................17

*Lynch v. Motorola Mobility LLC*,
  No. 1:16-cv-4524, 2018 WL 11372160, at *1 (N.D. Ill. Feb. 1, 2018) .................................15

*Mace v. Van Ru Credit Corp.*,
  109 F.3d 338, 344 (7th Cir. 1997) ........................................................................22

*In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 1:14-CV-10318, 2020 WL 2477955 (N.D. Ill. Jan. 21, 2020), *aff'd sub nom.*
  *Matter of Navistar MaxxForce Engines Mktg., Sales Pracs., & Prod. Liab. Litig.*, 990
  F.3d 1048 (7th Cir. 2021), *cert. denied sub nom. Drasc, Inc. v. Navistar Int'l Corp.*,
  142 S. Ct. 1107, 212 L. Ed. 2d 7 (2022) ........................................................................13

*Pearson v. NBTY, Inc.*,
  772 F.3d 778, 782 (7th Cir. 2014) ........................................................................15

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283, 325–26 (3d Cir. 1998)........................................................................21

*Rosario v. Livaditis*,
  963 F.2d 1013, 1018 (7th Cir. 1992) ........................................................................22

*In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*,
  867 F.3d 791, 793 (7th Cir. 2017) ........................................................................16

*In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*,
  No. 06 C 7023, 2018 WL 1138541, at *2 (N.D. Ill. Mar 2, 2018) ...................................19, 20

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................................11

*Vizcaino v. U.S. Dist. Court for Western Dist. of Washington*,
  173 F.3d 713, 721 (9th Cir. 1999) ........................................................................21

*Williams v. Rohm and Haas Pension Plan*,
658 F.3d 629, 636 (7th Cir. 2011) ...................................................................16

*Zollicoffer v. Gold Standard Baking, Inc.*,
No. 13-cv-1524 (N.D. Ill.) .............................................................................8

**STATUTES**

42 U.S.C. § 1981 ...............................................................................................2

42 U.S.C. § 2000e, *et seq.* .................................................................................2

42 U.S.C. § 1988 .............................................................................................15

## I.    INTRODUCTION

After ten-plus years of vigorous litigation and negotiation, Plaintiffs Joe Eagle, Michael Keys, James Zollicoffer, and Evan Franklin ("Plaintiffs"), individually and on behalf of all others similarly situated, and Defendants Vee Pak, Inc., Vee Pak, LLC, (collectively, "Vee Pak"), and Staffing Network Holdings, LLC ("Staffing Network") (collectively, the "Settling Defendants") entered into a Class Action Settlement Agreement to resolve the claims alleged in Plaintiffs' Sixth Amended Complaint. *See* ECF No. 514 (Plaintiffs' Sixth Amended Complaint); ECF No. 643 (certifying subclasses of workers for each of the three staffing agencies, referred to herein as "the Settlement Class" or "the Subclass(es)"). Plaintiffs now submit this Memorandum of Law in support of their unopposed Motion for Preliminary Approval of the Parties' Class Action Settlement Agreement and for Approval of the Form and Manner of Class Notice and Scheduling of a Hearing for Final Approval of Settlement.

The Settlement Agreement, attached hereto as Attachment 1, establishes a cash fund of Six Million Six Hundred Thousand Dollars ($6,600,000.00), inclusive of administration costs, service awards to the class representatives, and the employer's share of payroll taxes. Settlement Agreement § III.A.14. Separately, the Settlement Agreement establishes a cash fund of Four Million Dollars ($4,000,000.00) for payment of attorneys' fees and Five Hundred Thousand Dollars ($500,000.00) attributed to expenses. *Id*. § IV.F.1. Any amount not awarded as attorneys' fees and costs will revert to the Class Settlement Fund.[1] *Id*. § III.A.14. Previously, Plaintiffs settled with former Defendants Alternative Staffing, Inc. ("ASI")[2] and Personnel Staffing Group, LLC

---

[1] The Class Settlement Fund is the total Settlement Amount reduced by the Named Plaintiff Service Awards, the costs of settlement administration, and the employer share of taxes.

[2] *See* Order of Final Approval of Partial Class Action Settlement Between Plaintiffs and Defendant Alternative Staffing, Inc. *Only*, ECF No. 355.

("PSG"),[3] and requested that those settlement funds be held in trust until the parties resolved the litigation against the remaining Defendants (Staffing Network and Vee Pak). At this time, Plaintiffs request that *all* available settlement funds, including the ASI and PSG settlement funds held in trust, be combined and distributed simultaneously and as part of the same claims process. If this Class Action Settlement is approved, the case will be fully resolved against all Defendants.

The terms of the Settlement are fair, reasonable, and adequate and fall within the range of possible approval. Accordingly, Plaintiffs respectfully request that the Court grant the Motion and enter the proposed Preliminary Approval Order in the form attached to the Settlement Agreement, as Exhibit D.

## II.    BACKGROUND

### A.    The Litigation

On December 5, 2012, certain plaintiffs, on behalf of themselves and all other similarly situated individuals, filed a Class Action Complaint in this Court, alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). ECF No. 1. On December 16, 2020, Plaintiffs Joe Eagle, Michael Keys, James Zollicoffer, and Evan Franklin filed their Sixth Amended Class Action Complaint ("Complaint"), alleging violations of Section 1981, which is the operative Complaint in this matter. ECF No. 514. On September 27, 2021, Plaintiffs filed their Motion for Class Certification seeking to define three Subclasses. ECF No. 54-1, at *28. In certifying the Subclasses, the Court adopted the following modified definitions:

---

[3] *See* Order of Final Approval of Partial Class Action Settlement Between Plaintiffs and Defendant Personnel Staffing Group, LLC *Only*, ECF No. 654.

PSG Subclass

African American laborers who sought work assignments at Personnel Staffing Group, LLC d/b/a MVP from offices that referred workers to Vee Pak during the period of January 1, 2011 up through and including October 21, 2013, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011 up through and including October 21, 2013.

ASI Subclass

African American laborers who sought work assignments at Alternative Staffing, Inc. from offices that referred workers to Vee Pak during the period of January 1, 2011 up through and including December 31, 2015, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011 up through and including December 31, 2015.

Staffing Network Subclass

African American laborers who sought work assignments at Staffing Network from offices that referred workers to Vee Pak during the period of January 1, 2011 up through and including December 31, 2015, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011 up through and including December 31, 2015.

ECF No. 643 at 13-14, 48. Subsequently, the Seventh Circuit denied Defendants' Rule 23(f) petition. ECF No. 648.

The Settling Defendants deny all liability and wrongdoing associated with the claims alleged in Plaintiffs' Sixth Amended Complaint. Settlement Agreement § II.G. Specifically, the Settling Defendants deny that they discriminated against Plaintiffs or other African Americans on the basis of race in violation of Title VII, Section 1981, or any other federal, state or local law. *Id.*

B.     The Settlement Agreement

In an effort to determine whether the Parties could settle this dispute prior to further lengthy litigation, the Parties' counsel, who are experienced class action attorneys, participated in extensive settlement negotiations on multiple occasions. Most recently, on May 18, 2023, the Parties' counsel engaged in a full-day, in-person mediation session in San Diego, California with private mediator Hunter Hughes, who was familiar with the underlying allegations in this Action.

3

Subsequently, the Parties exchanged multiple follow-up communications with Mr. Hughes over a period of four weeks. On June 19, 2023, the Parties again engaged in a mediation session with Mr. Hughes over Zoom. Following that mediation session, the Parties reached an agreement in principle. During the negotiations, Plaintiffs and the Settling Defendants bargained vigorously on behalf of their respective clients, negotiating at arm's length and in good faith. On December 12, 2023, the Parties finalized and fully executed the Class Action Settlement Agreement between Plaintiffs, on behalf of the Subclasses, and the Settling Defendants, attached as Attachment 1 to Plaintiffs' Motion for Preliminary Approval.

If not for this settlement, Plaintiffs would proceed to take further discovery regarding the successor liability of Vee Pak, LLC[4] as well as the net worth of all three remaining Defendants.[5] Subsequently, Defendants would likely file motion(s) for summary judgment and decertification, and the matter would likely proceed to a two-phase trial, adjudicating liability in the first phase and remedies in the second phase. *See* ECF No. 544-1 at 43-44 (describing the two-phase trial plan). After trial, the losing party likely would appeal, delaying potential relief even further.

In light of the unsettled legal issues, the potential for complex and lengthy trial proceedings, and the potential risk and delay in the event this case does not settle, the Class Representatives and the Settling Defendants believe that the Settlement Agreement is fair and reasonable. They also believe that it is in their best interests and the best interests of the Settlement Class to resolve this matter at this time.

---

[4] *See* ECF No. 514 (Sixth Amended Complaint, adding Vee Pak, LLC d/b/a Voyant Beauty as a successor entity).

[5] *See* ECF No. 449 (Minute Entry allowing for net worth discovery after the close of fact discovery).

4

C.    The Terms of the Settlement Agreement

1.    *Monetary Terms*

The Settlement Agreement establishes a total Settlement Fund of Six Million Six Hundred Thousand Dollars ($6,600,000.00) to resolve claims of race discrimination arising out of the three staffing agencies – Staffing Network, PSG, or ASI— allegedly not assigning class members to work at Vee Pak during the Class Period. Explicitly not released and excluded from this Settlement are any claims regarding any conduct or omissions occurring after the Release Dates as set forth in Sections III.A.(33) and V.B. of the Settlement Agreement, or any rights that cannot be waived by law, including a right to file a charge of discrimination with an administrative agency, such as the United States Equal Employment Opportunity Commission ("EEOC") and any right to participate in any agency investigation or proceeding. Settlement Agreement § V.C.

Additionally, Plaintiffs propose that the Class Settlement Fund and the settlement funds from the prior partial class action settlements with ASI and PSG be combined and distributed equally to Subclass members, after reducing the Class Settlement Fund by the cost of claims administration, the service awards to the Class Representatives, and the employer's share of payroll taxes. The reason for this proposed allocation is that it is impossible to know which Subclass members would have been referred to Vee Pak, absent the alleged discrimination, on any given day and from any of the three staffing agencies. *See Dougherty v. Barry*, 869 F.2d 605, 615 (D.C. Cir. 1989) (instructing the district court to divide the monetary value equally among plaintiffs, as the court was unable to evaluate which plaintiffs would have been promoted); *E.E.O.C. v. Andrew Corp.*, No. 81 C 4359, 1990 WL 92820, at *2 (N.D. Ill. June 26, 1990) (applying *Dougherty*'s logic to divide damages equally amongst claimants). If a Claimant sought assignments from multiple staffing agencies and is thus eligible for membership in multiple

5

subclasses, Plaintiffs propose that Claimants still receive an equal share of the Class Settlement Fund, rather than a double or triple recovery.

Thus, Plaintiffs propose that each putative Subclass Member who files a valid, timely Claim Form in the form attached to the Settlement Agreement as Exhibit A, will be allocated a proportionate share of the Settlement Amount, up to a maximum recovery of Five Thousand Dollars ($5,000.00) after the Settlement Amount has been reduced by: (1) the service awards to the Class Representatives; (2) the costs of administering the settlement up through final approval of the settlement; and (3) the employer's share of payroll taxes on the portion of the settlement award designated as back wages. *Id*. § III.A.14. Claimants who have already filed a claim through either the PSG or ASI settlement administration processes will automatically be eligible to receive a payment through this claims administration process, regardless of whether they also fill out the current claim form.

Counsel estimate that there may be as many as 9,385 total individuals in the three Subclasses[6] and that after reducing the fund by the Named Plaintiffs' Service Awards, each Subclass member will receive approximately $697.00, less a *pro rata* share of the cost of claims administration and the employer's share of payroll taxes.[7] If fewer than 9,385 individuals file valid

---

[6] The total number of potential class members is unknown, as the staffing agencies did not retain race data or applicant flow data. Based on the prior Partial Class Action Settlements with PSG and ASI, Plaintiffs have determined that there are approximately 1,517 people in the PSG Subclass, and 3,188 people in the ASI Subclass. ECF No. 651, at 12 n.10; ECF No. 351 at 13-14. The number of people in the Staffing Network Subclass may be estimated by multiplying the number of Staffing Network assignee addresses by the expected representation of African Americans within the applicant pool, as determined by Plaintiff's expert, Marc Bendick, Jr., Ph.D., Class Certification Decl. of Marc Bendick, Jr., Ph.D., ECF No. 544-36, ¶¶ 9(a), Table SN-1. The estimated number of Staffing Network Subclass members is 4,680, bringing the estimated total to 9,385. *Id*.

[7] *Id*. § III.A.14. This estimate does not include the additional funds held in trust from the ASI and PSG settlements.

and timely claim forms, then Subclass members will receive more than this amount as their settlement award.. *Id*. § VI.A.3.b. The Parties have agreed that 30% of each Claimant's Settlement Payment will be considered wages and will be reported as such on an IRS Form W-2 and that the remaining 70% of each Claimant's Settlement Payment will be considered interest and compensatory damages and will be reported as such on an IRS Form 1099 where mandated by the Internal Revenue Service. *Id*.

If a Claimant does not cash his or her Award check and it becomes void pursuant to § VI.A.3.f., then it shall become part of the Remainder Fund. *Id*. The Claims Administrator shall determine if there are sufficient funds in the Remainder Fund to justify the cost of redistributing it to Claimants and, if so, shall redistribute the Remainder Fund on a pro rata basis to Subclass members. *Id*. § VI.A.3.g. If the Claims Administrator determines there are not sufficient funds to redistribute, then the Claims Administrator shall remit the Remainder Fund to the Chicago Bar Foundation or another non-profit organization approved by the Court as *cy pres*. *Id*.

2.  *Notice to Subclass Members*

The Settlement Agreement establishes a notice process through which Settlement Class Members will obtain information about the settlement, including 1) who is eligible for a settlement award; 2) how settlement awards will be calculated; 3) how Subclass members can file a claim, object to, or opt-out of the Settlement; and 4) the terms of the Settlement, including distribution of the Settlement Fund on a claims-made basis. Settlement Agreement § VI.C.

The Settlement Agreement provides that the parties will provide notice to potential Subclass members in two ways:

7

a.    *Mailing of Notice*

The Claims Administrator[8] shall utilize a list of assignees from each staffing agency (the

"PSG Assignee List," "ASI Assignee List," and "SN Assignee List") to provide notice to potential

class members. Settlement Agreement § IV.C.2. A substantially similar notice process was used

in the *GSB* Matter. *See Zollicoffer v. Gold Standard Baking, Inc.*, 13-cv-1524, ECF No. 854 and

in the ASI and PSG partial settlements in this matter. The Claims Administrator will mail a claim

form and abridged notice, attached to the Settlement Agreement as Exhibits A and B, to the

Subclass members for whom an address is available. The claim form will have the following

language in English and Spanish:

> Be advised – this agreement is only for African Americans who allege they were
> denied an assignment from Staffing Network, ASI or MVP's offices that made
> assignments to Vee Pak. In order to recover a settlement payment, you must respond
> to the following questions under oath. **Do not complete this claim form if you are
> not African American.**

Settlement Agreement, Exhibit A at ii. To have a valid claim, each Subclass member must affirm,

under oath, that she or he is African American and sought work assignments from (at least) one of

the staffing agencies during the respective Subclass Period(s). *Id.* at iii.

b.    *Publishing Notice*

For Subclass members who were never assigned a job by one of the staffing agencies and

are not in any of the staffing agency databases, the Claims Administrator will publish notice in the

Chicago Sun Times and The Voice Newspapers – two community newspapers serving the African

American community in the area near the staffing agencies.  *See also* ECF No. 355 at 2 (approving

the notice plan for the ASI Settlement to publish notice in The Chicago Defender and The Voice

---

[8] The parties have agreed to use Atticus Administration, LLC ("Atticus") as the Claims
Administrator for this settlement. *Id*. § III.A.6. The Court previously approved Atticus to provide
notice to the PSG Subclass Members following settlement with PSG. ECF No. 637 at 3.

Newspapers); ECF No. 654 at 2 (same). The published notice will provide contact information for Class Counsel and will direct Subclass members to a settlement website, which will provide the information from the notice packet and explain how to submit and obtain a downloadable Claim Form. *Id*. § IV.C.6.

### 3. *Class Representatives Service Award and General Release Payments*

The Settlement Agreement contemplates that Plaintiffs Joe Eagle, Michael Keys, and Evan Franklin will each receive a $15,000 Service Award and that Plaintiff James Zollicoffer[9] will receive a $10,000 Service Award. The Service Awards reflect Plaintiffs' service to the Subclasses as class representatives over more than a decade and as consideration for executing a general release of all claims, which only they will provide. § VII.B & V.B.

### 4. *Litigation Costs and Attorneys' Fees*

Separate from the Class Settlement Fund, the Settlement Agreement provides that Class Counsel will apply to the Court for an award of litigation costs and attorneys' fees. Under the Agreements, Counsel for Plaintiffs and the Class may seek reimbursement of their litigation costs advanced on behalf of the class and partial payment of their attorneys' fees. Class Counsel seeks full reimbursement of litigation costs, up to $500,000. *Id*. § III.A.14. Additionally, Class Counsel seeks partial payment of their attorneys' fees in an amount not to exceed Four Million and 00/100 Dollars ($4,000,000.00), a 24% reduction off the $5.25 Million lodestar they expended in representing the Subclasses.

---

[9] Plaintiff James Zollicoffer previously received a service award of $5,000 from the partial settlement with PSG. ECF No. 654 at 3.

## III.   ARGUMENT

The Court should preliminarily approve the parties' Class Action Settlement Agreement because the Agreement is fair, reasonable, and adequate. The Court should also approve the proposed modifications to the existing ASI and PSG settlements, approve the proposed modification to the definition of the proposed ASI Subclass, approve the class notice plan, and approve simultaneous administration of all three settlements.

### A.   The Court Should Preliminarily Approve the Settlement Agreement Because it is Fair, Reasonable, and Adequate

Under Federal Rule of Civil Procedure 23(e), the Court should approve a proposed class action settlement upon finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *see*, also, *Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283 (7th Cir. 2017) (citing *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). This approval takes place in a two-step process. First, the Court conducts a preliminary review of the agreement for basic fairness, in order to issue notice to the certified settlement class; following notice, the Court conducts a final fairness hearing in order to consider any objections before approving the Settlement and disbursement of payments to the class. *See, e.g.*, *Manual for Complex Litigation, Fourth* § 21.632.

"Federal courts naturally favor the settlement of class action litigation." *Isby*, 75 F.3d at 1196. When presented with a motion for preliminary approval of a class action settlement, courts are asked to simply determine whether the proposed settlement is within the range of possible approval. *See Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305 (7th Cir. 1980). This preliminary review is not to be confused with "a full-fledged inquiry" and instead functions to ensure that the distribution of class notice is appropriate. *See Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). Courts should

therefore consider the facts "in the light most favorable to the settlement" and focus on the settlement as a whole, rather than on each individual component. *Isby* at 1199 (quoting *Armstrong*, 616 F.2d at 315).

In the Seventh Circuit, courts must consider five factors in evaluating the fairness of a settlement, including (1) "the strength of Plaintiff's case compared to the amount of defendants' settlement offer," (2) "the likely complexity, length and expense of the litigation," (3) "the amount of opposition to settlement among affected parties," (4) "the opinion of competent counsel," and (5) "the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)).

As explained below, the Settlement Agreement is the product of extensive arm's-length negotiations between experienced attorneys based on sufficient evidence and information. The Settlement Agreement falls within the "range of possible approval." It is, therefore, sufficient to warrant public notice and a hearing, and the Court should preliminarily approve it.

> 1. Strength of Plaintiffs' Case Balanced against Amount of Settlement

"The most important factor relevant to the fairness of a class action settlement . . . is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Kaufman,* at \*284 (citing *Synfuel Techs.*, 463 F.3d at 653; *Isby*, 75 F.3d at 1196). Here, the proposed Settlement Agreement strikes an appropriate balance between the strength of Plaintiffs' case and the benefit to the Subclasses of a significant and prompt payment.

The Settlement Agreement here calls for the Settling Defendants to pay Six Million Six Hundred Thousand Dollars ($6,600,000.00) into the Class Settlement Fund. The Subclass Members will share this amount of money less the cost of claims administration, the employer's share of payroll taxes, and the Named Plaintiffs' Service Awards. *Id*. § III.A.14. This settlement

11

amount is equivalent to approximately two-thirds of the back wage shortfall calculated by Plaintiffs' expert Dr. Bendick. ECF No. 544-36, ¶ 9(d) (calculating a $9.9 million shortfall in worker pay). Throughout this litigation, Defendants have posited that Plaintiffs' damages—if any—would number in the mere hundreds of thousands rather than millions. This $6.6 million compromise, therefore, reflects favorable terms from the Plaintiffs' perspective. *See In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) ("Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory. Continued litigation carries with it a decrease in the time value of money . . .") (internal citations and quotations omitted).

Plaintiffs and their counsel believe that the Settlement Agreement represents a reasonable compromise, particularly in light of the procedural posture, the novelty of the legal issues, and the potential risks at trial.

### 2. Likely Complexity, Length, and Expense of Litigation

This Settlement Agreement comes over ten years after the lawsuit was filed. Undoubtedly potential summary judgment briefing, trials, and appeals would add years to the litigation.

The web of overlapping, complex legal issues in this case were likely to be substantial, including the disputes about issues related to damages and the absence of race data for applicants. Although Plaintiffs have been and remain prepared to vigorously litigate these issues, the Settlement Agreement yields a result that may be no better for the Subclasses than a result achieved after a trial, were the litigation to continue.

### 3. Opposition to the Settlement Agreement

At this point, it is impossible to know if anyone will object to the Settlement. *In re AT&T*, 270 F.R.D. at 349. However, based on other settlements in temporary staffing discrimination cases,

Plaintiffs believe that there will be few, if any, objectors. In any case, Plaintiffs are not aware of any objections to the Settlement at this time.

### 4. Opinion of Competent Counsel

In evaluating the fairness of a settlement, courts may "rely heavily on the opinion of competent counsel." *Gautreaux v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (citation omitted). Counsel for Plaintiffs and the Settling Defendants are experienced litigators who reached this settlement in arm's-length negotiations with the aid of an experienced mediator. Plaintiffs' counsel regards the Settlement to be in the best interests of the Subclasses because it provides significant monetary relief to the Subclass members without the normal risks of litigation.

### 5. Stage of the Proceedings and Discovery at the Time of Settlement

The stage of the proceedings also weighs in favor of approving the Settlement. Before the parties reached an agreement, they had conducted nearly all fact and expert discovery necessary to try the case and were fully aware of the strengths and weaknesses of the Plaintiffs' claims. After taking dozens of depositions, reviewing thousands of pages of documents, and evaluating multiple expert reports from four different experts, the Parties possess great knowledge of the proof that will be offered at trial.

### B. The Proposed Service Awards to the Named Plaintiffs are Reasonable

Courts in this Circuit have long approved service awards to the named plaintiffs in longstanding class actions, such as this one. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "In deciding whether such an award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id*. Recent decisions

13

in this Circuit have approved incentive awards as high as $25,000 per named plaintiff. *See, e.g., In re Navistar MaxxForce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 1:14-CV-10318, 2020 WL 2477955, at *4 (N.D. Ill. Jan. 21, 2020), *aff'd sub nom. Matter of Navistar MaxxForce Engines Mktg., Sales Pracs. & Prod. Liab. Litig.*, 990 F.3d 1048 (7th Cir. 2021).

The Class Representatives took substantial actions to protect the interests of potential Subclass members, and those actions resulted in a substantial benefit to the Subclass members who will receive Settlement Awards. *Id.* § IV.A.3.b. The Named Plaintiffs consulted with Class Counsel, provided information and documents through discovery responses and depositions, and performed everything that was asked of them. Without their efforts, there would have been no Settlement.

In addition, the Class Representatives have agreed, as material terms of the Settlement, to execute general releases of all claims they have or could have had against each of the Defendants. In contrast, absent class members who do not opt out of the class will agree to release only those claims that were brought, or could have been brought, in this action.

As a result, the proposed $15,000 or $10,000 service award payments to the Class Representatives are well justified.

C.   The Proposed Award of Attorneys' Fees and Costs is Preliminarily Fair and Reasonable

Class Counsel will ask the Court to award them $4,000,000 in fees and $500,000 in litigation costs. However, the Court need not decide the attorneys' fees and costs issue now. Pursuant to Federal Rule of Civil Procedure 23(h) and 54(d)(2), Plaintiffs' Counsel will file a Motion for Approval of Attorneys' Fees, Incentive Awards, and Reimbursement of Expenses along with their Motion for Final Approval of the Settlement. Plaintiffs will do so well before the objection deadline, so that the Subclass members have sufficient opportunity to review the motion

and object if necessary. Plaintiffs will also post their fee petition on the Settlement website to permit Subclass members an opportunity to review it.

Nonetheless, Plaintiffs provide a brief account in support of the award they will seek based on the lodestar method. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994). This action was commenced on December 5, 2012 and has proceeded for more than a decade before the parties reached this Settlement. The most recent entry on this case's lengthy docket was ECF No. 666. The length of the litigation is attributable to the vigorous defense the Defendants advanced at every juncture and justifiably accounts for the substantial amount of time expended and corresponding attorneys' fees that were reasonably and necessarily expended in the prosecution of this class action.

To resolve the case and provide immediate relief to the class, Plaintiffs' attorneys have agreed to discount the attorneys' fees they seek by about 25% from their full lodestar. Plaintiffs' counsel generated about $5.35 Million in attorneys' fees, but they intend to seek a fee award of $4,000,000. Plaintiffs will establish in their final approval papers that this amount is fair and reasonable. As a general rule, the Seventh Circuit has established a rebuttable presumption that attorneys' fees awarded to class counsel should not exceed "a third or at most a half of the total amount of money going to class members and their counsel." *Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014). The fees sought by Class Counsel clearly fall within that range.

District courts in the Seventh Circuit may exercise discretion in choosing either the lodestar or percentage-of-the-fund approach. *See Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). In this case, the use of the lodestar method in awarding fees under civil rights statutes is authorized by 42 U.S.C. § 1988, and courts in this district have regularly approved awards of attorneys' fees based on the lodestar method. *See Lynch v. Motorola Mobility LLC*, No.

1:16-cv-4524, 2018 WL 11372160, at *1 (N.D. Ill. Feb. 1, 2018) (applying the lodestar method in a case under both fee shifting and common fund principles); *see also In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, 867 F.3d 791, 793 (7th Cir. 2017) (affirming use of the lodestar method despite attorneys' fees exceeding recovery for the class). The reasonableness of the lodestar method is further supported by the fact that courts often perform a lodestar crosscheck when awarding fees based on a percentage of the fund to ensure that the recovery of attorneys' fees are comparable to the hours expended. *See Williams v. Rohm and Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011). Courts may also choose the lodestar method to prevent overcompensating attorneys through a straight percentage-of-the-fund award. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 974 (7th Cir. 1991). In this case, where Class Counsel has vigorously prosecuted this class action against five defendants for ten years, the same principles suggest that the lodestar method is the most appropriate way to compensate Class Counsel for their work.

> D.    The Proposed Settlement Notice is Fair and Satisfies Due Process

For any class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule requires that any such notice "must clearly and concisely state in plain, easily understood language" the following items: (1) the nature of the action, (2) the definition of the class certified, (3) the class claims, issues, or defenses, (4) that a class member may enter an appearance through counsel if the member so desires, (5) that the court will exclude from the class any members who requests exclusion, stating when and how members may elect to be excluded, and (6) the binding effect of a class judgment on class members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *see also* Manual for Complex Litigation, Fourth, § 21.312. The Court has "nearly complete discretion to

determine the form and content of notice to class members." *Lucas*, 2017 WL 6733688, at \*15 (*citing Kaufman v. Am. Express Travel Related Servs., Inc.*, 283 F.R.D. 404, 406 (N.D. Ill. 2012) (collecting cases)).

The proposed Notice and Notice Plan set forth in Section IV.C. of the Settlement Agreement are consistent with due process and meet the requirements of Rule 23. This Court approved substantially similar notice provisions in the ASI and PSG Settlements. *See*, ECF No. 355 at 2; ECF No. 654. The Notice describes the nature of the case (Settlement Agreement, Exhibit C at vii), defines the Subclasses and the class claims (Exhibit B at iii), and walks individuals through a series of questions that explain in plain language the terms of the Settlement Agreement (Exh. C at viii-ix). It informs individuals that they have the option to participate (Exh. B at iii), that each Subclass Member must file a claim form to receive a settlement payment, (Exhibit B at iii), that each Subclass Member may affirmatively opt out of the class (and how to do so) (Exh. B at iv), and the different consequences of each action. The Notice identifies Class Counsel (Exh. C at xii), explains that individuals have a right to seek their own counsel to object to the Settlement (*id*. at x), and explains the amount of money that Plaintiffs' counsel will seek to recover for fees and costs (Exh. B at iv). The Notice also informs potential Subclass members about the Court's fairness hearing and explains their rights to provide comments about or express disagreement with the Settlement Agreement and requested attorney's fees. *Id.* at iii-iv.

The plan for Notice in this case satisfies Rule 23(e)(1)'s command to "direct notice in a reasonable manner to all class members who would be bound by the proposal." As detailed in the Settlement Agreement and set forth in § II(C)(2)(a), *supra*, the Parties have agreed to mail Notice of the Settlement and a claim form to all laborers in the staffing agencies' databases who received assignments from ASI, PSG, or Staffing Network during the Class Period. To identify Subclass

members who are not in any of the staffing agencies' databases, the Parties have agreed to publish notice through the Chicago Sun-Times and The Voice. *See* § II(C)(2), *supra*.

The proposed Notice constitutes "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). The Court should therefore approve the Notice and Notice Plan for this Settlement Agreement.

E.     The Court Should Modify the Existing ASI and PSG Settlement Agreements to Streamline Simultaneous Administration and Distribution of Funds

The Court previously granted final approval of the partial settlement agreements with ASI and PSG and allowed the settlement funds to be held in trust until the conclusion of the litigation or until otherwise directed by the Court.[10] At this time, Plaintiffs request that the Court order the distribution of settlement funds from all three settlement agreements as part of a simultaneous process. In order to make distribution most efficient, Plaintiffs also propose that the Court modify the existing settlement agreements with ASI and PSG to allow for more efficient distribution of settlement funds. Plaintiffs' counsel has communicated with former Defendants PSG and ASI and neither have any objection to this request.

The ASI Settlement Agreement currently provides that each ASI Subclass Member who files a claim form shall receive a pro rata back pay award in the amount of the "Average Wage of ASI Laborer Assigned to Vee Pak,"[11] less the actual amount of any wages earned by that Class Member through an assignment from ASI during the Subclass period. *See* ECF No. 355-1 at

---

[10] ECF No. 654 at ¶ 8; ECF No. 355 at ¶ 6.

[11] "'Average Wage of ASI Laborer Assigned to Vee Pak' refers to the average wages earned by all laborers assigned to Vee Pak by ASI during the Settlement Class Period, regardless of race. Average wages are calculated by multiplying the average hours worked per above laborer by the Illinois minimum wage rate of $8.25 per hour. For purposes of this Settlement, this average amount shall be the presumed amount of back pay lost by any class member." ECF No. 355, Attachment 1 at ¶ 28.

¶ 57(b)(i). Similarly, the PSG Settlement Agreement provides that each PSG Subclass Member who files a claim form shall receive a back pay award in the amount of the "Average Wage of PSG Laborer Assigned to Vee Pak,"[12] less the actual amount of any wages earned by that Class Member through an assignment from PSG during the Class Period. *See* ECF No. 654-1 at ¶ VI.A.3.a.a.i. By contrast, the settlement agreement with Vee Pak and Staffing Network provides for an equal, *pro rata* distribution of funds to class members (i.e., everyone gets the same amount of money). To simplify and more efficiently administer and distribute the funds for all three Settlements, Plaintiffs propose that the Court modify the ASI and PSG settlement agreements to also provide for equal, *pro rata* distribution.

In class action cases, it is well-settled that "courts have equitable and inherent powers and a fiduciary duty to class members." *In re Sears, Roebuck & Co. Front-Loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2018 WL 1138541, at *2 (N.D. Ill. Mar 2, 2018). These inherent powers and the fiduciary duty continue "until the [settlement fund] is actually distributed," and can be used to modify the terms and administration of the settlement agreement. *Id*. (internal quotations omitted); *see, e.g.*, *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985) (allowing for the modification of a settlement agreement to permit the filing of late claims when the equities favor claimants). Courts have generally held that they have the "equitable power to allocate the proceeds of a settlement fund among class members insofar as it does not alter the liability of the defendant…and can modify terms of a settlement agreement that were not the production of negotiation and compromise by the parties." *Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F. Supp. 2d 440, 446–

---

[12] "'Average Wage of PSG Laborer Assigned to Vee Pak' refers to the average wages earned by all laborers assigned to Vee Pak by PSG during the Settlement Class Period, regardless of race. Average wages are calculated by multiplying the average hours worked per above laborer by the Illinois minimum wage rate of $8.25 per hour." ECF No. 654-1 at ¶ III.A.2.

47 (S.D.N.Y. 2004); s*ee also In re Cendant Corp. Prides Litigation,* 233 F.3d 188, 193 (3d Cir. 2000) (modifying the deadline for filing claims because the defendant would not be prejudiced "since the deadline date was not agreed upon by the parties nor set by them."). Courts also look to whether the proposed modifications would affect a material term of the agreement. *See, e.g.*, *In re Sears, Roebuck and Co.*, 2018 WL 1138541, at *3.

Under Illinois law, a material term is an essential provision of a contract "of such a nature and of such importance that the contract would not have been made without it." *Elda Arnhold & Byzantio, L.L.C. v. Ocean Atl. Woodland Corp.*, 284 F.3d 693, 700 (7th Cir. 2002) (internal quotations omitted). Here, the calculation of settlement payments to ASI and PSG class members was not a material term of those agreements. Indeed, prior versions of the ASI Settlement Agreement without the "Average Wage of ASI Laborer Assigned to Vee Pak" distribution plan were executed and submitted to the Court for approval. *See, e.g.*, ECF No. 250 (submitting the original Partial Class Action Settlement Agreement for preliminary approval); ECF No. 256 (attaching a revised Partial Class Action Settlement Agreement). Given the relatively modest amount of money being distributed to Class Members through the ASI and PSG Settlements (a total of $228,000), and the inability to know how long any worker would have worked at Vee Pak absent discrimination, it makes most sense to distribute the money equally to individuals who submit claim forms rather than deducting the amount each person earned at ASI or PSG from their settlement award. This is especially true given that the Vee Pak/Staffing Network Settlement already contemplates that Subclass members who return claim forms will receive equal payments.[13]

---

[13] The parties have added language to the Class Notice Exhibits to inform the ASI and PSG Subclass members of this change to the distribution formula.

F.     The Court Should Amend The Definition of the ASI Subclass

Lastly, Plaintiffs and Vee Pak ask the Court to amend the ASI Subclass for settlement purposes only. Settlement classes "afford[] considerable economies to both the litigants and the judiciary and [are] also fully consistent with the flexibility integral to Rule 23," *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 794 (3d Cir. 1995), and they have become "a stock device" for resolving major multi-Plaintiffs litigation. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 618 (1997). The court can amend or alter the class definition at any time before a decision on the merits. *See* Fed. R. Civ. P. 23(c)(1)(C); *see Vizcaino v. U.S. Dist. Court for Western Dist.* of Washington, 173 F.3d 713, 721 (9th Cir. 1999) (a court has explicit permission to alter or amend a certification order before a decision on the merits and can expand the scope of a settlement class). *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 148 F.3d 283, 325–26 (3d Cir. 1998).

On February 21, 2023, the Court certified the following ASI Subclass:

African American laborers who sought work assignments at Alternative Staffing, Inc. from offices that referred workers to Vee Pak during the period of January 1, 2011 up through and including December 31, 2015, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011 up through and including December 31, 2015.

Plaintiffs and Vee Pak now ask the Court to amend the definition of the ASI Subclass as follows to mirror the end date of the class definition found in the ASI Settlement:

African American laborers who sought work assignments at Alternative Staffing, Inc. from offices that referred workers to Vee Pak during the period of January 1, 2011 up through and including January 16, 2018, but on one or more occasion were not assigned to work at Vee Pak during the period of January 1, 2011 up through and including January 16, 2018.

In the ASI Settlement, which the Court approved in 2018, the class was defined to cover individuals who applied to work through ASI from December 5, 2008 to January 16, 2018, and Plaintiffs and Vee Pak would like the same definition to apply here. The individuals who received

21

notice of the ASI Settlement were informed that more money could be recovered from Vee Pak as the case proceeded, and the parties believe that all individuals who received that notice should receive a full payment in this case as well.

The amended ASI class definition satisfies the Rule 23(a) criteria for the same reasons the Court found in its February 21, 2023 ruling. More specifically:

Numerosity is satisfied because there are well over 1,000 class members in the amended ASI Subclass.

Commonality is likewise satisfied. The common issue of law and fact in this case is whether Defendants engaged in a pattern or practice of race discrimination in placement of temporary workers at Vee Pak.

The typicality criterion is also satisfied. The claims of the Named Plaintiffs and the claims of absent Class Members all "arise from the same practice or course of conduct . . . and . . . are based on the same legal theory," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), namely that Defendants allegedly refused to place African American workers at Vee Pak.

Fourth and last, the requirement of "adequacy" is satisfied: there are no disabling conflicts between the Named Plaintiffs and the classes, there are no issues of allocation between present and "future" claimants, and Plaintiffs' attorneys are experienced and accomplished in class litigation. Rule 23(b)(3) requires both "predominance" and "superiority." Both are satisfied here. The Class Members have alleged the same claims under federal law. The individual prosecution of claims by more than 1,000 Class Members would not be feasible given the relatively small amount of most Class Members' individual damages claims. *See Mace v. Van Ru Credit Corp*., 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is

to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").[14] In short, the Court should permit Plaintiffs to amend the class definition of the ASI subclass for settlement purposes because the revised class definition satisfies the Rule 23 requirements for all the same reasons that the original certified class satisfied those requirements.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion for Preliminary Approval of the Parties' Class Action Settlement and for Approval of the Form and Manner of Class Notice and Scheduling of a Hearing for Final Approval of Settlement, enter the proposed order of preliminary approval attached as Exhibit D to the Settlement Agreement (Attachment 1 to Plaintiffs' Motion for Preliminary Approval), and direct that Notice be issued to the Settlement Class.

---

[14] Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Dated:  December 12, 2023                    Respectfully submitted,

                                             */s/  Christopher J. Williams*
                                             Christopher J. Williams
                                             National Legal Advocacy Network
                                             1 N LaSalle St., Suite 1275
                                             Chicago, Illinois 60602

                                             Joseph M. Sellers
                                             Harini Srinivasan
                                             Cohen Milstein Sellers & Toll P.L.L.C.
                                             1100 New York Avenue, N.W., Suite 500
                                             Washington, D.C. 20005

                                             Christopher J. Wilmes
                                             Caryn Lederer
                                             Hughes Socol Piers Resnick & Dym, LTD
                                             70 W. Madison Street, Suite 4000
                                             Chicago, Illinois 60602

                                             *Attorneys for Plaintiffs*